Marcia LaVanway
Post Office Box 143
6582 Keigley Street
Eau Claire, Michigan, 49111-0143
marcialavanway@gmail.com
407-497-7523

FILED VIA MAIL

NOV - 7 2023

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

23 - 4639

2 November 2023

The Honorable Caryl E. Delano, Chief Judge
U.S. Bankruptcy Court Middle District Florida
400 W. Washington Street, Suite 5100
Orlando Florida 32810

Re: In the Matter of S.E. Inc, dba Strong Enterprises,
Case No. 6:23-bk-04639

Att: Sheryl L. Loesch,
Clerk U.S. Bankruptcy Court

I write deliberately and with respect to bring to your attention a matter of
significant concern pertaining to the ongoing bankruptcy proceedings involving my
former company, S.E. Inc., dba Strong Enterprises under Case No 6:23-bk-04639
As the former owner of S.E.Inc, I wish to address certain issues that have arisen in
the course of these proceedings and request your guidance on an urgent matter of
corporate governance. To provide context, I believe the primary cause for the
bankruptcy filing of Aviation Safety Resourses, including S.E. Inc., dba Strong
Enterprises is the substantial breach of my contract with the current officers and
directors of the company. As of this writing $131,250.00 of my contract with ASR
remains unpaid.

This breach encompasses a range of violations, the default of direct payments to
me for soon to be four consecutive months without an explanation until this filing,
the non-compliance with the terms set forth in a Term Sheet dated March 17, 2021,
and the inability to fulfill specific line items as indicated therein. It is notable that
despite their defaulting on a legal contract with me they have as of this date left me
out of the list creditors. I have a had direct correspondence with the debtor's
attorney so I am sure he knows of me and my interest in this matter.

My late husband Ted Strong, a pioneer in the parachute industry, conceived and incorporated S.E. Inc., dba Strong Enterprises, in 1958. Ted Strong, would be shocked at the lack of financial transparency and I must add, integrity, that has unfolded in recent months. I don't however yet believe I was intentionally misled by ASR Board members or their spokesman when they initially approached me with an offer. I provide here a little background; I had been for the 10 years since my husbands tragic death struggling to maintain S.E. Inc and the 63 year legacy of a good and honest businessman. Indeed I had sold our family home to support the monetary deficiencies of the company. ASR appeared solid on paper, so, I thought, if I could hold on for 10 years, ASR would prosper in the industry. Quite a surprise to discover the representations made to me by ASR and actual Contractual Agreements could be so easily shrugged off after only two years.

I am saddened I must bring these issues to your attention, as they have not only shaken the financial foundations of my former company but have also threatened the livelihoods of the dedicated employees who have been the cornerstone of the company's success. As the former owner, my paramount concern is to ensure the preservation of the legacy my husband built and continue to provide our loyal employees with a secure and promising future.

It doesn't come naturally for me to speak or write about those claiming special knowledge beyond my own perception. However the truth should extend beyond the contract. I should not be placed in an unfavorable even diminished life position for the inability of ASR and its Board Members to recognize and adjust to their looming business failures. To have so devalued a now 65 year old company in a thriving industry in so short a time is never a good sign of leadership and sadly becomes for me, a cautionary tale.

The seriousness of these breaches is further compounded by the absence of any evidence of EBITDA, the non-transfer of certain liabilities, and the failure to maintain consistent salary payments. Given the severity of these contractual infractions and the implications of potential legal and financial distress, the termination of the Purchase Agreement and the immediate reclamation of ownership becomes a preferred and necessary course of action.

Moreover, the situation has taken an additional turn since the initiation of the bankruptcy proceedings. It has come to my attention the officers and directors, whose actions or inactions directly contributed to the circumstances leading to the bankruptcy, continue to exert undue influence within the structure of S.E. Inc. These individuals are named in the state of Florida entity records.

To address these matters effectively, I am respectfully requesting your intervention in the following manner.

Return of Company Ownership: Given the egregious breach of contract, including the mounting defaults by Aviation Safety Resources (ASR-Pioneer), with payments remaining unpaid to me for over 115 days per the purchase agreement, I request the prompt restoration of ownership of S.E. Inc., dba StrongEnterprises to me as the original debtor, in accordance with the termination of the Purchase Agreement and associated obligations.

Removal of Current Directors and Officers: It is imperative the current directors and officers listed in the state of Florida entity records be immediately removed from their positions within S.E. Inc.,dba Strong Enterprises. Their involvement in the company's governance is inextricably linked to the aforementioned contractual breaches, and their continued influence could further impede the process of resolution and reorganization.

Transition of Administrative Functions: In conjunction with the above requests, I kindly request a maximum of 30 days to have all administrative functions, including but not limited to payroll, banking, finance, accounts payable, landlord notifications, purchasing, and other relevant operations, effectively turned over to me. This transition period is essential to ensure the seamless continuation of business operations and the fulfillment of creditor obligations, all while complying with the principles of the bankruptcy proceedings. I emphasize that these requests are made in the best interest of all parties involved, including the creditors, and are essential to preserving the integrity of S.E. Inc., dba Strong Enterprises' assets and operations.

With over 30 years of active involvement in the Parachute Industry I am capable and fully committed to working with the court and all relevant parties to ensure a smooth and equitable resolution that adheres to all applicable bankruptcy laws and regulations. It is my firm belief the value of Power is and should only be measured in how it protects those without power against powers abuses.

3

I find myself at this late juncture in my life, powerless without your kind consideration of the employees of S.E. Inc. Nothing I write here is meant to suggest I believe the Court won't focus on the best interests of this matter nor do I question the underpinnings of your potential plan.

The death of my husband was one of the most tragic realities of my lifetime, and an incomprehensible loss for the industry he innovated. I stand strong with the loyal employees and continue an undying allegiance to maintain and preserve S.E. Inc. I can only pray now that justice will prevail and I can once again take the on the mantle of guidance and responsibility for S.E. Inc.

Thank you for your attention to this matter. I am prepared to provide any necessary documentation or information to facilitate your decision, and I remain at your disposal for any discussions or hearings that may be required to address these concerns.

