**ORDERED.**

**Dated: November 09, 2023**

_____

Grace E. Robson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                    Chapter 11, Subchapter V

AVIATION SAFETY RESOURCES, INC.,          Case No. 6:23-bk-4639-GER
S.E., INC.,                               Case No. 6:23-bk-4641-GER
PIONEER AEROSPACE CORPORATION             Case No. 6:23-bk-4643-GER

          Debtors.                        _Jointly Administered under_
_____/         _Case No. 6:23-bk-4639-GER_

**INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR
AUTHORITY TO OBTAIN SECURED POSTPETITION FINANCING AND GRANT
LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS
PURSUANT TO 11 U.S.C. § 364(c) AND F.R.B.P. 4001
(Final Hearing Set for November 21, 2023, at 1:30 p.m.;
Deadline for Objections is November 20, 2023)**

THIS CASE came on before the Court for an initial hearing on November 6, 2023, at 2:30

p.m., which was continued to November 7, 2023, at 9:30 a.m. (the "**Interim Hearing**"), on the

_Debtor's Emergency Motion for Authority to Obtain Secured Postpetition Financing and Grant_

_Senior Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. § 364(c) and_

_(d) and F.R.B.P. 4001_ (Doc. No. 14) (the "**Motion**")[1] filed by AVIATION SAFETY

RESOURCES, INC. ("**ASR**"), S.E., INC. d/b/a Strong Enterprises ("**Strong**") and PIONEER

_____
[1] Unless otherwise defined herein, capitalized terms used in this Interim Order shall have the meaning ascribed to
such terms in the Motion.

AEROSPACE CORPORATION d/b/a ASR-Pioneer ("**Pioneer**") (collectively, the "**Debtors**"), seeking entry of the Interim Financing Order and the Final Financing Order:

a)      authorizing the Debtors to obtain postpetition financing pursuant to sections 363 and 364 of title 11 of the United States Code (the "**Bankruptcy Code**"), by obtaining from Richard Spencer and Richard Sugden, collectively, as postpetition lenders (the "**DIP Lender**"), a senior secured, super-priority, debtor in possession credit facility (the "**DIP Facility**") upon the terms set forth in the Motion and this Interim Financing Order;

b)      authorizing the Debtors to execute, if any, definitive debtor in possession loan documents and such other necessary documents, instruments and agreements (together with the Interim Financing Order, the "**DIP Loan Documents**"), which shall be consistent with the terms of the Motion and this Interim Financing Order, and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

c)      granting junior liens and super-priority claims to and for the benefit of the DIP Lender in all encumbered DIP Collateral and senior, first liens and super-priority claims on all unencumbered DIP Collateral, expressly subject to the Carve-Out Expenses (as defined herein) in accordance with the DIP Loan Documents, this Interim Financing Order and the Final Financing Order to secure any and all of the DIP Obligations (as defined below);

d)      approving certain stipulations by the Debtors with respect to prepetition transactions entered into between the Debtors and the DIP Lender;

e)      pending a final hearing (the "**Final Hearing**") on the Motion, approving funding under the DIP Facility up to an aggregate principal amount of $600,000.00 in new advances to and including the date on which the Final Financing Order is entered; and

2

f)      scheduling the Final Hearing on November 21, 2023 and approving notice with respect thereto in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Court having considered the Motion and the exhibits attached thereto; and the Interim Hearing to consider approval of the DIP Facility on an interim basis having been held; and based upon all of the pleadings filed with the Court, the record established at the Interim Hearing, and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES:**

A.      ***Bankruptcy Petitions***.  On November 1, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and made elections to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.  The Debtors are continuing in the management and possession of their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and no statutory committee (a "**Committee**") has yet been appointed in the Debtors' chapter 11 cases (the "**Cases**").

B.      ***Jurisdiction***. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in the Motion are Sections 105, 361, 362, 363, 364 and 545 of the Bankruptcy Code, Rules 4001(c) and (d) of the Bankruptcy Rules, and Rule 2081-1(f)(2) of the Local Rules of the Court (the "**Local Rules**").

C.       *Need for Financing*.

       i.         An immediate and critical need exists for the Debtors to obtain funds in order to, among other things, fund payroll, operating expenses, retainers and ongoing approved expenses of the Estate Professionals in order to maintain the Debtors' assets pending a proposed sale under, *inter alia,* sections 363 and 365 of the Bankruptcy Code, the proceeds of which shall net sufficient funds to repay the DIP Obligations in full (the "**Sale Transaction**").  The ability of the Debtors to fund these expenses through the DIP Facility is vital to the preservation and maintenance of the value of the Debtors' assets to bridge to a successful Sale Transaction, or, alternatively, to an orderly liquidation of the Debtors' assets and business if a Sale Transaction cannot be consummated;

      ii.         The Debtors are unable to obtain unsecured credit allowable only as an unsecured, administrative expense claim under section 503(b)(1) of the Bankruptcy Code;

      iii.         The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration;

      iv.         The ability of the Debtors to preserve and protect the value of their business assets pending a sale under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing;

      v.         The Debtors will suffer immediate and irreparable harm if the requested DIP Financing is not available on an interim or final basis;

      vi.         Based upon the record before the Court, the terms of the DIP Facility have been negotiated at arms'-length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors.  The DIP

Lender is extending financing to the Debtors in good faith and is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

