**ORDERED.**

**Dated: November 09, 2023**

Grace E. Robson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| | |
| AVIATION SAFETY RESOURCES, INC., | Case No. 6:23-bk-4639-GER |
| S.E., INC., | Case No. 6:23-bk-4641-GER |
| PIONEER AEROSPACE CORPORATION | Case No. 6:23-bk-4643-GER |
| | |
| Debtors. | *Jointly Administered under* |
| _____/ | *Case No. 6:23-bk-4639-GER* |
| | |
| S.E., INC., | Case No. 6:23-bk-4641-GER |
| PIONEER AEROSPACE CORPORATION | Case No. 6:23-bk-4641-GER |
| | |
| Applicable Debtors. | |
| _____/ | |

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES
IN CONNECTION WITH THE SALE OF DEBTORS' ASSETS; (II)
APPROVING OVERBID AMOUNTS AND STALKING HORSE EXPENSE
REIMBURSEMENT; (III) APPROVING FORM AND MANNER OF NOTICE
OF BIDDING PROCEDURES; AND (IV) SETTING OBJECTION DEADLINES**

THESE CASES came on for hearing before the Court on November 6, 2023 at 2:30 p.m.

and for continued hearing on November 7, 2023 at 9:30 a.m. (the "**Hearing**"), upon the Debtors'

Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with

the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Expense

Reimbursement; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Case No. 6:23-bk-4641-GER, Doc. No. 15, Case No. Case No. 6:23-bk-4643-GER, Doc. No. 15) (the "**Motion**").[1]  In the Motion, the Debtors requested an emergency hearing for the Court to consider the entry of an order (i) approving bidding procedures in connection with the sale of substantially all of the business operating assets (the "**Assets**") of Pioneer Aerospace Corporation d/b/a ASR-Pioneer ("**Pioneer**") and S.E., Inc. d/b/a Strong Enterprises ("**Strong**" and together with Pioneer the "**Debtors**") located in Bloomfield, Connecticut (the "**Connecticut Location**"), Columbia, Mississippi (the "**Mississippi Location**"), Milton, Florida (the "**Milton Location**"), and Orlando, Florida (the "**Orlando Location**," and together with the Connecticut Location, the Mississippi Location, and the Milton Location, each a "**Location**" and, collectively, the "**Locations**"), as such Assets are more particularly described in the Stalking Horse Bid (as defined below), to Paradigm Parachute and Defense, Inc. or its designee (the "**Stalking Horse Bidder**") as to the Mississippi Location, the Milton Location, and the Orlando Location, and such other bidders as may qualify as a stalking horse bidder for the Connecticut Location, or to such other party submitting the highest and best offer for all or a portion of all or certain of the Assets at an auction, (ii) approving overbid amounts and an expense reimbursement for the Stalking Horse Bidder in connection with such sale, (iii) approving the form and manner of notice of the sale and the bidding procedures, (iv) setting deadlines for objections to the sale, and (v) establishing procedures for the assumption and/or assignment by the Debtors of certain executory contracts and unexpired leases to which either of the Debtors is a party.

Objections to the Motion were filed by the Office of the United States Trustee (Doc. No. 24) and Zodiac US Corporation (Doc. No. 30) (collectively, the "**Objections**").

---

[1]     Unless otherwise defined herein, capitalized terms used in this Order shall have the same meaning ascribed to such terms in the Motion.

As stated in the Motion, the Debtors entered into an asset purchase agreement (the "**Stalking Horse APA**") with the Stalking Horse Bidder providing for the sale of the Assets as to the Mississippi Location, the Milton Location, and the Orlando Location by the Debtors, the assumption of certain specified liabilities of the Debtors, and the assumption and assignment of certain leases and contracts, pursuant to 11 U.S.C. §§ 363 and 365, for a total transaction consideration of $2.25 million (consisting of cash consideration to the Debtors, not including the assumption of certain liabilities of the Debtors).  The Stalking Horse APA is attached as Exhibit A to the Motion.

The Court considered the Motion, together with the record and the arguments of counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, which shall constitute the order of the Court as if specifically provided herein, finds that the relief requested in the Motion is necessary and appropriate, that the Motion is well taken and shall be granted in accordance with the terms and conditions set forth herein, and that the Stalking Horse Bidder shall be selected as the "stalking horse bidder".  The Court further finds that it would be in the best interests of the Debtors, in consultation with the Subchapter V Trustee and Richard Spencer and Richard Sugden, in their capacity as the post-petition DIP lenders (the "**DIP Lenders**" and collectively with the Subchapter V Trustee, the "**Consultation Party**"), their creditors, and their estates that an orderly procedure for the selection of the highest and best offer or offers for the sale of the Assets be established, which will create a fair and level playing field for all prospective bidders and represent the best method for maximizing the value of the Assets, either individually or collectively.  The Court thus finds that it is appropriate to provide other prospective purchasers with the opportunity to submit competing bids for the Assets, and that notice of the proposed sale of the Assets to the Stalking Horse Bidder shall be sent to all parties

4863-6200-0773, v. 8

(collectively, the "**Bidder List**") that have expressed interest to, or have been in discussions with, the Debtors as to the potential opportunity to acquire the Assets, as well as to all creditors and parties in interest. The Court also finds that it is appropriate to require any such prospective purchasers to comply with certain requirements in connection with the submission of competing bids, and that the bidding procedures proposed by the Debtors, as set forth in the Motion and as modified at the Hearing and contained in this Order, are reasonable. The Court further finds that it is appropriate under the circumstances to approve the Overbid Amounts (as defined below), the Stalking Horse Expense Reimbursement (as defined below), as set forth below. The Court also finds that it is appropriate to establish deadlines for the filing and service of written objections to the sale of the Assets to any Qualified Bidder (as defined below).