Sincerely,

*Marcia Lucretia LaVanway)*

Marcia Lucretia LaVanway
6582 Keigley Street
Post Office Box 143
Eau Claire, MI 49111
407 497 7523 cell

Enclosure 1 – Term Sheet dated March 17, 2021
Enclosure 2 – Supplement to Purchase Agreement dated April 11, 2021
Enclosure 3 – Purchase Agreement dated April 13, 2021
Enclosure 4- Letter to Board members (All letters sent and received.)
Enclosure 5- Letter from Daniel R. Fogarty, Attorney for Aviation Safety Resource, Inc.
Enclosure 6- Letter to Daniel Fogarty, Attorney

Encl. /

**Terms of Acquisition:**    In exchange for a total consideration of $831,217 in value, Seller at closing will receive from Aviation Safety Resources, Inc., a total of $121,955 in cash to payoff shareholder loan and Aviation Safety Resources, Inc., will assume liabilities not to exceed $573,387 to acquire all intellectual assets and all fixed assets of S.E., Inc. including all furniture fixtures and equipment used in the production of related systems as herein defined associated with the commercial enterprise of the business excluding a Chrysler valued at $54,171 (the Seller retains the associated $17,932 auto loan). The $121,955 will be paid in one payment at the closing of this transaction in consideration for the following:

A total value of $54,171 automobile asset as follows:

- Motor vehicles valued at $54,171 shall remain with the Seller.

A total of $504,049 to the benefit of Aviation Safety Resources, Inc. as follows:

- Current cash accounts totaling $15,950
- Security deposit of $13,660 shall remain in place and the asset transfer to Buyer.
- Accounts Receivable not less than $134,488 shall transfer to Buyer.
- Work in Progress valued at no less than $15,619 shall transfer to Buyer.
- Inventory (100%) valued at no less than $264,306 shall transfer to Buyer.
- All Furniture, Fixtures and Equipment valued at $70,582 (accumulated value of $338,055 minus - $213,302 in accumulated depreciation and -$54,171 for the vehicle) shall transfer to Buyer, including, but not limited to:
  - o  Computer equipment valued at no less than $5,572.
  - o  FFE valued at no less than $6,044.
  - o  Educational equipment valued at no less than $4,970.
  - o  Manufacturing equipment valued at no less than $214,789.

2

- o Leasehold improvements valued at no less than $29,012.
- o Software valued at no less than $23,498.
- o All customer deposits shall transfer to Buyer.

The Seller shall assume the following liabilities:

- Note Payable – Chrysler ($17,932)
- o The current SBA Payroll Protection Program loan of $125,000, under which a forgiveness application has been filed, shall remain the liability of the Company until fully paid/forgiven.

Aviation Safety Resources, Inc., shall assume $573,387 in the following liabilities:

- All prepayments valued at $138,657.
- o Accounts payable not to exceed $153,430.
- o Federal tax payable not to exceed $1,431.
- FICA tax payable not to exceed $1,048.
- Sales tax payable not to exceed $3.00.
- o Credit card-BOA balance not to exceed $70,239.
- Credit card-Capital One balance not to exceed $14,638.
- o Credit card-Chase not to exceed $34,041.
- o SBA loan advance not to exceed $10,000.
- o SBA 7a Loan not to exceed $149,900.

Inclusive in the one-time payment of $121,955 and as a condition of payment, Seller agrees to release and terminate any and all liabilities associated with the Shareholder Loan of $121,955 to the Company.

Aviation Safety Resources, Inc., agrees that once the following liabilities meet the terms as outlined below, the Seller shall receive payments equaling 20% of EBITDA over the course of the next four years:

- o All accounts payable within net 30-day terms.
- Credit card-BOA account balance settled at $0.00 remaining liability.
- o Credit card-Capital One balance not to exceed $5,000.
- Credit card-Chase not to exceed $5,000.
- o SBA loan advance of $10,000 paid in full.

3

- SBA 7a Loan of $149,900 paid in full or forgiven under SBA guidelines.

Aviation Safety Resources will maintain salary payments equaling $75,000 annually for a total of four years from close to Marcie LaVanway in accordance with current employment with the Company.

As such, all of the efforts and operations of the Company, except as specifically agreed to in writing to the contrary, will be completed at the benefit of Aviation Safety Resources, Inc., and will become the proprietary property of Aviation Safety Resources, Inc., as those projects are completed.

All products and technologies developed or contemplated at the execution of this agreement will be the exclusive property of Aviation Safety Resources, Inc.

The net amount at the time of closing should be $831,217 and in case of any deficit in any of the represented amounts used to calculate the net shall be adjusted from the purchase price at close.

**Definitive Documents:**    The acquisition will be made pursuant to definitive agreements to be agreed to among the parties.    These agreements will contain, among other matters, appropriate representations and warranties of the Company and the stockholders of the Company and indemnification provisions.

**Due Diligence:**    Consummation of the acquisition contemplated by this term sheet is subject, among other things, to a complete review by Aviation Safety Resources, Inc., of the books, records, business, and affairs of the Company.    In connection therewith, the Company agrees to provide to Aviation Safety Resources, Inc., and their agents complete access to all of the Company's books, records, premises, personnel, customers, and suppliers (excluding only information protected by attorney-client privilege but including such information to the extent that the disclosure thereof would not waive such privilege)  for purposes of conducting their investigation.

**Expenses:** Whether or not this acquisition is consummated, each party shall bear its own legal, accounting, and other expenses.

**Execution of Term Sheet:** This Term Sheet may be executed in counterparts, all of which, taken together, shall constitute one and the same original instrument.

**Termination:** If this Term Sheet has not been executed by 5:00 PM Eastern Daylight Time on March 31, 2021, this Term Sheet shall automatically terminate. Both Seller and Company agree to use best efforts to facilitate a due diligence period and allow adequate time for drafting and reviewing definitive agreements.

**No Public Announcements:** Prior to the execution of the definitive agreements, none of the parties will, without first obtaining the approval of the others, make any public announcement, directly or indirectly, regarding the proposed acquisition, nor disclose the existence of this term sheet or the nature of such acquisition to any person except to the extent necessary to effect the acquisition. Notwithstanding the foregoing, each party reserves the right to disclose the proposed acquisition and the status of negotiations with respect thereto at any time if such disclosure is deemed by such party, in its reasonable opinion, to be required by law, provided the party proposing such disclosure provides the other parties with the text of such disclosure sufficiently in advance of its release to enable such other parties to have a reasonable opportunity to comment thereon.

**No Binding Effect:** This Term Sheet summarizes the principal terms of the acquisition in Company by Aviation Safety Resources, Inc. ("Buyer"). This non-binding term sheet is in connection with a possible transaction whereby Buyer would acquire all the business (as defined below) of the Company. This term sheet does not create any legally binding obligation or any commitment to invest until the definitive agreements are executed and delivered by all parties involved in the transaction.

**Signature Page Follows**

5

Agreed to and accepted this 3/18/2021 day of March 2021.