**D.    *Debtors' Stipulations*.** The Debtors stipulate, acknowledge, admit and confirm the following as of the Petition Date (the "**Stipulations**"):

a)    In May 2023, the Debtors' boards authorized, and Richard Spencer and Richard Sugden (in their capacity as lenders, the "**Lenders**") agreed to provide a credit facility in the amount of $1 million to the Debtors. In May 2023 the Lenders funded the total amount of $700,000.00 (paid in two draws of $325,000.00 each and two draws of $25,000.00 each) (and together with interest, fees and expenses, collectively, the "**Lenders Advances**"). The Lenders Advances were used to fund operating expenses and to fund payments to professionals. While the Lenders Advances were booked as unsecured loans on ASR's books when the money was loaned to and used by the Debtors, the Debtors intended the Lenders Advances to be secured. The Debtors and the Lenders have stipulated on the record that the Lender Advances were not subject to perfected liens as of the Petition Date.  As a result of the aforementioned transactions, the Debtors received significant value.

b)    The Debtors do not possess, shall not assert, hereby forever release, and agree to be forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description against the Lenders and the DIP Lender related to the foregoing transactions, and waive and discharge the Lenders and the DIP Lender from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any aspect of the prepetition relationship between the Debtors and the Lenders and the DIP Lender, or other acts or omissions by the Lenders and the DIP Lender.

**E.    *Service of Motion*.**  Notice of the Interim Hearing and the proposed entry of this Interim Financing Order has been provided to the U.S. Trustee, the DIP Lender and its counsel,

all known secured creditors of the Debtors, all parties listed on the Local Rule 1007-2 Parties in

Interest List for this case, the Debtors' twenty (20) largest unsecured creditors, and certain other

parties as listed in the Motion.  Under these urgent circumstances, requisite notice of the Motion

and the relief requested thereby and in this Interim Financing Order has been given in accordance

with Rule 4001 of the Bankruptcy Rules and Local Rule 2081-1(g)(2), which notice is sufficient

for all purposes and no other notice need be given for entry of this Interim Financing Order.

Based on the foregoing findings, acknowledgements and conclusions and the record made

before the Court at the Interim Hearing, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      ***Motion Granted***. The Motion is granted on an interim basis, subject to the

provisions hereof.  Any objections to the relief sought in the Motion on an interim basis that have

not been previously resolved or withdrawn are overruled. This Interim Financing Order shall

become effective immediately upon its entry. This Interim Financing Order shall constitute

findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take

effect and be fully enforceable as of the Petition Date immediately upon entry hereof.

2.      ***DIP Facility Authorization***. The Debtors are authorized to enter into the DIP

Facility on the terms as set forth in the Motion and this Interim Financing Order, with such

modifications as permitted by this Interim Financing Order, and the other DIP Loan Documents;

and are authorized, following the entry of this Interim Financing Order, to borrow under the DIP

Facility up to an aggregate principal amount of $600,000.00, consisting of new advances to and

including the date on which the Final Financing Order is entered, and incur debt and other

obligations, grant liens, and perform their obligations solely in accordance with the terms and

conditions of the DIP Loan Documents. The DIP Lender is willing to fund the new advances

contemplated under the DIP Facility based on the updated terms of the DIP Facility as set forth in

this Interim Financing Order and provided that the DIP Loan Documents incorporate such terms.

Specifically, the principal features of the approved DIP Facility are as follows:

   a.  <u>Borrowers</u>.  Each of the Debtors shall be jointly and severally liable on the DIP Obligations.

   b.  <u>Principal Amount</u>.  The DIP Facility will be in the maximum principal amount of up to $600,000.00, consisting of new advances.

   c.  <u>Closing</u>.  The closing (the "**Closing**") of the DIP Facility will occur upon the satisfaction of the following conditions precedent: (i) entry of the Interim Financing Order and entry of the order approving the Debtors' use of Cash Collateral, each of which shall be in full force and effect and shall not have been vacated, reversed, modified, amended or stayed; (ii) no default or Event of Default hereunder or under the DIP Loan Documents shall then exist; (iii) all "first day orders" sought by the Debtors and entered by the Court shall be reasonably satisfactory in form and substance to the DIP Lender; (iv) all corporate action and other proceedings, and all documents, instruments and other legal matters in connection with the transactions contemplated by this Agreement shall be satisfactory in form and substance to the DIP Lender; (v) the Debtors shall execute and deliver the DIP Loan Documents, in a form to be agreed upon and satisfactory to the DIP Lender.

   d.  <u>Collateral</u>. The DIP Facility will be secured by the DIP Collateral (as defined herein).

   e.  <u>Security and Priority</u>. Subject only to the Carve-Out Expenses, the DIP Facility will be secured by a first priority, senior lien and security interest on all unencumbered DIP Collateral, and a junior security interest in and liens on the remaining DIP Collateral. No priming priority is granted to the DIP Lender hereunder.

   f.  <u>Superpriority Administrative Expense Claim</u>.  Subject to the Carve-Out Expenses, the DIP Obligations (defined below) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having priority over any and all administrative expenses now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code. The DIP Lender shall have a superpriority administrative expense claim against the Debtors' estates pursuant to Section 364(c)(1) of the Bankruptcy Code for the DIP Obligations, which shall be prior, senior and superior to any other claim against the Debtors, including any other superpriority administrative expense claim of any kind or nature, subject to the Carve-Out Expenses and except as provided in the Financing Orders.