The Court also finds that it is appropriate that notice of the proposed assumption and/or assignment by the Debtors to the Stalking Horse Bidder (or any other party that may be the Successful Bidder (as defined below) or the Backup Bidder (as defined below)) of any executory contracts and unexpired leases to which either of the Debtors is a party (collectively, the "**Assumed Contracts**") be sent to each lessor or other party to any Assumed Contract (collectively, the "**Contract Parties**") to be assumed and/or assigned to the Stalking Horse Bidder (or any other party that may be the Successful Bidder or the Backup Bidder) in accordance with the provisions of this Order. The Court finds that it is also appropriate to require the establishment of a deadline for the filing and service by the Contract Parties of written objections to, and/or the assertion of any cure claims, defaults, or any other claims against the Debtors in connection with, the proposed assumption and/or assignment of any Assumed Contract to the Stalking Horse Bidder (or any other party that may be the Successful Bidder or the Backup Bidder).

The Court finds that notice of the Motion and the relief sought therein and the notice of the Hearing to creditors and other parties in interest was sufficient under the circumstances, that such notice complied with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, and that the parties have proceeded in good faith. Accordingly, it is

**ORDERED**:

1.      The Motion is GRANTED to the extent set forth herein below.

2.      All objections to the Motion raised on the record at the Hearing that were not consensually resolved at the Hearing are hereby overruled, including but not limited to the Objections; provided, however, that any and all objections to the Sale Motion or the Sale itself (including without limitation the Auction, the proposed assumption or assignment of any executory contract or unexpired leases, or the cure of any defaults existing thereunder) are reserved.

3.      The Debtors shall, within five (5) business days following the date of entry of this Order, mail a copy of this Order and the Sale Motion (to the extent not already served), by United States first class mail, to (i) all parties and creditors on the Court's mailing matrices for these cases (including all parties listed on the Local Rule 1007-2 Parties in Interest List for these cases), (ii) all parties which, to the knowledge of the Debtors, have, or have asserted, liens on the Assets, (iii) all parties on the Bidder List, and (iv) all Contract Parties.  The Debtors shall thereafter file a certificate of service with the Court.  The Court approves the form and manner of such notice as being adequate and sufficient notice of the Bid Procedures (as defined below), the proposed sale of the Assets (including the assumption and/or assignment of the Assumed Contracts), and the objection deadlines set forth herein, and finds that such notice complies with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

4863-6200-0773, v. 8

4.      The Stalking Horse Bidder is approved as the "stalking horse bidder" as to the Mississippi Location, the Milton Location, and the Orlando Location. The Connecticut Stalking Horse Bidder (as defined herein), upon filing with this Court a notice of the Stalking Horse APA, shall be approved as the Connecticut Stalking Horse Bidder

5.      On account of the Stalking Horse Bidder's time, expenses, fees, costs, trouble and lost opportunity costs in respect of the transactions contemplated by the Stalking Horse APA, the Court finds that the Stalking Horse Expense Reimbursement is reasonable under the circumstances and approves the Stalking Horse Expense Reimbursement for the Stalking Horse Bidder in the amount of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) (the "**Stalking Horse Expense Reimbursement**").  The Stalking Horse Expense Reimbursement shall be due and payable as set forth in paragraph 12 of this Order.

6.      A hearing (the "**Sale Hearing**") to consider approval of the Sale Motion and the Stalking Horse APA (including that it is the highest and best offer for the Assets) and to consider any timely filed objections thereto, and to consider approval of any higher and better offers for the Assets submitted in accordance with the Bid Procedures set forth in this Order, shall be held before the Honorable Grace E. Robson George C. Young Courthouse, 400 West Washington Street, Courtroom 6D, 6th Floor, Orlando, Florida, **Tuesday, November 21, 2023 at 1:30 p.m.**  The Sale Hearing may be adjourned and/or continued in open Court from time to time without further notice.

7.      The Court approves the following procedures (the "**Bid Procedures**") for the submission and consideration of any written competing bid ("**Bid**") by any competing bidder ("**Bidder**") for the Assets:

(a)      Prior to the receipt by a prospective Bidder of any information from, and access to, the Debtors, each such Bidder will be required to execute a confidentiality and non-disclosure agreement in form and content acceptable to the Debtors (the "**NDA**"), to

the extent not already executed.  Upon the execution of an NDA, each Bidder will be granted access to the Debtors' virtual data room.

(b)      At least five (5) business days prior to the Bid Deadline (as defined below), or such later date agreed to by the Debtors after prior consultation with the Consultation Party, a Bidder will be required to provide to the Debtors relevant background and financial information (including, without limitation, such Bidder's latest available audited and unaudited financial statements) satisfactory to the Debtors demonstrating the Bidder's financial ability to close and to consummate an acquisition of the Assets, such as (i) evidence of the Bidder's ability to assume or satisfy the terms and obligations of the Bidder's Agreement and pay the purchase price provided for therein and to provide adequate assurance of future performance by such Bidder of the Contracts, and/or (ii) an unconditional lending commitment from a recognized financial institution or cash sources in the amount of the cash consideration set forth in the Bid.  A Bidder (including the Stalking Horse Bidder) that timely submits the foregoing documents and information and that the Debtors determine, in consultation with the Consultation Party, is financially able to consummate the purchase of the Assets shall be a "**Qualified Bidder**" and shall be entitled to then submit a Bid for the Assets as described in paragraph 7(e) below.  The Stalking Horse Bidder is, and shall at all times remain, a Qualified Bidder and the bid submitted by the Stalking Horse Bidder a Qualified Bid.