**Company:**

Marcie LaVanway
100% Shareholder
S.E., Inc., dba Strong Enterprises

**Buyer:**

Larry Williams
President and CEO
Aviation Safety Resources, Inc.,

6

*Enclose*



**AVIATION SAFETY RESOURCES**
INNOVATIVE SOLUTIONS FOR AVIATION SAFETY

*141 Hendren Way Nicholasville, KY 40356*
*606-212-2700  1-833-4GA-SAFE*

eXtreme
R.A.P.I.D
DEPLOYMENT

Soteria

TriChute

April 11, 2021

Ms. Marcie LaVanway
5062 93rd St. North
St. Petersburg, FL  34708

Subject:  Supplement to Purchase Agreement between Marcie LaVanway, S.E., Inc., and Aviation Safety Resources

Ms. LaVanway,

This letter of agreement is to confirm and further define terms and conditions pursuant to and in accordance with provisions contained in the Purchase Agreement between Marcie LaVanway ("Seller") as Owner (100%) in S.E. Inc. ("Company"), a Florida Corporation DBA Strong Enterprises and Aviation Safety Resources, Inc., a Florida Corporation ("ASR") made effective the 12th day of March 2021.

1.  SBA Economic Injury Disaster Loan:  In accordance with and pursuant to Exhibit "B", ASR will assume the liability of the SBA Economic Injury Disaster Loan in the amount of $150,00, dated June 14, 2020 at 3.75% interest, 30-year term, payments at $731.00 per month.
    a.  Since this loan is subject to the provisions of the Loan Authorization and Agreement (LA&A) Collateral Section which requires prior written consent of SBA, the Seller will immediately upon agreement notify the SBA of the intent to sell to ASR.
    b.  Subject to the approval of the SBA, ASR will work to transfer the assignment of the loan to ASR.
    c.  If the SBA requires payoff of the loan, ASR will assume liability for the payoff.

2.  Payments:  In accordance with and pursuant to Exhibit "B", ASR will provide payments equaling $75,000 annually for four years to The Estate of Marcie LaVanway in the form of monthly payments in the amount of $6,250.00 on the 12th of each month beginning the 12th of May 2021 and terminating with the last payment on 12th of April 2025.

These terms and conditions are adequately reflected in the Purchase Agreement and remain enforceable.  This agreement is to explicitly provide firm, enforceable and irrevocable commitment on the part of ASR to the seller.

Sincerely,

*Gary E. Williams*
President and CEO

*Aviation Safety Resources, Inc. is an Equal Opportunity Employer. ASR does not discriminate on the basis of race, religion, color, sex, gender identity, sexual orientation, age, non-disqualifying physical or mental disability, national origin, veteran status or any other basis covered by appropriate law. All employment is decided on the basis of qualifications, merit, and business need.*

# PURCHASE AGREEMENT

This Purchase Agreement ("Agreement") is made effective the 13th day of April, 2021, by and between Marcie LaVanway (Seller) as Owner (100%) in S.E., Inc., a Florida Corporation DBA Strong Enterprises and Aviation Safety Resources, Inc., a Florida corporation ("ASR" or "Purchaser"):

WITNESSETH:

WHEREAS, the Seller is the record owner and holder of One Thousand (1,000) shares of common stock of S.E., Inc., a Florida Corporation DBA Strong Enterprises, hereinafter referred to as "The Company", which stock represents one hundred (100%) percent of the issued and outstanding stock of the Company (the "Stock"), and;

WHEREAS, ASR desires to purchase the Stock from Seller, and the Seller desires to sell or cause to be sold the Stock to ASR, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the purchase and the sale of the Stock aforementioned, it is hereby agreed as follows:

1. **PURCHASE AND SALE: CLOSING**.

    a. <u>Stock to be Transferred</u>. Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell, convey and transfer, or cause to be sold, conveyed or transferred, the Stock, and deliver the stock certificates or powers representing such Stock, and the Purchaser shall purchase from the Seller the Stock in consideration of the purchase price set forth in Section 2 and Exhibit "A" of this Agreement. The certificates and powers representing the Stock for the Company shall be duly endorsed for transfer or accompanied by appropriate stock powers duly executed, in either case with signatures witnessed in the customary fashion. The Stock owned by the Seller is as follows:  One Thousand (1,000) shares which represents 100% of the Company.

    b. <u>Procedure for Closing</u>. The closing of the transaction contemplated by this Agreement (the "Closing"), shall be held at a location mutually agreed to by the parties. The Closing shall occur on or about April 13, 2021 @ 2 p.m. Eastern Standard Time, subject to the contingencies herein. Notwithstanding the date of Closing, Seller and Purchaser have agreed that the effective date and time of the Closing shall be 11:59 p.m. on April 13, 2021 (the "Effective Time").  The Seller has been advised to obtain legal counsel to represent her interests in this transaction, and she acknowledges that she has not received, and will not receive, legal advice from the Closing Agent.

    c. <u>Purchaser Due Diligence Period</u>:  Seller acknowledges that to enable Purchaser to proceed with this transaction, Purchaser must undertake or cause to have undertaken certain investigations, including but not limited to, a review of the financial documentation set forth on Exhibit "D" to this Agreement (hereinafter collectively referred to as "Due Diligence") in which to determine whether, in Purchaser's sole discretion, it would be feasible, economically or otherwise, to go forward with Purchaser's acquisition of the Stock.  Purchaser has completed Due Diligence.

    2. **AMOUNT AND PAYMENT OF PURCHASE PRICE**.  The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3.    **REPRESENTATIONS AND WARRANTIES OF SELLER**. Seller hereby warrants and represents:

a.    <u>Organization and Standing</u>. The Company is a Florida corporation, duly organized, validly existing and in good standing under the laws of the State of Florida and has the power and authority to carry on its business as it is now being conducted. Seller shall provide a true and correct copy of:

i.  Articles of Incorporation and all amendments for Company thereto to date filed with the Secretary of State of the State of Florida; and,

ii.  By-Laws for the Company, if any, as now in effect will be delivered by Seller to the Purchaser. The Company's minute books will be made available to the Purchaser and its representatives at any reasonable time or times prior to the Closing for inspection and will be complete and correct as of the date of any such inspection.

b.    <u>Ownership</u>. The authorized and issued Stock of S. E., Inc., consists of One Thousand (1,000) shares of Common Stock, which represents one hundred percent (100%) of the authorized and issued capital stock of the Company and all such shares are owned beneficially and of record by Marcie LaVanway.

c.    <u>No Restrictions on the Stock</u>.

i.  Neither of the Company nor Seller is a party to any agreement, written or oral, creating rights in respect to the Stock in any third person or relating to the voting of the Stock.

ii.  Seller is the lawful owner of the Stock of the Company, free and clear of all security interests, liens, encumbrances, equities and other charges.