   g.  <u>Advance under the DIP Facility</u>. Immediately upon the entry by the Court of the Interim Financing Order and the satisfaction of the conditions to Closing, the DIP Lender shall advance the full amount of the DIP Facility to the Debtors for use

solely in accordance with the Budget (defined below), the initial agreed version of which is attached hereto as **Exhibit A**, approved by the Court.

h.  <u>Interest Rate</u>. The principal amount of the DIP Facility shall bear interest at the rate of twelve percent (12.00%) per annum, compounded monthly, and shall be calculated based on a year of 360 days for the actual number of days elapsed. Upon and after the occurrence of an Event of Default (as defined below), and during the continuation thereof, the DIP Obligations shall bear interest at a per annum rate equal to the lesser of (i) fourteen percent (14.00%), or (ii) the maximum rate allowed by applicable law.

i.  <u>Use of Proceeds</u>. The Debtors shall use the proceeds of the DIP Facility for the purpose of paying operating expenses including payroll, and funding retainers or a reserve for the payment of court-approved expenses of the Estate Professionals, solely in accordance with the Budget (defined below) and paragraphs 11 and 14 hereof.

j.  <u>Milestones</u>. The Debtors shall be required to achieve the following milestones (collectively, the "**Milestones**"), and such Milestone deadlines may be extended or waived by the DIP Lender: (i) the Interim Financing Order shall be entered in the Cases by November 7, 2023, (ii) the Debtors shall receive stalking horse asset purchase agreements, in a form acceptable to the DIP Lender, for the purchase of substantially all of the Debtors' assets at each of their locations no later than November 10, 2023, (iii) an auction for the sale of the Debtors' assets in accordance with a Sale Transaction shall be scheduled by this Court for a date no later than November 21, 2023, (iv) the Final Financing Order shall be entered in the Cases no later than November 22, 2023 and (v) the closing of a Sale Transaction shall occur on or before December 6, 2023.

k.  <u>Maturity Date: Payment of Obligations</u>. Amounts borrowed under the DIP Loan Documents will be paid in full in cash and the DIP Facility will terminate upon the earliest to occur of (i) the date that is sixty (60) days after the Petition Date; (ii) the acceleration of the DIP Facility following the occurrence of an uncured Event of Default; (iii) the consummation of the Sale Transaction; (iv) the effective date of a confirmed chapter 11 plan for the Debtor(s); (v) the date that the Court orders (x) the conversion of either of the Debtor's Cases to chapter 7 or (y) a dismissal of any Case; (vi) the appointment of a chapter 11 trustee; or (vii) such later date to which the Debtors and DIP Lender may agree (as applicable, the "**Maturity Date**").

l.  <u>Events of Default</u>. The occurrence of any one or more of the following events shall constitute an "**Event of Default**" under the DIP Facility: (i) the failure of the Debtors to timely comply with any of the Milestones; (ii) the failure of the Debtors to pay any sum due under the DIP Facility when due, whether by demand or otherwise, and such sum remains unpaid for three (3) days after the due date; (iii) the entry of any order in the Cases which serves to revise the terms of the Interim Financing Order without the consent of the DIP Lender; (iv) the lifting of the automatic stay of section 362 of the Bankruptcy Code in any Case in favor of any party other than the DIP Lender asserting a lien in the DIP Collateral or in favor of

8

a landlord at one of the Debtors' locations; (v) the confirmation of any chapter 11 plan in these Cases which serves to revise the terms of the Interim Financing Order without the consent of the DIP Lender; (vi) the Financing Orders shall for any reason cease to create, or shall be asserted by the Debtors not to create, a valid and perfected lien on and security interest in the DIP Collateral with the priority required herein; (vii) the entry of an order: (A) appointing a trustee, receiver or examiner with expanded powers, including to manage the Debtors' business, with respect to any of the Debtors; (B) dismissing any of the Debtors' Cases; (C) converting any of the Debtors' Cases to cases under chapter 7 of the Bankruptcy Code; (D) transferring venue; or (E) removing the Debtors as debtors in possession; (viii) the consummation of any section 363 sale or chapter 11 plan without the consent of the DIP Lender; (ix) any change of control with respect to any of the Debtors shall occur (other than as a result of any sale or plan approved by the DIP Lender); (x) any representation, warranty or statement made or deemed made by the Debtors herein or in any other DIP Loan Document shall prove to be untrue in any material respect; (xi) an order shall have been entered by the Court avoiding or requiring disgorgement of any amounts received in respect of the DIP Obligations; (xii) any party (A) challenges or contests the validity or enforceability of the Financing Orders; (B) challenges or contests the nature, extent, amount, enforceability, validity, priority or perfection of the obligations under the DIP Facility, the DIP Liens, the Superpriority Claims, or the Lenders Advances; (C) seeks to assert any claim, defense or cause of action that seeks to avoid, recharacterize, subordinate, disgorge, disallow, impair or offset all or any portion of the obligations under the DIP Facility, the DIP Liens, the Superpriority Claims, or the Lenders Advances; or (D) seeks to investigate, join or file any motion, application or other pleading in support of, or publicly support any other entity that has asserted any of the claims, challenges or other requested relief contemplated in clauses (A)-(C); (xiii) the entry of an order in the Cases granting any other superpriority administrative claim or lien equal to or superior to that granted to the DIP Lender absent either the DIP Lender's consent or indefeasible payment in full in cash of the DIP Obligations; (xiv) the acceptance by the Debtors of any debtor-in-possession or any other financing, from any party other than the DIP Lender; (xv) the Debtors' payment of any amount inconsistent with the Budget approved by the DIP Lender; (xvi) any material variance in actual versus budgeted receipts and disbursements or any amendment or modification to the Budget not otherwise approved by the DIP Lender; (xvii) the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against or in relation to the DIP Lender or the Lenders, or any portion of the DIP Collateral; (xviii) the occurrence of any postpetition judgments, liabilities, claims or events that, individually or in the aggregate, could reasonably be expected to materially impair the DIP Lender's likelihood of repayment, in the DIP Lender's sole discretion; (xix) termination of the Debtors' use of Cash Collateral; and (xx) (A) any other Event of Default; (B) event triggering a Maturity Date; or (B) breach by the Debtors of any of the terms, provisions, or covenants of the Financing Orders.