(c)      Any Qualified Bidder desiring to make a Bid for all or any of the Assets shall deliver the Bid, by electronic mail transmission, to counsel to the Debtors, Daniel R. Fogarty, Esq., Stichter, Riedel, Blain & Postler, P.A., (dfogarty@srbp.com), and the financial advisors to the Debtors, Charles Reardon and Michael Freeman, Asgaard Capital, LLC, (creardon@asgaardcapital.com, mfreeman@asgaardcapital.com), **by no later than 5:00 p.m. (Eastern Prevailing Time) on Thursday, November 16, 2023** (or such later time or date agreed to by the Debtors) (the "**Bid Deadline**").  Upon receipt of a Bid, counsel to the Debtors shall deliver each such Bid, by electronic mail transmission, to (i) the Office of the United States Trustee, Attn: Scott Bomkamp, Esq., (scott.e.bomkamp@usdoj.gov), (ii) the Subchapter V Trustee, L. Todd Budgen, Esq. (todd@c11Trustee.com), (iii) counsel for the DIP Lenders, Robert J. Dehney, Esq., Morris, Nichols, Arsht & Tunnell, LLP (rdehney@morrisnichols.com), (iv) counsel for the Stalking Horse Bidder(s); and (v) counsel to any Qualified Bidder who submits a Qualified Bid.

(d)      **Notwithstanding anything to the contrary in these Bid Procedures, any Bidder may submit a Bid to purchase only such Assets owned by or utilized by the Debtors as it deems necessary or appropriate, whether any specific Assets owned or utilized by the Debtors are proposed to be purchased by the Stalking Horse Bidder pursuant to the Stalking Horse APA.  By way of example but not by way of limitation, a Bidder may submit a Bid to purchase the Assets of a single Debtor or the Assets of more than one of the Debtors, only the Assets utilized at one Location or the Assets utilized at more than one Location, and so forth.  There shall be no restrictions of any nature as to the number and type of Assets that a Bidder may seek to purchase.**

(e)      In order to be a qualified bid (a "**Qualified Bid**"), a Bid submitted by a Qualified Bidder must include, or be in compliance with, the following (unless any such

item is otherwise waived in writing by the Debtors after prior consultation with the Consultation Party):

       i.      A copy of the initial written purchase offer in the form of an asset purchase agreement, executed by such Qualified Bidder, in substantially the form of the Stalking Horse APA (collectively, the "**Bidder's Agreement**"); provided, however, that any Bidder's Agreement that contain terms or language different from the Stalking Horse APA must be black-lined to show any changes made by such Qualified Bidder to the form of the Stalking Horse APA, as the case may be. The Debtors may accept modifications to the Stalking Horse APA as submitted by a Qualified Bidder who otherwise complies with the Bid Procedures if the Debtors determine, in the exercise of their business judgment and after prior consultation with the Consultation Party, that the proposed modifications result in a higher and better offer for the Assets or the proposed modifications are necessary due to the fact that the Qualified Bidder is not seeking to purchase substantially all of the Assets.

       ii.      An initial Bid with a purchase price above the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse APA (the "**Stalking Horse Bidder Purchase Price**") in an amount equal to or greater than the total sum of the Stalking Horse Bidder Purchase Price plus cash in the amount of not less than Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00), provided that, if the Bid is for less than all of the Assets, the initial Bid shall be an amount equal to or greater than the Stalking Horse Bidder Purchase Price for the applicable Assets located at and/or related one (1) or more Locations and subject to the Bid, plus cash in the amount of not less than One Hundred Thousand and 00/100 Dollars ($100,000.00) (collectively, the "**Initial Overbid Amount**") per each location. If a Bid is for the Assets at one (1) or more Locations, the Stalking Horse Bidder Purchase Price for the applicable Assets shall be the value ascribed to the Assets at such Location(s) as set forth in the Purchase Price Allocation (as defined in the Stalking Horse APA, but subject to Stalking Horse Bidder's ability to adjust the Purchase Price Allocation (as set forth in the Stalking Horse APA)). The cash portion of the Qualified Bidder's purchase price shall be payable, in immediately available funds, at the closing of the transaction. Any Bid for less than all of the Assets shall be for the purchase of all of the Assets located at and/or related to one (1) or more Locations.

       iii.      Following the Connecticut Stalking Horse Bid Deadline (as defined below), prior to the Auction, the Debtors, in their reasonable discretion and after consultation with the Consultation Party, shall have the right to (a) accept any Qualified Bidder's Bid as a stalking horse Bid for the Assets located at and/or related to less than all but for one (1) or more Locations provided that (i) such Bid is equal to or greater in amount than the Initial Overbid Amount attributable to the Assets located at and/or related to such Location(s) and that the sum of such Bid and the Initial Overbid Amount attributed to the Assets located at and/or related to the remaining Locations exceeds the amount of the Stalking Horse Bid, and (ii) such Bid is otherwise in compliance with the Bid Procedures, and grant customary

bid protections for such stalking horse Bids including, without limitation, a breakup fee in an amount equal to three percent (3%) of the purchase price for the Assets contained in the stalking horse Bid, and (b) set reserve prices for the Assets located at and/or related to one (1) more Locations. The Debtors shall have until Thursday, November 9, 2023 (the "**Connecticut Stalking Horse Bid Deadline**") to accept a stalking horse Bid for the Connecticut Location (the "**Connecticut Stalking Horse APA**" and together with the Stalking Horse APA, each a "**Stalking Horse APA**" and, collectively, the "**Stalking Horse APAs**") and grant the bid protections to such bidder (the "**Connecticut Stalking Horse Bidder**" and together with the Stalking Horse Bidder," each a "**Stalking Horse Bidder**" and, collectively, the "**Stalking Horse Bidders**"), including the breakup fee, identified herein and to file with this Court a notice of the receipt of the Connecticut Stalking Horse APA, with the form of the Connecticut Stalking Horse APA attached.

iv.    To the extent practicable, a statement that specifically sets forth the extent to which the Bid is higher and better than the offer set forth in either Stalking Horse APA, including an allocation of the cash components of the Bid to (A) the Assets and the Locations of each of the Debtors being purchased by the Qualified Bidder, (B) the claims against, and liabilities of, the Debtors being assumed as Assumed Liabilities.