iii.    There are no existing warrants, options, purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the Stock or to any other capital stock of the Company, nor are there any securities convertible into the capital stock of the Company.

d.    <u>Subsidiaries</u>. The Company has no subsidiaries.

e.    <u>Authority Relative to this Agreement</u>.  The Seller has full power and authority to execute this Agreement and carry out the transactions contemplated by the Seller, and no further action is necessary by the Seller to make this Agreement valid and binding upon Seller and enforceable against Seller in accordance with the terms hereof, or to carry out the actions contemplated hereby.  The execution, delivery and performance of this Agreement by the Seller will not:

i. constitute a breach or a violation of the Company's Articles of Incorporation, By-Laws, or of any law;

ii constitute a violation of any contract, agreement, order, judgment or decree to which it is a party or by which its assets or properties are bound or affected.

f.    <u>Liabilities of the Company</u>. Seller warrants and represent that at closing the Company and the Stock of the Company will not be subject to any liabilities other than those specifically enumerated in Exhibit "B" attached hereto and made a part hereof (the "Retained Liabilities"). The Seller and Purchaser

shall cause the Company to bear responsibility for the Retained Liabilities and shall further cause the Company to satisfy the Retained Liabilities on a timely basis. The Company shall hold harmless and indemnify the Seller for any claims arising from nonpayment of the Liabilities. To the extent that liabilities are discovered by Purchaser after Closing which: (1) relate to events prior to the date of Closing, and (2) are not set forth on Exhibit "B", Seller shall be responsible to forthwith pay such liabilities, or alternatively, if Seller objects to such liabilities in good faith, Seller shall litigate the issue, and Seller, shall indemnify and save harmless Purchaser and the Company from any claim for such liabilities.

      g.    <u>Tax Matters</u>.  The Company has timely prepared and filed all federal, state, and local tax returns and reports as are and have been required to be filed, and all taxes shown thereon to be due have been paid in full. To the extent that the Company incurred any tax liability arising from the business of the Company conducted prior to the date of Closing, including, but not limited to, any tax liability arising from any audit or investigation, the Seller shall be responsible for, and shall indemnify Purchaser and the Company from any such tax liability including but not limited to income, property, employment and other taxes, including Federal 941 and 940 taxes, and State of Florida unemployment taxes.

      h.    <u>Litigation</u>.  Other than as set forth on Exhibit "F", the Company is not a party to any litigation, proceeding or administrative investigation and to the best knowledge of the Seller none has been threatened against the Company or its properties and assets.

      i.    <u>Properties and Assets.</u> The Company has good and merchantable title to all of the assets utilized in the business of the Company, including, but not limited to the assets set forth on Exhibit "C" hereto and warrants that none of its assets or contracts will be terminated due to any change of ownership control provisions.  The assets set forth on Exhibit "E" are sufficient to operate the business of the Company as presently conducted.  Specifically excluded from the assets of the Company shall be those assets to be transferred by the Company to Seller or retained by the Seller at or prior to Closing as set forth on Exhibit "E". At Closing, such assets will be subject to no mortgage, pledge, lien, conditional sales agreement, security agreement, encumbrance or charge, secured or unsecured, except for tangible personal property taxes for the 2021 calendar year which will be prorated between the Seller and Purchaser at Closing, and paid by the Company, and those liabilities specifically set forth in Exhibit "B".  The Company's inventory is of a quality and quantity saleable in the ordinary course of business.

      j.    <u>Compliance with Applicable Laws</u>.  To the best of Seller knowledge: (1) none of the Company actions are prohibited by or have violated or will violate any law in effect on the date of this Agreement or on the date of Closing, (2) the Company is and has been in compliance with all applicable laws, including, but not limited to, Florida statutes, zoning regulations, laws and regulations, if applicable, city, and/or county and state occupational laws and regulations, Internal Revenue laws, and any and all other laws which may affect the operation or liability of the Purchaser, other than as set forth on Exhibit "F" hereto, and (3) Seller is not aware of any environmental issues affecting the Company or its assets other than those set forth on Exhibit "F".

      k.    <u>Documents for Review</u>.  The Company documents enumerated in Exhibit "D", attached hereto or provided to Purchaser and made a part hereof, are true, authentic, and correct copies of the originals, or, if appropriate, the originals themselves, and no alterations or modifications thereto have been made.

      l.    <u>Employee Matters</u>.  Seller is in compliance with all employment laws and regulations, including but not limited to ERISA, OSHA, wage and hour, and has filed all required returns with the Internal Revenue Service, Florida Department of Revenue and other governmental agencies responsible for workers compensation and unemployment compensation. Seller further represent that neither the Seller or the Company are indebted to any employees for unpaid compensation, nor has any

employee filed a claim against the Company for violation of any employment related law or regulation. All employees are terminable at will and have no written employment agreements. Purchaser shall have the option to continue any retirement accounts or plans for any employees whose employment will be retained by the Company following the Closing. In such event, Seller shall provide all necessary documentation to Purchaser for Purchaser to confirm that all necessary funds remain in such accounts or plans. Seller shall indemnify Purchaser and Company for any liabilities arising from such accounts or plans accruing prior to the date of Closing.

The Purchaser may employ the current employees of the Company following the date of Closing at such salaries, benefits and terms as determined by the Company in its sole discretion.

m.    Licenses. Seller warrants that the Company hold all necessary licenses and permits required to operate the business of the Company, and all its functions, and the licenses and permits will be current as of closing.

n.    Customers; Suppliers. Neither Seller, nor the Company has received any written notice, verbal notice or verbal statement from any of the top twenty (20) customers of the Company that states or suggests a substantial likelihood that such customer: (A) has ceased or materially reduced, or will cease or materially reduce, use of products or services of the Company or (B) has sought, or is seeking, to reduce the price it will pay for the products or services of the Company.