m. <u>DIP Lender Fees and Costs</u>. The DIP Lender shall be entitled to all reasonable and customary fees, costs and expenses associated with the DIP Facility, which shall constitute DIP Obligations.

*n.*   Exit & Sale Success Fees.

    i.   The DIP Lender shall be entitled to a success fee equal to eight (8) percent of the gross proceeds from each and every sale of assets or other disposition or eight (8) percent of the sale price from any sale of assets or other disposition (including the amount of assumed liabilities as part of the gross sale proceeds or sale price for any asset), which success fee(s) shall constitute DIP Obligations and shall be paid in cash upon closing of such sale or other asset disposition, regardless of whether the DIP Lender has been paid in full.

    ii.   For the avoidance of doubt the success fees contemplated in (i) shall be valid and enforceable upon entry of the Interim Financing Order in accordance with paragraph 5 below and secured by DIP Liens (as defined herein) in accordance with paragraph 7 below, with such liens being senior as to any Unencumbered Property (as defined herein) and junior to any valid, perfected non-avoidable and enforceable liens in existence as of the Petition Date.

3.      In furtherance of the foregoing and without the requirements for further notice or approval of this Court, the Debtors are authorized to perform all acts, to make, execute and deliver all instruments and documents, and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of its obligations under the DIP Facility, including, without limitation: (i) the execution, delivery and performance of the DIP Loan Documents and any schedules, annexes or exhibits attached thereto; (ii) the execution, delivery and performance of one or more amendments to the DIP Loan Documents; and (iii) the performance of all other acts required under or in connection with the DIP Loan Documents.

4.      All obligations owed to the DIP Lender under or in connection with the DIP Facility, including, without limitation, loans, advances, and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the DIP Loan Documents, and any and all other obligations at any time incurred by the Debtors to the DIP Lender, are defined and referred to herein as the "**DIP Obligations**."

5.      *DIP Obligations Enforceable and Valid*.  Upon entry of this Interim Financing Order, the DIP Obligations (including those set forth in any DIP Loan Documents) shall constitute valid and binding obligations of the Debtors, enforceable in accordance with their terms.

6.      *Use of DIP Proceeds; Budget*.

a) Subject to the terms and conditions set forth in this Interim Financing Order and the other DIP Loan Documents, the Debtors are authorized, pursuant to section 363(c)(2) of the Bankruptcy Code, to use the DIP loan proceeds (which DIP loan proceeds shall be subject to first priority liens of the DIP Lender as provided below) until the occurrence of the Maturity Date. Except as otherwise provided in this Interim Financing Order, the Debtors' authority to use DIP Loan proceeds shall automatically terminate on the occurrence of the Maturity Date without further order or relief from the Court.

b) All of the Debtors' operating and capital expenditures and cash flow shall be set forth in a budget (as such budget may be amended or modified from time to time with the consent of the DIP Lender, the "Budget"). The Budget shall set forth all of the anticipated sources of and uses of cash and the operating and capital expenditures to be made during each calendar week and in the aggregate for the period of time covered by the Budget. The Debtors shall provide the DIP Lender with a variance report in form and substance acceptable to the DIP Lender each week on or before Monday at 3:00 p.m. (ET) for the prior week starting with the week of November 6, 2023 documenting the Debtors' actual receipts and disbursements against the budgeted receipts and disbursements set forth in the Budget.

7.      *DIP Liens*.  As collateral securing the full satisfaction of the DIP Obligations, as of the date of this Interim Financing Order, the DIP Lender is hereby granted, without execution, recordation or filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, valid, binding, continuing,

11

enforceable and fully-perfected liens upon and security interests in (collectively, the "**DIP Liens**") all real and personal property assets of the Debtors, whether now owned or hereafter acquired, including all accounts, chattel paper, commercial tort claims, deposit accounts, documents, equipment, general intangibles, goods (including fixtures), instruments, inventory, investment property, money, cash, cash equivalents, and all deposit accounts, securities accounts, commodities accounts and lockboxes together with all money, cash, securities and other investment property on deposit from time to time therein, letters of credit, letter-of-credit rights and other supporting obligations, real property interests (whether fee, leasehold, easement or mixed), books and records, and to the extent not otherwise included, all substitutions, replacements, accessions, products and other proceeds and products (whether tangible or intangible and including, without limitation, insurance proceeds, licenses, royalties, income, payments, claims, damages and proceeds of suit) of any of the foregoing (all such property, whether prepetition or postpetition, being collectively referred to as the "**DIP Collateral**"), as follows:

a)      *First Lien on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, subject and subordinate only to the Carve-Out Expenses, valid, binding, continuing, enforceable, fully-perfected, first-priority senior security interests in and liens upon all DIP Collateral, whether existing on the Petition Date or thereafter acquired, to the extent such property is not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code (collectively, "**Unencumbered Property**"); provided that Unencumbered Property shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (the "**Excluded Property**"), but shall, subject to and upon entry of a Final