v.    A designation of any executory contracts or unexpired non-residential real property leases such Qualified Bidder desires the Debtors to assume and/or assign to such Qualified Bidder under its Bidder's Agreement with the Debtors (the "**Designated Contracts**"), as well as a designation of any governmental approvals or consents required in connection therewith and, in the case of assumption and/or assignment, documents and information necessary to confirm adequate assurance of future performance by such Qualified Bidder pursuant to Section 365 of the Bankruptcy Code.  In the event that any of the Designated Contracts are not included in the list of Assumed Contracts set forth in the either of the Stalking Horse APAs, such Qualified Bidder shall, within one (1) business day of the Bid Deadline, serve a copy of this Order and Exhibit A attached hereto on any party to such additional Designated Contract(s) and thereafter file a certificate of service with the Court.

vi.    The Bid shall not be contingent upon the receipt of financing or due diligence by the Qualified Bidder past the Bid Deadline.

vii.    The Bid shall provide that the Assets owned or held by the Debtors shall be sold on an "AS IS, WHERE IS" basis and the representations, warranties and covenants of the Debtors set forth in the Bidder's Agreement with the Debtors shall expire as of the closing of the sale transaction.

viii.    The Bid shall be valid and enforceable and binding on the Qualified Bidder through the closing date of its sale transaction.  The Bidder's Agreement shall be subject to acceptance by the Debtors solely by their execution thereof and necessary Court approval.

ix.      The Bid shall not contain any conditions precedent to such Qualified Bidder's obligation to purchase the Assets and assume and perform any liabilities to be assumed and to close the sale transaction, other than as may be included in the applicable Stalking Horse APA or as agreed by the Debtors after prior consultation with the Consultation Party.

x.      A good faith deposit in the amount of not less than the lesser of (i) ten percent (10%) of the Initial Overbid Amount, but in no event less than Fifty Thousand and 00/100 ($50,000.00), (ii) Two Hundred Thousand and 00/100 Dollars ($200,000.00) (the "**Bid Deposit**"), or (iii) such amount as may otherwise be reflected as the amount of the Bid Deposit in the applicable Stalking Horse APA, shall be delivered by the Qualified Bidder, by wire transfer of immediately available funds, to SRBP by no later than the Bid Deadline (or such later time or date agreed to by the Debtors after prior consultation with the Consultation Party). The Bid Deposit shall be deposited into a non-IOTA non-interest bearing trust account maintained by SRBP and shall be held in escrow subject to the terms of this Order.  SRBP will provide wire transfer instructions upon any request received from a Qualified Bidder.  Such Bid Deposit will be non-refundable to the Qualified Bidder in the event such Qualified Bidder's Bid is approved by the Court at the Sale Hearing as the highest and best offer for the Assets and such Qualified Bidder fails to close on the purchase of the Assets for any reason (subject to any conditions to closing set forth in its Bidder's Agreement approved by the Court).  The Bid Deposit will be applied against the purchase price paid to the Debtors by the Qualified Bidder at the closing.  Within fifteen (15) days following the entry of the Sale Order (as defined below), SRBP will return the Bid Deposit of any Qualified Bidder (except the Backup Bidder) that is not selected as having the highest and best offer for the Assets at the Sale Hearing.  The Bid Deposit of the Backup Bidder shall be returned to the Backup Bidder as provided in paragraph 7(o) below.

xi.      Full disclosure of each entity that will be participating in such Bid (including, but not limited to, disclosure of any "affiliate" or "insider" (as those terms are defined in Sections 101(2) and 101(31), respectively, of the Bankruptcy Code) of the Debtors that may have an interest in any such entity or any other person with an interest in, control over, or relationship with the Qualified Bidder) in order to satisfy the requirements set forth in Sections 363(m), 363(n), 365(b), and 365(f)(2) of the Bankruptcy Code.  On or before the Bid Deadline, each Stalking Horse Bidder shall simultaneously submit the foregoing disclosure to the Debtors.

xii.      The Bid shall set forth (A) any applicable governmental, regulatory, or other approvals and any applicable consents that would be required to be obtained were the Qualified Bidder to be the Successful Bidder, (B) all actions taken or to be taken to obtain such approvals or consents, (C) any approvals or consents obtained, and (D) the Qualified Bidder's best estimates as to the likelihood and timing of any such approvals or consents.  On or before the Bid Deadline, the Stalking Horse Bidder shall simultaneously submit the foregoing information to the Debtors and the Consultation Party.

xiii.    Each Bidder shall acknowledge and agree to be bound by the Cooperation Protocol attached hereto as <u>Exhibit B</u>.

(f)    An auction (the "**Auction**") to consider any competing Qualified Bids in respect of the Assets will be held at the offices of Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602 (or at such other location designated by the Debtors in Tampa, Florida) **on Monday, November 20, 2023 at 12:00 p.m.** (or such later time or date agreed to by the Debtors, after prior consultation with the Consultation Party, or as may be scheduled by the Court). By no later than **Friday, November 17, 2023 at 5:00 p.m.**, the Debtors, after consultation with the Consultation Party, will advise each of the Qualified Bidders as to whether its Bid is a Qualified Bid and whether an Auction will be held as scheduled above.  All potential Qualified Bidders or their authorized representative(s) with full authority to participate in the Auction must be present in person at the Auction.  Requests to participate by video conference will be considered on a case-by-case basis.  For the avoidance of doubt, Zodiac and its authorized representatives (but not in a capacity as a Qualified Bidder) shall be permitted to attend the Auction in person or by video conference.

(g)    The Debtors will file a notice with the Court at least one (1) day prior to the date of the Auction indicating the number of Qualified Bids received and the names of the Qualified Bidders, and will serve such notice, along with copies of the Qualified Bids, by electronic mail transmission, on counsel to or representatives of all Qualified Bidders and Zodiac.