With respect to the top twenty (20) suppliers of the Company, neither Seller, nor the Company has received any written or verbal notice from any such supplier that there has been or that there is a substantial likelihood that there will be any material adverse change in the price of such supplies or services provided by any such supplier, or that any such supplier will not sell or that there is a substantial likelihood that any such supplier will not sell supplies or services to the Company at any time after the Closing Date on terms and conditions substantially the same as those used in its current sales to the Company, subject to general and customary price increases.

o.    Financial Statements and Undisclosed Liabilities. Seller has delivered to the Purchaser the financial statements and related documents for the twelve-month period ending December 31, 2020 (the "Financial Statements"). The Financial Statements (i) are true and complete in all material respects and present fairly the financial position of the Company as of the dates thereof and the results of operations and changes in financial position for the respective periods covered by such statements, and (ii) have been prepared in accordance with GAAP.

p.    Material Contracts. Except as set forth on Exhibit "C", the Company is not a party to, nor is any of its properties or assets subject to or otherwise bound by, any contract or agreement in excess of $10,000 which can not be terminated at will by the Company.

q.    Insurance. Exhibit "H" sets forth a correct and complete list of all policies (including binders) of insurance held by or on behalf of the Company or relating to its business or any of its assets (specifying the policy type, policy number, and the carrier). Such policies are valid and enforceable in accordance with their respective terms and are outstanding and duly in force as of the date hereof. Neither Seller nor the Company has received notice of, nor to the Company's knowledge is there threatened, any cancellation, termination, reduction of coverage or material premium increases with respect to any such policy. There are no claims currently pending or anticipated. No policy of the Company has been cancelled by the issuer within the last five (5) years. The activities and operations of the Company have been conducted in a manner so as to conform in all material respects to all applicable provisions of such insurance policies.

4.    **REPRESENTATIONS AND WARRANTIES OF SELLER AND PURCHASER**.

Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller, Purchaser, or the Company which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated. The parties agree to indemnify, defend and hold the other harmless from any cost, expense, liability or obligation, including attorneys' fees, through all trials, appeals, and arbitrations arising from a breach of any of the warranties and representations contained in this Agreement by the party making such representation and warranty. The representations and warranties shall survive closing for a period of four (4) years other than those set forth in Sections 3(b), (c) and (e) (the "Fundamental Representations") which shall survive indefinitely. Purchaser shall have a right of offset in the event of a breach of any representation and warranty by Seller as set forth herein. Purchaser acknowledges that the stock is not registered under the Securities Act of 1933 (the "1933 Act"), or any applicable state securities laws, and there is currently no public market for the stock. The Purchaser is acquiring the stock solely for the Purchaser's own account, and not directly or indirectly for the account of any other person whatsoever, for investment, and not with a view to or for sale in connection with, any distribution of the stock. The Purchaser does not have any contract, undertaking or arrangement with any person to sell, transfer or grant a participation to any person with respect to the stock.

5.    **TRANSACTIONS AT OR PRIOR TO THE CLOSING.**  Seller hereby covenant the following:

a.    Conduct of Company Business Until Closing. Except as Purchaser may otherwise consent in writing prior to the Closing, Seller will not enter into any transaction, take any action or fail to take any action which would result in, or could reasonably be expected to result in or cause, any of the representations and warranties of Seller contained in this Agreement, to be not true as of the Closing. The business of the Company shall be conducted by Seller in the ordinary course of business consistent with the past business practices of the Company.

b.    Resignations. Seller will deliver to Purchaser at or before Closing the resignation of Seller as the President and as the sole member of the Board of Directors of the Company with each such resignation to be effective upon the Purchaser acquiring ownership of the Stock.  In addition, Seller shall deliver a release of all obligations of the Company to her.

c.    Assets as of Closing. All of the accounts receivable, inventory, work in process and furniture, fixtures, trade names, licenses, permits, patents granted and in process, goodwill, intellectual property, proprietary knowledge, tangible and intangible assets of the Company shall remain as assets ("Assets") of the Company. Seller shall conduct the business of the Company in the ordinary course of business, consistent with past business practices, prior to the Closing.  Other than as expressly warranted herein, the Assets of the Company shall be in "AS IS" and "WHERE IS" condition. During the Due Diligence Period, Purchaser shall have a full and fair opportunity to inspect the Assets. However, this paragraph shall not absolve Seller from failing to disclose to Purchaser known defects that are not readily observable with a reasonable inspection.

Subsequent to closing, post 90-days after the close date, the parities shall jointly conduct an reconciliation whereby any outstanding accounts payable and any outstanding accounts receivable shall be adjusted to the agreed balances as outlined in Exhibit "A" and necessary payments and receipts completed at that time.

d.    Advice of Changes. Between the date hereof and the Closing, Seller will promptly advise Purchaser in writing of any fact which, if existing or known at the date hereof, would have been

required to be set forth herein or disclosed pursuant to this Agreement, or which would represent a material fact the disclosure of which would be relevant to the Purchaser.

    e.  <u>Liabilities</u>. Seller represents and warrants that the Retained Liabilities as set forth on Exhibit "B" are the only liabilities of the Company as of the Closing and Seller shall indemnify and hold harmless the Company from any liabilities not set forth on Exhibit "B".

    f.  <u>Covenants Not to Compete</u>. The Seller may be an active an ongoing participant in the Company going forward and agrees to not compete, directly or indirectly, with the Company or Purchaser, as of the date of Closing and for a period of five (5) years from and after the date of Closing within the United States and/or on the Internet. The Seller shall enter into a noncompetition agreement at Closing in the form attached hereto as Exhibit "G".

    g.  <u>Transition and Mentoring</u>. The Seller agree to implement and mentor the further growth and operation of the Company commencing on the date of Closing.

    6.  **EXPENSES.** Each of the parties hereto shall pay its own expense in connection with this Agreement and the transactions contemplated hereby, including the fees and expenses of its counsel and its certified public accountants and other experts.

    7.  **BANK ACCOUNTS.** The Company, at Purchaser's option, shall maintain its existing bank accounts. Seller shall execute such documentation as is necessary to maintain or remove Seller as a signatory on any bank accounts of the Company effective as of the date of Closing.

    8.  **LEASE AGREEMENT.** Seller represents that Purchaser shall be able to continue its lease, or at Purchaser's option, enter into a new Lease Agreement for the Company operations location at 6448 Pinecastle Blvd., Suite 104, Orlando, Florida 32809.