Financing Order, include the proceeds of the Excluded Property (including all property and interests, unencumbered or otherwise, recovered in respect of any of the foregoing Excluded Property).

        b)      ***Liens Junior to Perfected, Prepetition Liens***.  Pursuant to section 364(c)(3) of the Bankruptcy Code, subject and subordinate only to the Carve-Out Expenses, valid, binding, continuing, enforceable, fully-perfected junior security interests in and liens upon all DIP Collateral, whether now existing or hereafter acquired, that is subject to valid, perfected non-avoidable and enforceable liens in favor of another person or entity, if any, in existence as of the Petition Date, which security interests and liens in favor of the DIP Lender are immediately junior to such valid, perfected and unavoidable liens, if any.

        c)      ***Liens Senior to Certain Other Liens***. Subject to the Carve-Out Expenses, the DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

        8.      ***Superpriority Claims***. In addition to the DIP Liens granted herein, all DIP Obligations shall constitute allowed, super-priority, administrative expense claims under sections 503(b) and 364(c)(1) of the Bankruptcy Code (the "**Superpriority Claims**") against the Debtors, other than with respect to the Carve-Out Expenses, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, whether incurred in the Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto (a "**Successor Case**").  The Superpriority Claims shall be

payable from, and have recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof except for such property that is subject to the Carve-Out Expenses.

9.       ***Perfection of DIP Liens.***  All DIP Liens shall pursuant to this Interim Financing Order be, and hereby are, valid, enforceable and perfected, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and all liens that may be created upon any deposit accounts or securities accounts shall, pursuant to this Interim Financing Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the Uniform Commercial Code as in effect as of the date hereof in favor of the DIP Lender; provided, that if the DIP Lender shall, in its sole discretion, choose to require the execution of and/or filing of (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded as of the time and on the date of the Petition Date.

10.     ***Carve-out Expenses***. Upon the issuance by the DIP Lender of a Carve-Out Notice (as defined below), all liens, claims and other security interests of the DIP Lender, including the DIP Liens and Superpriority Claims, shall be subject to payment of the Carve-Out Expenses.  For purposes of this Interim Financing Order, "**Carve-Out Expenses**" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) any unpaid fees due and payable to the Clerk of the Court; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, any unpaid fees and expenses incurred by a Subchapter V Trustee through the Carve-Out Effective Date (defined below); (iv) all

14

reasonable fees and expenses up to $10,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code; and (v) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid reasonable fees and expenses (the "Allowed Professional Fees") incurred by Estate Professionals and in each case incurred at any time on or before the first day following delivery by the DIP Lender, as applicable, of a Carve-Out Notice (the "Carve-Out Effective Date"), whether allowed by the Court prior to or after delivery of a Carve-Out Notice, in an aggregate amount for all Estate Professionals not to exceed the aggregate line-item amounts set forth for such Estate Professionals for the applicable period prior to the Carve-Out Effective Date in the Budget; and (vi) Allowed Professional Fees in an aggregate amount not to exceed $25,000 incurred after the Carve-Out Effective Date, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (vi) being the "Post Carve-Out Notice Cap").  For purposes of the foregoing, "Carve-Out Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender, as applicable, to (A) counsel for the Debtors (dfogarty.ecf@srbp.com); (B) the Office of the United States Trustee, Scott E. Bomkamp (scott.e.bomkamp@usdoj.gov); (C) the Subchapter V Trustee, L. Todd Budgen (Todd@C11Trustee.com), and (D) the financial advisors to the Debtors, Asgaard Capital, LLC (creardon@asgaardcapital.com) which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, expressly stating that it is a Carve-Out Notice. Notwithstanding the foregoing, so long as a Carve-Out Notice has not been issued, the Debtors shall be permitted to pay from proceeds of the DIP Facility reasonable fees to Estate Professionals and reimburse reasonable expenses incurred by Estate Professionals that are allowed by the Court and payable under sections 328, 330 and 331 of the Bankruptcy Code and compensation procedures approved by the Court as the same may be due and payable and the same shall not reduce the Post Carve-Out Notice Cap;

provided that any amounts so paid from proceeds of the DIP Facility shall reduce the Carve-Out Expenses amount set forth in clause (v) on a dollar-for-dollar basis; provided further, that nothing herein shall be construed to impair the ability of any entity to object to the fees, expenses, reimbursement or compensation described above. The rights and obligations of the parties with respect to the Carve-Out Expenses shall survive dismissal or conversion of the Cases.

11.     ***Limitation on Use of Collateral and DIP Facility Proceeds***. Notwithstanding anything to the contrary elsewhere in this Interim Financing Order, amounts loaned or advanced under, or in connection with, the DIP Facility, the Lenders Advances, any and all proceeds of collateral and all existing and future Cash Collateral[2] may not be used, directly or indirectly, by the Debtors, the Subchapter V Trustee, any Committee appointed in the Cases, or any other person or entity to: (a) object to, contest in any manner, or raise any defenses to, the validity, perfection, priority, extent, amount or enforceability of the DIP Facility, the Lenders Advances, any DIP Loan Document, any DIP Lien or any Superpriority Claim; (b) assert any claims or causes of action against the DIP Lender or the Lenders; (c) prevent, hinder or otherwise delay the DIP Lender's or Lenders' assertion, enforcement or realization on DIP Collateral, as applicable, in accordance with the DIP Loan Documents or this Interim Financing Order; (d) seek to modify any of the rights granted to the DIP Lender or Lenders hereunder, under the DIP Loan Documents, in each of the foregoing cases without such parties' prior written consent; (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) in accordance with the Budget; or (f) obtain a new lien senior to, or on a parity with, the liens of the DIP Lender or the Lenders in any DIP Collateral or any portion thereof.