(h)    The Debtors and their professionals shall direct and preside over the Auction. The Auction will be conducted in rounds.  To maximize the value of the Assets for the estates and all creditors, the Auction will be conducted to allow bidding each round on all or less than all Assets, as established by the Debtors and their professionals; provided, however, that the Debtors will not consider as a higher or better offer a bid that provides less for the Assets of one of the Debtors than would be provided for the Assets of such Debtor in a bid for all of the Assets. Bidding will begin at the purchase price stated in the highest and best Qualified Bid or combination of Qualified Bids (the "**Initial Bid**") as selected by the Debtors in consultation with the Consultation Party prior to the commencement of the Auction and announced at the start of the Auction.  All subsequent bids at the Auction above the Initial Bid (including any subsequent bid which may be made by the Stalking Horse Bidder) must be in incremental increases of at least One Hundred Thousand and 00/100 Dollars ($100,000.00) (the "**Subsequent Overbid Amount**" and, together with the Initial Overbid Amount, the "**Overbid Amounts**").  For the avoidance of doubt, the Stalking Horse Expense Reimbursement shall be credited to each bid of the Stalking Horse Bidder made at the Auction for all the Assets.  The Debtors shall have the ability to alter the bid increments at the Auction to maximize the value of the Assets for the estates.

(i)    Any Qualified Bidder (including the Stalking Horse Bidder) shall be entitled to submit further bids at the Auction.  Any successive bid submitted at the Auction shall be irrevocable through the Auction process unless and until it is declared to not be the highest and best bid.  The allocation of any higher and better increased bid amounts

submitted at the Auction between the Assets of the Debtors as applicable shall be resolved by the Debtors after prior consultation with the Consultation Party. At the Auction, the Debtors may request a Qualified Bidder to provide additional information demonstrating the Qualified Bidder's financial ability to close and to consummate an acquisition of the Assets.  The competitive bidding process among Qualified Bidders at the Auction shall continue according to the Bid Procedures until the Debtors determine, in the exercise of their business judgment and after consultation with the Consultation Party, that one or more Qualified Bidders have made the highest and best offer to purchase the Assets, either through a single Qualified Bid for all of the Assets or through more than one Qualified Bid for separate Assets.  Each Qualified Bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the Bid, the Auction, or the Sale.

(j)    The Debtors, after prior consultation with the Consultation Party, may continue or adjourn the Auction from time to time with reasonable notice to the Qualified Bidders. The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent with the Bid Procedures.

(k)    At the Sale Hearing, the Debtors will inform the Court of the results of the Auction and will recommend to the Court the Qualified Bid or combination of Qualified Bids that they consider to be the highest and best offer(s) for the Assets, after taking into account all aspects of the Stalking Horse APA, the Qualified Bids and the Bidder's Agreement (including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, any contractual adjustments to the purchase price, any liabilities of the Debtors to be assumed, the provision for adequate assurance of future performance of the Assumed Contracts, any conditions to closing, the time for closing, and the representations, warranties, and covenants to be provided by the Debtors, prior to closing).  The value of a Qualified Bid, for purposes of these proceedings, shall be determined by comparing, among other things, (i) the type, number and nature of any changes in the Bidder's Agreement requested by each Qualified Bidder, (ii) the extent to which such modifications are likely to delay the closing of the sale to such Qualified Bidder, and the cost to the Debtors and their estates of such modifications or delay, (iii) the extent to which such Qualified Bid includes the purchase of all or less than all of the Assets, (iv) the type and amount of consideration to be received by the Debtors' estates, individually and collectively, (v) the existence of any financing, due diligence or other contingencies, (vi) the amount of any cure payments, which, if paid, would reduce the proceeds available for distribution to creditors of the Debtors, (vii) the provision for adequate assurance of future performance of the Assumed Contracts, (viii) the likelihood of the Qualified Bidder's ability to close the sale transaction, including the likelihood of receipt by such Qualified Bidder of the necessary approvals with respect to the Assumed Contracts following the closing, and (ix) the net benefit to the Debtors' estates and their creditors, including but not limited to the amount of proceeds to be received by the Debtors individually and collectively from one transaction for the purchase of all of their Assets as compared to the aggregate proceeds to be received by the Debtors from piecemeal sales of their Assets.  All Qualified Bidders or their authorized representatives must be present at

12

the Sale Hearing. The Court will determine the highest and best offer for the Assets at the Sale Hearing. ANY SALE WILL BE SUBJECT TO APPROVAL OF THE COURT.

(l)     Prior to the Auction, the Debtors, in their reasonable discretion and after consultation with the Consultation Party, shall have the right to reject any and all Bids other than any Bid that is a Qualified Bid.

(m)     If any Bid does not conform to all of the requirements set forth above, such Bid will not be considered by the Court or be admissible at the Sale Hearing, unless otherwise agreed by the Debtors, after prior consultation with the Consultation Party, or otherwise ordered by the Court.

(n)     The Qualified Bidder whose Qualified Bid is selected by the Court at the Sale Hearing as the highest and best offer for the Assets shall be deemed the "**Successful Bidder**".

(o)     The Court shall register the second highest Qualified Bid and Qualified Bidder (the "**Backup Bidder**"), whose Bidder's Agreement shall be a binding contract with the Debtors, respectively, and who shall close, without the necessity of further Court order, in the event the Successful Bidder fails to consummate the acquisition of the Assets in accordance with its Bidder's Agreement and the order granting the Sale Motion (the "**Sale Order**"). Any closing with the Backup Bidder shall occur within ten (10) days of written notification to the Backup Bidder that the Successful Bidder failed to close. The Bid Deposit of the Backup Bidder shall be retained by SRBP until the closing of the sale with the Successful Bidder, and shall be returned to the Backup Bidder within two (2) business days following such closing. In the event the Successful Bidder fails to close on the sale transaction in accordance with its Bidder's Agreement (or the Stalking Horse APA in the event that the Stalking Horse Bidder is the Successful Bidder), the Debtors shall keep the Bid Deposit of such Successful Bidder (or the Deposit in the case of the Stalking Horse Bidder) and the Debtors or their estates reserve the right to pursue all available remedies, whether legal or equitable, available to the Debtors against such party. In the event the Successful Bidder fails to close on the sale transaction in accordance with its Bidder's Agreement (or the Stalking Horse APA in the event that the Stalking Horse Bidder is the Successful Bidder), and the Backup Bidder thereafter fails to close on the sale transaction in accordance with its Bidder's Agreement (or the Stalking Horse APA in the event that the Stalking Horse Bidder is the Backup Bidder), the Debtors shall keep the Bid Deposit of such Backup Bidder (or the Deposit in the case of the Stalking Horse Bidder) and the Debtors or their estates reserve the right to pursue all available remedies, whether legal or equitable, available to the Debtors against such party.