    9.  **GENERAL.**

    a.  <u>Survival of Representations and Warranties</u>. Each of the parties to this Agreement covenants and agrees that the Seller representations, warranties, covenants and statements and agreements contained in this Agreement and the exhibits hereto, and in any documents delivered by Seller to Purchaser in connection herewith, shall survive the Closing and terminate at the end of the forty-eight (48th) month from such date other than Fundamental Representations which survive indefinitely. Except as set forth in this Agreement, the exhibits hereto or in the documents and papers delivered by Seller to Purchaser in connection herewith, there are no other agreements, representations, warranties or covenants by or among the parties hereto with respect to the subject matter hereof.

    b.  <u>Waivers</u>. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party shall be deemed to constitute a waiver by the party taking such action or compliance with any representation, warranty, covenant or agreement contained herein, and in any documents delivered in connection herewith or therewith. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

    c.  <u>Notices</u>. All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered or mailed, first class mail, postage prepaid:

To Seller:

    Marcie LaVanway        and    6582 49111Keigley St.
    5062 93rd Street, North           P.O. Box 143
    St. Petersburg, GL  34708        Eauclaare, MI

With a Copy To:

    Frost BrownTodd, LLC
    Attn: Willam G. Strench
    400 West Market Street, Suite 3200
    Louisville, KY  40202

To Purchaser:

    Aviation Safety Resources, Inc.
    Attn: Larry E. Williams
    141 Hendren Way
    Nicholasville, KY  40356

or to such other address as such party shall have specified by notice in writing to the other party.

        d.     Entire Agreement.  This Agreement (including the exhibits hereto and all documents and papers delivered by Seller pursuant hereto and any written amendments hereof executed by the parties hereto) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof. Both parties acknowledge and agree that they have had sufficient time within which to review and approve this Agreement and all other documents executed by each party at Closing, that they have obtained all advice from their attorneys and accountants as they desired in advance of execution, and fully understand and comprehend all said documents and all matters relating to this transaction. Seller and Purchaser further represent and warrant that Seller and Purchaser enter into this transaction, the Agreement, and all other documents arising from this Agreement without duress and of Seller's and Purchaser's own volition, believing the same to be in the best interests of Seller and Purchaser.

        e.     Sections and Other Headings.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

        f.     Governing Law.  This Agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Florida. The parties herein waive trial by jury and agree to submit to the exclusive personal jurisdiction and venue of a state court of subject matter jurisdiction located in Orange County, State of Florida. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

Signature Page Follows

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto and signed by an officer of each corporation, all on the date first above written.

S.E., INC.,
a Florida Corporation

By:_____
Marcie LaVanway, President

_____
Marcie LaVanway, Seller

AVIATION SAFETY RESOURCES, INC.,
Purchaser

By:_____
Larry E. Williams, President and DEO

**EXHIBIT "A"**

**AMOUNT AND PAYMENT OF PURCHASE PRICE**

As consideration and in exchange for Seller transfer of one hundred percent (100%) of the Stock of S.E., Inc., to Purchaser, pursuant to this Agreement Seller shall receive:

(1) $121,955 payoff of shareholder loan payable at closing in the form of a certified cashier's check.

Inclusive in the one-time payment of $121,955 and as a condition of payment, Seller agrees to release and terminate any and all liabilities associated with the Shareholder Loan of $121,955 to the Company.

## EXHIBIT "B"

## LIABILITIES OF THE COMPANY

Ongoing accounts payable for wages, 940 and 941 taxes, sales taxes, utilities, purchase of inventory and supplies, and other expenses incurred in the ordinary course of the business of the Company accruing from and after the date of Closing. The Company income and expenses through the day prior to the date of Closing, shall be computed and Seller shall be responsible for payment of income taxes upon any net income allocable to the Seller as shareholder of record for the Company through the day prior to the date of Closing, pursuant to Internal Revenue Code Section 1377(a) (1) and (2), and any other applicable Internal Revenue Code or Regulation, and Seller's Subchapter S election. Purchaser and the Company shall be solely responsible for employment and income tax liability of the Company and/or the shareholder of record for wages paid and income received for any period commencing on or after the date of Closing. Seller shall be responsible for all such matters prior to the date of Closing.

As of the Closing, the Company shall have only the following liabilities not to exceed $573,387 in the aggregate.

- All prepayments valued at $138,657.
- Accounts payable not to exceed $153,430.
- Federal tax payable not to exceed $1,431.
- FICA tax payable not to exceed $1,048.
- Sales tax payable not to exceed $3.00.
- Credit card-BOA balance not to exceed $70,239.
- Credit card-Capital One balance not to exceed $14,638.
- Credit card-Chase not to exceed $34,041.
- SBA loan advance not to exceed $10,000.
- SBA Economic Injury Disaster Loan not to exceed $149,900.

Purchaser will provide payments equaling $75,000 annually for four years to The Estate of Marcie LaVanway in the form of monthly payments on the 12th of each month beginning the 12th of May 2021 and terminating with the last payment on 12th of April 2025.

**EXHIBIT "C"**
**ASSETS OF THE COMPANY**

See attached list of tangible assets of the Company.

Seller represents that the following assets will be held by the Company as of the Closing Date:

- Inventory valued at $264,306
- All Furniture, Fixtures and Equipment valued at $70,582 (accumulated value of $338,055 minus -$213,302 in accumulated depreciation and -$54,171 for the vehicle) shall transfer to Buyer, including, but not limited to:
    - Computer equipment valued at no less than $5,572.
    - FFE valued at no less than $6,044.
    - Educational equipment valued at no less than $4,970.
    - Manufacturing equipment valued at no less than $214,789.
    - Leasehold improvements valued at no less than $29,012.
    - Software valued at no less than $23,498.
- Accounts Receivable of $134,488 at closing
- Current cash accounts totaling $15,950
- Security deposit of $13,660 shall remain in place.
- Work in Progress valued at no less than $15,619.
- All customer deposits shall remain in place.

Rights to the name, licenses, permits, patents granted and in process, websites, domain names, e-mail addresses, telephone numbers, intangible and tangible goodwill, intellectual property and proprietary knowledge, and all other assets associated with Company shall remain with the Company upon purchase of the Stock.

If accounts receivable of the Company exceed its accounts payable by more than $5,000.00, Purchaser shall pay Seller the excess amount.

## EXHIBIT "D"
## <u>DOCUMENTS FOR REVIEW</u>

Seller shall provide Purchaser access to the following items:

i. Articles of Incorporation
ii. By-Laws
iii. Minutes and Resolutions
iv. Financial and Operating Statements, including balance sheets, for past three years
v. Income Tax Returns (including all schedules) for past three years
vi. Prepaid expenses for current year
vii. Prepaid Insurances for current year
viii. Bank reconciliations and accounts for current year
ix. Insurance policies, including, but not limited to, all errors and omissions policies and liability insurance policies
x. Existing Contracts
xi. Employee records, including a list of all employees and their current compensation (including all non-employee contractors)
xii Licenses and permits relating to the operation of the businesses
xiii. All pending purchase contracts, commission agreements and listing agreements of the Company
xiv. All ongoing monthly expenses for the operation of the Company, including vendor lists
xv. All intellectual property and patent documents
xvi. All other documents reasonably requested by Purchaser during the Due Diligence Period

**EXHIBIT "E"**
**EXCLUDED ASSETS**

Chrysler valued at $54,171 (the Seller retains the associated $17,932 auto loan).

**EXHIBIT "F"**
**DISCLOSURES REGARDING COMPLIANCE WITH LAWS**

Seller is in compliance.