---

[2] "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest."  11 U.S.C. § 363.

12.     ***DIP and Other Expenses; Procedures for Payment of DIP Lenders' and Lenders'
Professional Fees and Expenses***. The Debtors are authorized and directed to pay the DIP Lenders'
and the Lenders' fees and expenses, including, but not limited to, the reasonable and documented
prepetition and postpetition fees and disbursements of legal counsel, including Morris, Nichols,
Arsht & Tunnell LLP. Such fees and expenses through the date of entry of the Interim Order shall
be paid in cash upon entry of the Interim Order. Invoices for such fees and expenses incurred from
and after the date of entry of the Interim Order shall be provided to the Debtors, the U.S. Trustee,
and the Subchapter V Trustee (collectively, the "**Fee Notice Parties**"). The invoices for such fees
and expenses shall not be required to comply with any U.S. Trustee guidelines related to the
payment of fees and expenses of retained estate professionals, may be in summary form only, and
shall not be subject to application or allowance by the Court. If no objections to payment of the
requested fees and expenses are made, in writing, by any of the Fee Notice Parties within seven
(7) days of receiving the invoice (the "**Fee Objection Period**"), then, without further order of, or
application to, the Court or notice to any other party, such fees and expenses shall be promptly
paid by the Debtors, and in no event later than three (3) business days after expiration of the Fee
Objection Period. If an objection is made by any of the Fee Notice Parties within the Fee Objection
Period to payment of the requested fees and expenses, then only the disputed portion of such fees
and expenses shall not be paid until the objection is resolved by the applicable parties in good faith
or by order of the Court, and the undisputed portion shall be paid by the Debtors as set forth above.
Payments of any amounts set forth in this paragraph are not subject to recharacterization,
avoidance, subordination, or disgorgement.

13.     ***Preservation of Rights***.

a)     Notwithstanding anything herein to the contrary, the entry of this Interim
Financing Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly, or otherwise impair: (i) any of the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, any right of the DIP Lender to: (A) request modification of the automatic stay of section 362 of the Bankruptcy Code; (B) request dismissal of the Cases, conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers); or (C) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (ii) any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

b)      The DIP Obligations, and the claims and liens granted to or for the benefit of the DIP Lender pursuant to this Interim Financing Order and the other DIP Loan Documents, are not subject to any setoff or reduction of any kind, including, without limitation, under section 502(d) of the Bankruptcy Code, and shall not be discharged, and shall survive entry of, and govern in the event of any conflict with, any order: (i) confirming a chapter 11 plan in the Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors waive such discharge); (ii) converting the Cases to cases under chapter 7 of the Bankruptcy Code; (iii) dismissing the Cases; (iv) withdrawing the reference to the Cases; or (v) providing for abstention from handling or retaining of jurisdiction of the Cases in the Bankruptcy Court. Subject to entry of the Final Financing Order, unless otherwise agreed by the DIP Lender, under no circumstances shall any chapter 11 plan in the Cases be confirmed or become effective unless such plan provides that any still outstanding DIP Obligations shall be paid in full in cash and satisfied in the manner provided in the DIP Loan Documents on or before the effective date of such plan.

c)      Based upon the findings set forth in this Interim Financing Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the commitments to extend the DIP Facility contemplated by this Interim Financing Order, in the event that any or

all of the provisions of this Interim Financing Order or any other DIP Loan Documents, including the Final Financing Order, are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any DIP Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment or vacation, any DIP Obligations incurred and any claim granted to the DIP Lender hereunder or under the other DIP Loan Documents, including the Final Financing Order, arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Interim Financing Order and the other DIP Loan Documents, including the Final Financing Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein and therein, with respect to any such DIP Obligations.

14. ***Termination of DIP Facility.*** Subject to paragraph 15 below, the Debtors' right to use the DIP Facility and proceeds thereof shall terminate immediately, and the Debtors shall be obligated to repay in cash all outstanding DIP Obligations, upon the earliest to occur of: (i) the date that is sixty (60) days after the Petition Date; (ii) the acceleration of the DIP Facility upon the occurrence of or during the continuation of an Event of Default and following three (3) business days after delivery of the notice of Event of Default, which may be the Carve-Out Trigger Notice; (iii) the consummation of the Sale Transaction; (iv) the effective date of a confirmed chapter 11 plan for the Debtor(s); (v) the date that the Court orders (x) the conversion of any of the Debtors' Cases to chapter 7 or (y) a dismissal of any Case; (vi) the appointment of a chapter 11 trustee; or (vii) such later date to which the Debtors and DIP Lender may agree (as applicable, the "**Maturity Date**").

15.     ***Survival of Certain Rights***. Notwithstanding anything herein or in any other DIP Loan Document, upon the occurrence of the Maturity Date, (i) all of the rights, remedies, benefits and protections provided to the DIP Lender under this Interim Financing Order and the other DIP Loan Documents, and (ii) the Carve-Out Expenses, shall survive such Maturity Date. Upon such Maturity Date, the principal of and all accrued interest and fees and all other DIP Obligations shall be immediately due and payable, and the DIP Lender shall have all other rights and remedies provided in this Interim Financing Order, the other DIP Loan Documents and applicable law.