(p)     At the Sale Hearing, the Debtors will request that the Court make certain findings regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder and the Backup Bidder were selected in accordance with the Bid Procedures, (ii) the Auction was fair in substance and procedure, (iii) the bids of the Successful Bidder and the Backup Bidder were Qualified Bids as defined in this Order, and (iv) consummation of the sale contemplated by the bid of the Successful Bidder will provide the highest and best value for the Assets and is in the best interests of the

Debtors, their estates, and their creditors.  At the Sale Hearing, the Debtors will also request that the Court find that each of the Successful Bidder and the Backup Bidder is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code such that the reversal or modification on appeal of the sale of the Assets to the Successful Bidder or the Backup Bidder shall not affect the validity of the sale to the Successful Bidder or the Backup Bidder, whether or not the Successful Bidder or the Backup Bidder knew of the pendency of the appeal.

(q)      After the Sale Hearing, the Debtors shall submit to the Court a proposed Sale Order authorizing and approving the Bidder's Agreement executed by the Successful Bidder or the Backup Bidder, as applicable (or the Stalking Horse APA if such party is the Stalking Horse Bidder), and authorizing the Debtors' execution of, entry into, and consummation of the Successful Bidder's or the Backup Bidder's, as applicable, Bidder's Agreement (or the Stalking Horse APA if such party is the Stalking Horse Bidder).

(r)      All Qualified Bidders, the Successful Bidder, and the Backup Bidder shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Bid Procedures, the Auction, or the sale of the Assets.  All purchase agreements shall be governed by and construed in accordance with the laws of the State of Florida.

(s)      Except for the Stalking Horse Bidder for the Stalking Horse Expense Reimbursement, or as provided in paragraph 7(e)(iii) above, no Bidder submitting any Bid shall be entitled to any expense reimbursement or any break-up, termination, or similar fee or payment.

8.      Any creditor or other party in interest objecting to the Sale Motion or the sale of the Assets to the Stalking Horse Bidder or the Stalking Horse APA must file written objections with the Court and serve same upon counsel to the Debtors **by no later than 5:00 p.m. (Eastern Prevailing Time) on Monday November 20, 2023**, without prejudice to the Debtors conducting the Auction as described above. Any such objection shall set forth with specificity the grounds for such objection. Any creditor or other party in interest not timely filing such written objection shall be conclusively deemed to have waived any objection it may have to (i) the sale of the Assets to the Stalking Horse Bidder, (ii) the Stalking Horse APA, or (iii) the selection of the Stalking Horse Bidder's offer as the highest and best offer for the Assets. Any timely filed objections to the Sale Motion or the sale of the Assets will be heard at the Sale Hearing, as well as any objection to the

Bid of any other Qualified Bidder or the conduct of the Auction (which objections may be made at the Sale Hearing).

9.      On or prior to **November 9, 2023**, the Debtors shall file with the Court and serve on each counterparty to an Assumed Contract that the Debtors may assume and/or assign to the Stalking Horse Bidder (or another Qualified Bidder if the Stalking Horse Bidder is not the Successful Bidder or the Backup Bidder), a notice of assumption and/or assignment as to the Assumed Contracts in substantially the form of the Contract Assumption Notice attached hereto as <u>Exhibit A</u>.

10.     Any lessor or other party to any Assumed Contract to be assumed and/or assigned to the Stalking Horse Bidder (or another Qualified Bidder if the Stalking Horse Bidder is not the Successful Bidder or the Backup Bidder) that objects to, and/or asserts any cure claims, defaults or any other claims against the Debtors in connection with, the proposed assumption and/or assignment of its Assumed Contract must file with the Court, **<u>by no later than 5:00 p.m. (Eastern Prevailing Time) on Friday, November 17, 2023</u>**, any objection to the assumption and/or assignment of its Assumed Contract and/or assertion of claim or default in connection with its Assumed Contract (a "**Contract Objection**"), which Contract Objection shall set forth:

      a.      the specific grounds for such Contract Objection;

      b.      any and all defaults of the Debtors (whether monetary or non-monetary) that it alleges are in existence under such Assumed Contract and, (i) if such alleged defaults are monetary, the nature of such monetary defaults (including the date and amount of any payment allegedly due under the Assumed Contract) and cure amounts, if any, due and owing by the Debtors pursuant to 11 U.S.C. §365(b) and, (ii) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults, and in each such case applicable and appropriate documentation in support of such alleged defaults; and

      c.      any and all claims of any nature whatsoever against the Debtors.

4863-6200-0773, v. 8

11.     Any lessor or other party to any Assumed Contract who fails to timely file a written Contract Objection to the proposed assumption and/or assignment of its Assumed Contract as set forth above shall be conclusively deemed to have waived, and shall be forever barred from asserting, any such Contract Objection and to have consented to the assumption and/or assignment of its Assumed Contract to the Successful Bidder or any Backup Bidder.  Any lessor or other party to an Assumed Contract not specifying any default or claim as required herein shall be deemed to have conclusively acknowledged that no default or claim exists under any such Assumed Contract. In the event that the Stalking Horse Bidder is not the Successful Bidder, any lessor or other party to any Assumed Contract may raise objections at the Sale Hearing to adequate assurance of future performance by the Successful Bidder.