**EXHIBIT "G"**
**NONCOMPETITION AGREEMENTS**

See attached Noncompetition Agreement.

**EXHIBIT "H"**
**INSURANCE POLICIES**

The undersigned are signing this written action to be effective as of the date first set forth above.

**DIRECTORS:**                              **SHAREHOLDERS:**

Marcie LaVanway                             Marcie LaVanway

Mike Ronaldi

507654

Marcia LaVanway
5062 93rd Street North
St Petersburg FL  33708
marcialavanway@gmail.com
407-497-7523

Marcia LaVanway
6582 Keigley Street
Post Office Box 143
Eau Claire MI  49111
In residence May thru December

23 August 2023

Chairman of the Board
Manfredi, Dario Peter
42 Buckeye RD
Glen Head, NY 11542

Board Member
Spencer, Richard
3459 Carrington RD
Delaplane, VA 20144

Board Member
Sugden, Richard
5505 Fish Creek RD
PO Box 70
Wilson, WY 83014

Board Member
Treinis, David
PO Box 982493
Park City, UT 84098

Subject: Notice of Breach of Purchase Agreement - Failure to Achieve 20% EBITDA,
Default to Maintain Salary Payments, and Incomplete Term Sheet Obligations

Board Members,

I hope this letter finds you well. I am writing to formally address a matter of
significant concern regarding our agreed upon Term Sheet dated March 17, 2021, and
our Purchase Agreement dated April 13, 2021, for which Marcia LaVanway and Aviation
Safety Resources, Inc. are the respective parties.

It has come to my attention that there have been breaches of our Purchase Agreement terms in
relation to the EBITDA (Earnings Before Interest, Taxes, Depreciation, and Amortization)
performance, the salary payment obligations, and the completion of specific line items as
stipulated in the Term Sheet dated March 17, 2021.

As per the terms outlined in the Term Sheet, it was agreed upon that Aviation Safety
Resources would achieve a minimum of 20% EBITDA, starting from fiscal year 2021 to
fiscal year 2024.

Regrettably, having no financial statements provided by Aviation Safety Resources, Inc. for the
aforementioned periods indicate a failure to meet this essential Purchase Agreement obligation.

Furthermore, in accordance with the Term Sheet, it was explicitly stated under line items c, d, e, and f that Aviation Safety Resources, Inc. was obligated to complete specific tasks. Unfortunately, Aviation Safety Resources, Inc. has failed to complete these line items as specified in the Term Sheet, leading to concerns about the overall progress of our collaborative efforts.

The specific breaches of Purchase Agreement include but are not limited to are as follows:

1. For the fiscal years ending 2021 and 2022, the EBITDA was not reported to me by Aviation Safety Resources, Inc. and I have received no EBITDA payments for either fiscal year. Aviation Safety Resources, Inc. has failed to provide any financial statements showing proof of any EBITDA in the company.
2. Similarly, Aviation Safety Resources, Inc. has failed to assume several liabilities to which I am still personally receiving notifications of default on. The most significant one being the SBA Economic Injury Disaster Loan for which Aviation Safety Resources, Inc. has not assumed the liability.
3. Additionally, the failure to maintain consistent salary payments by Aviation Safety Resources, Inc., as outlined in the Term Sheet, has caused significant disruptions within our terms, and raises concerns about the financial stability of our partnership.
4. Furthermore, as of the current date, line items c, d, e, and f of the Term Sheet remain uncompleted, leading to delays and potential setbacks in our collaborative initiatives. Aviation Safety Resources, Inc. is required to conduct the transfer/re-acquisition of all these line items and has completely failed to do so.

These breaches of the Purchase Agreement, salary payment defaults, and the incomplete obligations under the Term Sheet are of grave concern to me and the future of S.E. Inc. They not only impact the financial arrangements between our two companies but also erode the trust and expectations upon which our partnership was built.

I consider it imperative to address these breaches and uncompleted obligations promptly and do seek appropriate remedies. I kindly request that you provide a detailed explanation for each of these shortcomings and failures, along with concrete plans to rectify the situation and ensure compliance moving forward. I also kindly request you provide financial statements providing proof of EBITDA so I may receive the obligated payments as outlined in the Term sheet.

The gravity of these matters cannot be understated. Considering the potential legal, financial distress, or forthcoming bankruptcy that may arise, I reemphasize my commitment to resolving these complexities amicably. My intention remains to safeguard the relationship between our companies while addressing these substantial challenges. If you find yourselves under any financial distress and determine that it is more cost-effective to negotiate the return of Strong Enterprises back to me I am ready, willing and able to engage in discussions to explore this option.

Furthermore, in accordance with the Term Sheet, it was explicitly stated under line items c, d, e, and f that Aviation Safety Resources, Inc. was obligated to complete specific tasks. Unfortunately, Aviation Safety Resources, Inc. has failed to complete these line items as specified in the Term Sheet, leading to concerns about the overall progress of our collaborative efforts.

The specific breaches of Purchase Agreement include but are not limited to are as follows:

1. For the fiscal years ending 2021 and 2022, the EBITDA was not reported to me by Aviation Safety Resources, Inc. and I have received no EBITDA payments for either fiscal year. Aviation Safety Resources, Inc. has failed to provide any financial statements showing proof of any EBITDA in the company.
2. Similarly, Aviation Safety Resources, Inc. has failed to assume several liabilities to which I am still personally receiving notifications of default on. The most significant one being the SBA Economic Injury Disaster Loan for which Aviation Safety Resources, Inc. has not assumed the liability.
3. Additionally, the failure to maintain consistent salary payments by Aviation Safety Resources, Inc., as outlined in the Term Sheet, has caused significant disruptions within our terms, and raises concerns about the financial stability of our partnership.
4. Furthermore, as of the current date, line items c, d, e, and f of the Term Sheet remain uncompleted, leading to delays and potential setbacks in our collaborative initiatives. Aviation Safety Resources, Inc. is required to conduct the transfer/re-acquisition of all these line items and has completely failed to do so.

These breaches of the Purchase Agreement, salary payment defaults, and the incomplete obligations under the Term Sheet are of grave concern to me and the future of S.E. Inc. They not only impact the financial arrangements between our two companies but also erode the trust and expectations upon which our partnership was built.

I consider it imperative to address these breaches and uncompleted obligations promptly and do seek appropriate remedies. I kindly request that you provide a detailed explanation for each of these shortcomings and failures, along with concrete plans to rectify the situation and ensure compliance moving forward. I also kindly request you provide financial statements providing proof of EBITDA so I may receive the obligated payments as outlined in the Term sheet.