16.     ***Rights Upon Case Dismissal***.  Until all obligations and indebtedness owing to the DIP Lender shall have been paid in full in cash and satisfied in the manner provided in the DIP Loan Documents and this Interim Financing Order, the Debtors shall not seek an order dismissing the Case without the consent of the DIP Lender. If an order dismissing any Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that: (a) the claims and liens granted pursuant to this Interim Financing Order to or for the benefit of the DIP Lender shall continue in full force and effect and shall maintain their priorities as provided in this Interim Financing Order until all obligations in respect thereof shall have been paid in full in cash and satisfied in the manner provided in the DIP Loan Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (b) the rights of Estate Professionals and other parties in interest with respect to the Carve-Out Expenses shall continue in full force and effect; (c) that prior to dismissal, the Debtors shall deliver to the DIP Lender and record, at the Debtors' cost, financing statements, mortgages and other documentation evidencing perfected liens in the DIP Collateral; and (d) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

17.     *Events of Default; Notice Thereof; Remedies*.

a)      It shall be an Event of Default (together with the breach of any other covenant, condition, promise, representation or warranty in this Interim Financing Order or the DIP Loan Documents, an "**Event of Default**") upon the occurrence of any one or more of the following: (i) the failure of the Debtors to timely comply with any of the Milestones; (ii) the failure of the Debtors to pay any sum due under the DIP Facility when due, whether by demand or otherwise, and such sum remains unpaid for three (3) days after the due date; (iii) the entry of any order in these Cases which serves to revise the terms of the Interim Financing Order; (iv) the lifting of the automatic stay of section 362 of the Bankruptcy Code in these Cases in favor of any party, other than the DIP Lender, asserting a lien in the DIP Collateral or in favor of a landlord at one of the Locations; (v) the confirmation of any chapter 11 plan in these Cases which serves to revise the terms of the Interim Financing Order; (vi) the Financing Orders shall for any reason cease to create, or shall be asserted by the Debtors not to create, a valid and perfected lien on and security interest in the DIP Collateral with the priority required herein; (vii) the entry of an order: (A) appointing a trustee, receiver or examiner with expanded powers, including to manage the Debtors' business, with respect to any of the Debtors; (B) dismissing any of the Debtors' Cases; (C) converting any of the Debtors' Cases to cases under chapter 7 of the Bankruptcy Code; (D) transferring venue; or (E) removing the Debtors as debtors in possession; (viii) the consummation of any section 363 sale or chapter 11 plan without the consent of the DIP Lender; (ix) any change of control with respect to any of the Debtors shall occur (other than as a result of any sale or plan approved by the DIP Lender); (x) any representation, warranty or statement made or deemed made by the Debtors herein or in any other DIP Loan Document shall prove to be untrue in any material respect; (xi) an order shall have been entered by the Court avoiding or requiring disgorgement of any amounts received in respect of the DIP Obligations; (xii) any party (A) challenges or contests

21

the validity or enforceability of the Financing Orders; (B) challenges or contests the nature, extent, amount, enforceability, validity, priority or perfection of the obligations under the DIP Facility, the DIP Liens, the Superpriority Claims, or the Lenders Advances; (C) seeks to assert any claim, defense or cause of action that seeks to avoid, recharacterize, subordinate, disgorge, disallow, impair or offset all or any portion of the obligations under the DIP Facility, the DIP Liens, the Superpriority Claims, or the Lenders Advances; or (D) seeks to investigate, join or file any motion, application or other pleading in support of, or publicly support any other entity that has asserted any of the claims, challenges or other requested relief contemplated in clauses (A)-(C); (xiii) the entry of an order in the Cases granting any other superpriority administrative claim or lien equal to or superior to that granted to the DIP Lender absent either the DIP Lender's consent or indefeasible payment in full in cash of the DIP Obligations; (xiv) the acceptance by the Debtors of any debtor-in-possession or any other financing, from any party other than the DIP Lender; (xv) the Debtors' payment of any amount materially inconsistent with the Budget approved by the DIP Lender; (xvi) any material variance in actual versus budgeted receipts and disbursements or any amendment or modification to the Budget not otherwise approved by the DIP Lender; (xvii) the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against or in relation to the DIP Lender or the Lenders, or any portion of the DIP Collateral; (xviii) the occurrence of any postpetition judgments, liabilities, claims or events that, individually or in the aggregate, could reasonably be expected to materially impair the DIP Lender's likelihood of repayment, in the DIP Lender's sole discretion; (xix) termination of the Debtors' use of Cash Collateral; and (xx) any other (A) Event of Default; (B) event triggering a Maturity Date; or (C) breach by the Debtors of any of the terms, provisions, or covenants of the Financing Orders.