12.     The Stalking Horse Expense Reimbursement shall only be due and payable in the event that (i) the Stalking Horse Bidder remains willing, and is able, to proceed with the transactions contemplated by, and is not in breach of any of its obligations to the Debtors including under the Stalking Horse APA, and (ii) is not the Successful Bidder at the Auction  for any of the Assets, and (iii) the Assets of the Debtors including any Carved-Out Assets are actually sold to a party or combination of parties other than the Stalking Horse Bidder (an "**Alternative Transaction**"). The Stalking Horse Bidder shall provide to the Debtors, the Consultation Party, and Zodiac reasonable documentation supporting the actual amount of the Stalking Horse Expense Reimbursement, subject to the cap on the amount of the Stalking Horse Expense Reimbursement. Subject to documentation, the Stalking Horse Expense Reimbursement, if earned, shall be paid from the proceeds of the closing of the Alternative Transaction. The Stalking Horse Expense Reimbursement, less any amounts subject to dispute (the "**Disputed Amount**"), shall be paid as a closing expense out of the proceeds of the sale of the Assets at the closing of such sale. The

Stalking Horse Expense Reimbursement shall be paid ahead of, and not be subject to, any liens or claims against the Debtors' estates and/or the Assets or their proceeds, including, but not limited to any liens or claims of the DIP Lender or Zodiac. Any Disputed Amount of the Stalking Horse Expense Reimbursement shall be held in escrow pending resolution of the dispute, at which time the Disputed Amount or the agreed upon portion thereof shall be delivered immediately to the Stalking Horse Bidder. In the event that only a portion of the Assets are sold to a Qualified Bidder other than the Stalking Horse Bidder: (a) the Stalking Horse Expense Reimbursement and the Stalking Horse Bidder's Bid Deposit shall be calculated as set forth in the Stalking Horse APA; and (b) Stalking Horse Bidder will retain certain rights to terminate the Stalking Horse APA, as set forth in the Stalking Horse APA. For the avoidance of doubt, Zodiac shall be entitled to dispute the Stalking Horse Expense Reimbursement.

13.    The Court finds that the Bid Procedures, including the Overbid Amounts, are reasonable under the circumstances and approves the Bid Procedures, including the Overbid Amounts, in connection with any Bids to purchase the Assets.

14.    The granting of the Motion as set forth herein shall not constitute the approval of any sale of the Assets or any term or provision of the Stalking Horse APA, except with regard to the Stalking Horse Expense Reimbursement and the Overbid Amounts specifically approved herein and the other terms provided in this Order. All parties reserve all rights and defenses with respect to the Sale Motion and the Stalking Horse APA.

15.    To the extent there is any inconsistency between the provisions of this Order and the terms of the Stalking Horse APA, the provisions of the Stalking Horse APA shall control.

16.    The Court retains exclusive jurisdiction over any matter or dispute relating to the sale of the Assets, the Bid Procedures, the Auction, or any other matter or agreement (including

any asset purchase agreement) that in any way relates to the foregoing. Any party disputing the

Bid Procedures or any other matter that in any way relates to the foregoing shall file an objection

with the Court as soon as practicable to facilitate resolution of the objection.


Attorney Daniel R. Fogarty is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and to file a proof of service within three (3) days of entry of the Order.

<u>**Exhibit A**</u>

**Contract Assumption Notice**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| AVIATION SAFETY RESOURCES, INC., | Case No. 6:23-bk-4639-GER |
| S.E., INC., | Case No. 6:23-bk-4641-GER |
| PIONEER AEROSPACE CORPORATION | Case No. 6:23-bk-4643-GER |
| Debtors. | *Jointly Administered Under* |
| _____/ | *Case No. 623-bk-4639-GER* |
| S.E., INC., | Case No. 6:23-bk-4641-GER |
| PIONEER AEROSPACE CORPORATION | Case No. 6:23-bk-4643-GER |
| Applicable Debtors. | |
| _____/ | |

### NOTICE OF PROPOSED ASSUMPTION AND/OR ASSIGNMENT
### OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE THAT** the above-captioned debtors (the "**Debtors**") filed their Voluntary Petitions for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") and made elections to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended, on November 1, 2023.

**PLEASE TAKE FURTHER NOTICE THAT** on November 2, 2023, in connection with the proposed sale (the "**Sale**") of substantially all of the assets (collectively, the "**Assets**") of Pioneer Aerospace Corporation d/b/a ASR-Pioneer ("**Pioneer**") and S.E., Inc. d/b/a Strong Enterprises ("**Strong**" and together with Pioneer, the "**Applicable Debtors**") to Paradigm Parachute and Defense, Inc. or its designee ("**Paradigm**") or any other successful bidder for the Assets at an auction for the Assets (the "**Auction**"), the Applicable Debtors filed with the Bankruptcy Court the *Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Their Assets; (II) Establishing*

*Procedures for the Assumption and/or Assignment By the Debtors of Certain Executory Contracts and Unexpired Leases; (III) Approving Minimum Overbid Amount and Break-Up Fee; (IV) Approving Form and Manner of Notice of Bidding Procedures; and (V) Setting Objection Deadlines* (Doc. No. 15) (the "**Bid Procedures Motion**") seeking, among other things, the entry of an order by the Bankruptcy Court (a) approving bidding procedures in connection with the sale of the Assets located in Bloomfield, Connecticut (the "**Connecticut Location**"), Columbia, Mississippi (the "**Mississippi Location**"), Milton, Florida (the "**Milton Location**"), and Orlando, Florida (the "**Orlando Location**," and together with the Connecticut Location, the Mississippi Location, and the Milton Location, each a "**Location**" and, collectively, the "**Locations**") to Paradigm as to the Mississippi Location, the Milton Location, and the Orlando Location, and such other bidders as may qualify as a stalking horse bidder for the Connecticut Location, and ultimately to the winning bidder at the Auction, (ii) establishing procedures for the assumption and/or assignment by the Debtors of certain executory contracts and unexpired leases to which the Debtors are a party (the "**Contracts**"),[1] (iii) approving a minimum overbid amount and an expense reimbursement in connection with such sale, (iv) approving the form and manner of notice of the bidding procedures, and (v) setting deadlines for objections to the sale.