The gravity of these matters cannot be understated. Considering the potential legal, financial distress, or forthcoming bankruptcy that may arise, I reemphasize my commitment to resolving these complexities amicably. My intention remains to safeguard the relationship between our companies while addressing these substantial challenges. If you find yourselves under any financial distress and determine that it is more cost-effective to negotiate the return of Strong Enterprises back to me I am ready, willing and able to engage in discussions to explore this option.

Please provide your response in writing within 7 days of the date of receipt of this letter.

Should a mutually acceptable resolution not be achieved through direct communication within the stipulated timeframe as requested, this letter serves as formal notice of my intent to terminate Aviation Safety Resources, Inc. existing obligations and promptly reclaim ownership of S.E. Inc. In the event of failure to comply, I will be compelled to initiate an examination of alternative remedies that are accessible to me in accordance with the provisions of the Purchase Agreement, the Term Sheet, and relevant legal statutes.

Thank you for your prompt attention to these multifaceted matters. I look forward to receiving your comprehensive response and working towards resolutions that are mutually beneficial.

Sincerely,

Marcia LaVanway

Enclosure 1 – Term Sheet dated March 17, 2021
Enclosure 2 – Supplement to Purchase Agreement dated April 11, 2021
Enclosure 3 – Purchase Agreement dated April 13, 2021

Excl. 5

# SRBP STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
### ATTORNEYS AT LAW

TAMPA | FORT MYERS | PENSACOLA | DESTIN

DON M. STICHTER
1929 - 2019
RICHARD C. PROSSER
1950 - 2017
SUSAN HEATH SHARP
1954 - 2021
B. MICHAEL BACHMAN, JR.
RUSSELL M. BLAIN
JODI DANIEL DUBOSE
DANIEL R. FOGARTY
MATTHEW B. HALE

BARBARA A. HART
ELENA PARAS KETCHUM
STEPHEN R. LESLIE
AMY DENTON MAYER
CHARLES A. POSTLER
HARLEY E. RIEDEL, II
MARK F. ROBENS
SCOTT A. STICHTER
G. CHRISTOPHER MEYER
OF COUNSEL

**REPLY TO TAMPA**

August 31, 2023

**Via U.S. MAIL and EMAIL marcialavanway@gmail.com**

Marcia LaVanway
Post Office Box 143
Eau Claire, Michigan 49111-0143

Re:     August 23, 2023 Letter

Dear Ms. LaVanway,

I am writing in response to your letter of August 23, 2023, a copy of which is attached for convenience, which was received in some form on Friday, August 25, 2023. For some reason, you letter was addressed to various persons identified as board members, rather than in compliance with the notice provision in the Purchase Agreement. Please direct any further communications to me.

Both ASR and Strong reserve all rights in connection with your letter and the issues raised therein, and this preliminary response is not intended to be a full and complete response to each and every item, but rather to respond to certain statements made in the letter.

First, in your letter you appear to assert that the terms outlined in the non-binding Term Sheet are applicable to the parties' relationship currently. That is not the case because the Term Sheet was non-binding and replaced in whole by the Purchase Agreement. As stated in the Term Sheet, under the last section heading titled "No Binding Effect", the Term Sheet is non-binding, and the only obligations are those imposed by the definitive agreements. Similarly, the Purchase Agreement provides that the agreement supersedes all prior agreements and understandings, further clarifying that the Term Sheet is not operative.

Accordingly, any purported defaults of the Term Sheet as suggested by your letter are of no moment. Specifically, the Purchase Agreement does not provide for any payments or other

110 EAST MADISON STREET., SUITE 200
TAMPA, FLORIDA 33602-4700
T 813.229.0144
F 813.229.1811

1533 HENDRY ST., SUITE 300
FORT MYERS, FLORIDA 33901-2936T
T 239.939.5518
F 239.939.5568

41 NORTH JEFFERSON STREET-SUITE 111
PENSACOLA, FLORIDA 32502-5669
T 850.637.1836
F 850.791.6545

4475 LEGENDARY DRIVE-SUITE 40
DESTIN, FLORIDA 32541-9306
T 850.460.7676
F 850.424.6604

www.srbp.com

performance by ASR or Strong based on EBITDA, nor does the Purchase Agreement require ASR or Strong to provide to you financial statements.

Second, with respect to "Retained Liabilities" as that term is defined in the Purchase Agreement, the Purchase Agreement provides that the Company (i.e., Strong) is to satisfy the Retained Liabilities on a timely basis, and further to hold harmless and indemnify the Seller (you) for any claims arising from nonpayment of the Retained Liabilities. The Company has been paying and addressing the Retained Liabilities, including the SBA loan referenced in your letter. If you have paid any of the Retained Liabilities in full directly, and are asserting an indemnification claim against the Company, please provide documentation reflecting the payment, and we will evaluate and respond accordingly. Otherwise, there are no defaults under the Purchase Agreement to be addressed at this time with respect to any Retained Liabilities.

Finally, you indicate in your letter that you are interested in making an offer to purchase Strong. If this is the case, please provide a letter of intent reflecting your proposed terms, and we will consider it.

Sincerely,

*Daniel R. Fogarty*

Daniel R. Fogarty

DRF:hps

Encl. 6

Marcia LaVanway
Post Office Box 143
Eau Claire MI 49111
marcialavanway@gmail.com
407-497-7523

12 September 2023

Daniel R Fogarty
110 E. Madison St, Suite 200
Tampa, FL 33602-4700

Subject: August 31, 2023 Letter

Counsel,

I acknowledge your recent communication dated August 31, 2023, in which you assert not making a full and complete response.
I would like to bring to your attention the concerning issue of payment defaults. As of the date of this communication, two consecutive months of payments, as stipulated in the purchase agreement, remain unpaid.

This payment default is a clear violation of your contractual obligation and has added to the gravity of our current situation. In light of this unresolved issue and considering the recent Request for Proposal (RFP) to purchase, it has become increasingly apparent that, to avoid the escalation of legal actions and in the interest of preserving the integrity of our business relationship, the immediate return of S.E. Inc., dba Strong Enterprises to my possession is the most prudent course of action. I believe that an amicable resolution that includes the orderly transfer of ownership and assets is the best way forward for all parties involved.

Additionally, it is worth considering why I would entertain the idea of purchasing my own company back when you are in default of payments, a critical component of our agreement.

Please provide your response in writing within 7 days of the date of receipt of this letter. The gravity of these matters cannot be understated.

Considering the potential legal, financial distress, or forthcoming bankruptcy that may arise, I reemphasize my commitment to resolving these complexities amicably. Thank you for your attention to this matter.  I look forward to your further communication.

Sincerely,


Marcia LaVanway