b)        Upon the occurrence of or during the continuation of any Event of Default and following three (3) business days after delivery of a notice of Event of Default, which may be

the Carve-Out Trigger Notice, to the parties required to receive service of a Carve-Out Notice as set forth above, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to exercise, all rights and remedies provided for with respect to the DIP Facility, and to take any or all of the following actions: (i) terminate the Debtors' use of unspent cash proceeds of the DIP Facility (which shall be promptly returned to the DIP Lender) and cease to make any loans or advances to the Debtors; (ii) declare all DIP Obligations to be immediately due and payable; (iii) terminate any unfunded commitments under the proposed DIP Facility; and (iv) take any other actions or exercise any other rights or remedies permitted under this Interim Financing Order, the other DIP Loan Documents or applicable law to effect the repayment and satisfaction of the DIP Obligations; provided, that the Debtors or any other party-in-interest during the three (3) business-day period may seek an expedited hearing for the purpose of obtaining an order authorizing the Debtors' continued use of the DIP Facility or Cash Collateral or determining that the event alleged to have given rise to the Event of Default did not occur; provided, however, that notwithstanding the foregoing, during such period, the DIP Lender shall have no obligation to make loans under the DIP Facility or remit Cash Collateral to the Debtors and the Lenders shall have no obligation to remit any Cash Collateral to the Debtors.

c)        The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the other DIP Loan Documents or otherwise. The failure or delay by the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Financing Order or any other DIP Loan Documents shall not constitute a waiver of any of the rights of the DIP Lender or any prepetition secured party hereunder, thereunder or otherwise, and any single or partial exercise of such rights

4863-1362-4204, v. 9

and remedies against any party or DIP Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or DIP Collateral.

18.     **_Repayment of DIP Obligations._** Upon any sale or other disposition outside the ordinary course of business of any DIP Collateral, subject only to the Carve-Out Expenses and to the rights of holders of prior valid, perfected non-avoidable and enforceable liens which are senior to the DIP Liens, any and all net proceeds of such DIP Collateral shall be applied in repayment of any outstanding DIP Obligations.

19.     **_Right to Credit Bid._**  In connection with the sale or other disposition of all or any portion of the DIP Collateral, the DIP Lender (or its affiliate or assignee as purchaser) shall have the right to use the DIP Obligations or any part thereof to credit bid pursuant to section 363(k) of the Bankruptcy Code.

20.     **_Indemnity_**. The DIP Lender, subject to and upon entry of a Final Order, shall be indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related to the DIP Facility and DIP Loan Documents, <u>provided</u>, that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct, in each case, as determined by final order in a court of competent jurisdiction. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Lender, as the case may be.

21.     **_Limitation of Liability_.** Nothing in this Interim Financing Order, the DIP Loan Documents, or any other documents related to the transactions contemplated hereby, including in connection with the Lenders Advances shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or Lenders any liability for any claims arising from the

prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The DIP Lender or Lenders (a) shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtors. By virtue of making any loan or other extension of credit under the DIP Loan Documents, to permit the use of the DIP Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Financing Order or the DIP Loan Documents or the Lenders Advances, neither the DIP Lender nor the Lenders shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim Financing Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Lenders solely in their capacity as the Lenders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

22.     ***Proofs of Claim.*** The DIP Lender shall not be required to file proofs of claim in the Bankruptcy Case or in any Successor Case.  The evidence presented with the Motion and the record

established at the Interim Hearing are deemed sufficient to, and do, constitute a proof of claim with respect to the obligations, secured status, and priority of the DIP Obligations.

23. ***Limitation on Charging Expenses Against Collateral.*** Subject to entry of the Final Financing Order, no costs or expenses of administration of the Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender or the Lenders, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or the Lenders, and nothing contained in this Interim Financing Order shall be deemed to be a consent by the DIP Lender or the Lenders to any charge, lien, assessment or claims against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

24. ***No Marshalling.*** Subject to entry of the Final Financing Order, in no event shall the DIP Lender or the Lenders be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, or the Lenders Advances. Further, subject to entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Lenders with respect to proceeds, products, offspring or profits of any DIP Collateral securing the Lenders Advances.

25. ***Binding Effect; Successors and Assigns***. This Interim Financing Order is effective immediately pursuant to Federal Bankruptcy Rules of Procedure 6004(h). The provisions of this Interim Financing Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors and their successors and assigns, including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtor(s)' estate(s) or with respect to the property of the estate of the Debtor(s) in Successor Case(s).

26.     ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Financing Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

27.     ***Necessary Action.*** The Debtors, the DIP Lender and the Lenders are each authorized to take all actions as are necessary or appropriate to implement the terms of this Interim Financing Order. In addition, the automatic stay is modified to permit affiliates of the Debtors who are not debtors in these Cases to take all actions as are necessary or appropriate to implement the terms of this Interim Financing Order.

28.     ***Conflict***. In the event that any provision of this Interim Financing Order conflicts with any term of the Motion or other DIP Loan Documents, this Interim Financing Order shall govern.

29.     If an expense reimbursement or breakup fee is earned and payable in connection with an Alternative Transaction (as such term is defined in the bid procedures order to be entered by the Court separately), the reimbursement or fee (as applicable) shall be paid from the proceeds of closing of such Alternative Transaction, and shall be paid ahead of, and not be subject to, any liens or claims against the Debtors' estates and/or against the sale assets of the Alternative Transaction or their proceeds, including, but not limited to any liens or claims of the DIP Lender, Pre-Petition Lenders, or Zodiac.

30.     Counsel for the Debtors is directed to serve a copy of this Interim Financing Order as provided below and on all parties served with the Motion (including the twenty (20) largest unsecured creditors of the Debtors, who shall be served by facsimile or electronic mail transmission if available) immediately after the entry of this Interim Financing Order and thereafter to file a certificate of service with the Court.

*Daniel R. Fogarty is directed to immediately serve a copy of this order on interested parties who do not receive CM/ECF service and file a proof of service within 3 days of entry of the order.*

4863-1362-4204, v. 9