**PLEASE TAKE FURTHER NOTICE THAT** on November 7, 2023, the Bankruptcy Court granted the Motion, and has entered or will enter its *Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Their Assets; (II) Establishing Procedures for the Assumption and/or*

---

[1] Certain Contracts of the Debtors are with customers who are also a Governmental Authority, or are otherwise subject to the assignment provisions of the Federal Acquisitions Regulations ("FAR"). To the extent that such Contracts might be subject to assumption and assignment only in accordance with the FAR, and without admitting such, the Debtors have (i) listed such Contract accordingly on Exhibit 1 to this Notice, and (ii) have agreed with the buyer(s) to cooperate in a novation of such contract.

*Assignment By the Debtors of Certain Executory Contracts and Unexpired Leases; (III) Approving Minimum Overbid Amount and Break-Up Fee; (IV) Approving Form and Manner of Notice of Bidding Procedures; and (V) Setting Objection Deadlines* (the "**Bid Procedures Order**")[2] granting the relief sought in the Bid Procedures Motion, including, among other things, approving (a) bidding procedures for the Sale of the Assets and (b) procedures for the assumption and/or assignment by the Applicable Debtors of the Contracts (the "**Assumption and Assignment Procedures**"). A copy of the Bid Procedures Order (which incorporates the Assumption and Assignment Procedures) will be provided separately.

     **PLEASE TAKE FURTHER NOTICE THAT** upon the closing of the Sale, the Applicable Debtors may assume and/or assign to the Successful Bidder the Contracts set forth on **Exhibit 1** attached hereto (collectively, the "**Assumed Contracts**").

     **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO AN ASSUMED CONTRACT.** Under the terms of the Stalking Horse APA, the Successful Bidder may remove a Contract from the list of Assumed Contracts.

### Obtaining Additional Information

     Copies of the Bid Procedures Order, the Stalking Horse APA and any other related documents are available upon written request to Debtors' counsel, Daniel R. Fogarty, Esq., Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602, dfogarty.ecf@srbp.com.

---

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Bid Procedures Order.

**Important Dates and Deadlines**

(a)     The deadline to submit a Qualified Bid is **5:00 p.m. (Eastern Prevailing Time) Thursday, November 16, 2023**.

(b)     The deadline to file an objection with the Bankruptcy Court to the entry of an order granting the Sale Motion is **5:00 p.m. (Eastern Prevailing Time) Monday, November 20, 2023**.

(c)     The deadline for all counterparties to Assumed Contracts to file an objection to the proposed assumption and/or assignment of their Assumed Contracts is **5:00 p.m. (Eastern Prevailing Time) Friday, November 17, 2023**.

(d)     The Auction shall be conducted on **Monday, November 20, 2023, at 12:00 p.m.** (or such later time or date agreed to by the Applicable Debtors, after prior consultation with the Consultation Party, or as may be scheduled by the Court) at the offices of Stichter, Riedel, Blain & Postler, P.A. in Tampa, Florida (or at such other location designated by the Debtors in Tampa, Florida), if one or more Qualified Bids are received by the Bid Deadline.

(e)     A hearing (the "**Sale Hearing**") to consider approval of the proposed Sale will be held on **Tuesday, November 21, 2023, at 1:30 p.m.**, before the Honorable Grace E. Robson George C. Young Courthouse, 400 West Washington Street, Courtroom 6D, 6th Floor, Orlando, Florida.

**Filing Objections to Assumption and Assignment of Contracts/Leases**

Any lessor or other party to any Assumed Contract to be assumed and/or assigned to the Successful Bidder that objects to, and/or asserts any cure claims, defaults or any other claims against the Applicable Debtors in connection with, the proposed assumption and/or assignment of

its Assumed Contract must file with the Bankruptcy Court, **by no later than 5:00 p.m. (Eastern Standard Time) on Friday, November 17, 2023**, any objection to the assumption and/or assignment of its Assumed Contract and/or assertion of claim or default in connection with its Assumed Contract (a "**Contract Objection**"), which Contract Objection shall set forth:

      a.      the specific grounds for such Contract Objection;

      b.      any and all defaults of the Debtors (whether monetary or non-monetary) that it alleges are in existence under such Assumed Contract and, (i) if such alleged defaults are monetary, the nature of such monetary defaults (including the date and amount of any payment allegedly due under the Assumed Contract) and cure amounts, if any, due and owing by the Applicable Debtors pursuant to 11 U.S.C. §365(b) (the "**Cure Amounts**") and, (ii) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults, and in each such case applicable and appropriate documentation in support of such alleged Cure Amount; and

      c.      any and all claims of any nature whatsoever against the Applicable Debtors.

Any lessor or other party to any Assumed Contract who fails to timely file a written Contract Objection to the proposed assumption and/or assignment of its Assumed Contract as set forth above shall be conclusively deemed to have waived, and shall be forever bound from asserting, any such Contract Objection and to have consented to the assumption and/or assignment of its Assumed Contract to the Successful Bidder or any Backup Bidder. Any lessor or other party to an Assumed Contract not specifying any default or claim as required herein shall be deemed to have conclusively acknowledged that no default or claim exists under any such Assumed Contract. In the event that Paradigm or any other stalking horse bidder is not the Successful Bidder, any

lessor or other party to any Assumed Contract may raise objections at the Sale Hearing to adequate assurance of future performance by the Successful Bidder.

Any Contract Objections will be considered at the Sale Hearing, or as soon thereafter as counsel may be heard, and must be served on the following parties:

        Daniel R. Fogarty, Esq.
        Stichter, Riedel, Blain & Postler, P.A.
        110 E. Madison Street, Suite 200
        Tampa, Florida 33602

        L. Todd Budgen
        Budgen Law
        P.O. Box 520546
        Longwood, Florida 32752

**<u>EXHIBIT 1</u>**

## **Exhibit B**

**Cooperation Protocol\***

**\* Counsel for Debtors shall file and serve separately.**