UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                          Chapter 11, Subchapter V

AVIATION SAFETY RESOURCES, INC.,    Case No. 6:23-bk-04641
S.E., INC. D/B/A STRONG ENTERPRISES,   Case No. 6:23-bk-04643
PIONEER AEROSPACE CORPORATION    Case No. 6:23-bk-04639
D/B/A ASR-PIONEER

                                                *Jointly Administered under*
   Debtors.                                     *Case No. 6:23-bk-04639*

_____

**DEBTORS' APPLICATION FOR AUTHORIZATION TO
EMPLOY ASGAARD CAPITAL AS FINANCIAL
ADVISOR AND TRANSACTION ADVISOR TO
THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

---

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Suite 555, Tampa, Florida 33602, within fourteen (14) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

---

AVIATION SAFETY RESOURCES, INC. ("**ASR**"), S.E., INC. D/B/A STRONG ENTERPRISES ("**Strong**") and PIONEER AEROSPACE CORPORATION D/B/A ASR-PIONEER ("**Pioneer**") (collectively, the "**Debtors**"), by and through their undersigned counsel, pursuant to §§ 105, 327(a), and 328(a) and Fed. R. Bankr. P. 2014(a), file this *Debtors' Application*

*for Authorization to Employ Asgaard Capital LLC, as Financial Advisor and Transaction Advisor to the Debtors Effective as of the Petition Date* (the "**Application**"), respectfully seeking the approval of the employment of Asgaard Capital LLC ("**Asgaard**") as financial advisor to the Debtors, effective as of the Petition Date (as defined below). In support of the Application, the Debtors rely on the *Declaration of Charles Reardon on Behalf of Asgaard Capital LLC, as Proposed Financial Advisor and Transaction Advisor to the Debtors, Effective as of the Petition Date* (the "**Reardon Declaration**") attached hereto as <u>**Exhibit A.**</u> In support of the Application, the Debtors respectfully represent as follows:

## I. <u>Jurisdiction and Venue</u>

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Application is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Section 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

## II. <u>Background</u>

3. On November 1, 2023 (the "**Petition Date**"), the Debtors filed with this Court Voluntary Petitions for Relief under Chapter 11 of Title 11 of the United States Code and made elections to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended

4. The Debtors continue to operate as debtors-in-possessions.

5. On November 3, 2023, this Court entered its Order Granting Debtor's *Ex Parte* Emergency Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b) in each of the Chapter 11 cases of the Debtors (collectively, the "**Joint**

2

**Administration Order**").  Pursuant to the Joint Administration Order, the Debtors' Chapter 11 cases are being jointly administered for procedural purposes only under In re: Aviation Safety Resources, Inc., Case No. 6:23-bk-04639.

6.      Pioneer is a venerable company with a long history of designing and manufacturing products for the aviation and aerospace industries.  Pioneer began in 1938, and most recently had a particular focus on designing and manufacturing parachutes for customers in the space and defense industries through manufacturing facilities in Bloomfield, Connecticut, Milton, Florida, and Columbia, Mississippi.  Strong also operates in the aviation, defense, and aerospace industries from its location in Orlando, Florida. ASR is the parent company for both Pioneer and Strong.

### III.      Relief Requested and Basis Therefor

7.      The Debtors seek to employ Asgaard as financial advisor and transaction advisor pursuant to the terms of that certain engagement letter dated as of October 31, 2023 (as may be amended from time to time, the "**Engagement Letter**").  A true and correct copy of the Engagement Letter is attached hereto as **Exhibit B.**  Through this Application, the Debtors seek to employ Asgaard as financial advisor and transaction advisor during the pendency of these chapter 11 cases, pursuant to the Engagement Letter (except to the extent this Court's order approving the Application expressly provides otherwise).  The requested retention by the Debtors is sought pursuant to Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014, the approval of Asgaard's hourly fees and expenses is sought pursuant to Section 330 of the Bankruptcy Code, and the approval of Asgaard's transaction-based fees is sought pursuant to Section 328(a) of the Bankruptcy Code.

8.      The Bankruptcy Code allows a debtor, with the Court's approval, to employ one or more professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Except as disclosed in the Reardon Declaration,

3

neither Charles Reardon ("**Reardon**") nor Asgaard has any connection with the creditors or other parties in interest or their respective attorneys.  As set forth in the Reardon Declaration, to the best knowledge of Reardon, neither he nor Asgaard represents any interest adverse to the Debtors.  As noted above, attached to this Application is the Reardon Declaration containing a verified statement as required under Rule 2014 of the Federal Rules of Bankruptcy Procedure and demonstrating that under these circumstances Reardon and Asgaard are disinterested as required by Section 327(a) of the Bankruptcy Code.

9.      Asgaard will apply for compensation and reimbursement of costs, pursuant to Sections 330 and 331 of the Bankruptcy Code for services rendered and costs incurred on behalf of the Debtors.

### A.      <u>Services to be Provided</u>

i.      review the Debtors' financial information and continue to advise the Debtors in connection with the Debtors' operations, opportunities, and business plan, and the Debtors' plan to effectuate a sale of operations as part of a bankruptcy case;

ii.      meet with the Debtors' management regularly to better understand the Debtors' financial projections (the "

iii.      ," and as may be modified hereinafter by the Debtors, the "<u>Projections</u>"), with a particular focus on the achievability thereof, including;

    a.      review on a line item basis the requisite people, sales pipelines, contract backlogs, revenue waterfall analysis, systems, and support needed to achieve the Projections;

    b.      help the Debtors identify key employees and develop appropriate communication and retention programs;

    c.      review existing contracts and customers, particularly in the context of whether each can be reasonably maintained at the levels contained in the Projections;

    d.      obtain a better understanding of the Debtors' IP, manufacturing capacities, and know how that might be attractive to parties in interest;

e.      work with the Debtors to better develop a vision for the future that might be attractive to prospective buyers or investors in the event a sale, investment, or similar transaction (whether in the short or long term) may be contemplated;

iv.      help the Debtors understand the types of transactions available to them, under a variety of contexts, including dealing with matters such as liquidity, union issues, pension issues, and possible dealings with prior ownership, all in the context of strategic alternatives that might be available;

v.      providing finance, sale, and management level support to the Debtors and their existing management, provided, however, that no Asgaard personnel shall be responsible for allocation of the Debtors' funds or determinations of the payment (or not) of any given Debtor's liabilities;

vi.      assist with communications with creditors and other parties in interest, including communications to employees, customers, and other key parties in order to seek to minimize the disruption as to any of the foregoing arising from a bankruptcy filing;

vii.      assist the Debtors in all aspects of its sale process, including negotiations with third parties, review of proposed purchase agreements (and in particular advise as to the Debtors' ability to satisfy the terms and conditions thereof), assisting in structuring the possible sales of the Debtors' operations as a whole, and/or in parts, assisting the Debtors and counsel in structuring an auction and sale process, providing testimony in the Bankruptcy Court, and all matters related to achieving a closing of a sale or sales; and

viii.      provide such other services as may be requested and agreed to by the parties.

10.      In addition, to the extent that the Debtors request additional advisory services, Asgaard will amend the Engagement Letter accordingly and seek approval of the Court. Asgaard may provide additional personnel as the Debtors may request to assist in performing the services described above and such other services as may be agreed to, on such terms and conditions and for such compensation as the Debtors and Asgaard shall agree.

**B.      Terms of Retention**

11.      The terms of Asgaard's proposed compensation are set forth in the Engagement Letter. Specifically, Asgaard's hourly fees will be based on the time spent by members of Asgaard at regular professional rates in effect at the time the Services are rendered. Any additional services

11838341-2
4879-3291-3548
4868-7186-3441, v. 1

beyond the scope of the services set forth above and in the Engagement Letter will be subject to the approval of the Court after notice and hearing.

12.     In addition to compensation for services rendered by Asgaard, Asgaard will seek reimbursement for reasonable and customary out-of-pocket expenses in connection with this assignment, such as telephone charges, overnight mail, messenger, travel, meals, accommodations and other expenses incurred by Asgaard on the Debtors' behalf, including any fees and expenses of Asgaard's counsel (also subject to review in any fee application) for Asgaard's retention, fee application submissions, and related legal advice over the course of the engagement.

13.     Also as set forth in the Engagement Letter, aside from Asgaard's hourly-based fees and expenses, Asgaard shall be entitled to transaction-based fees (subject to approval by this Court but on the standards set forth in 11 U.S.C. § 328(a), after application and notice required by Rule 2002 of the Federal Rules of Bankruptcy Procedure), of

(i)     with respect to any financing provided to the Debtors by any non-insider third party, a financing fee equal to the greater of (a) $25,000 or (b) 5% of any such financing received or committed,

(ii)    with respect to any sale, reorganization, or disposition of any or all of the Debtors' assets or operations, a transaction fee of $250,000, and

(iii)   with respect to the receipt of any recoveries or other consideration outside of the ordinary course of business by the Debtors, including tax refunds, claim or litigation recoveries, or other types of assets not sold or disposed of in the ordinary course of business, 10% of such recoveries or consideration.

14.     This is an unusual set of cases, in which there is substantial value to be had for creditors, but only if Asgaard and the Debtors' counsel are successful in getting to a sale, or a series of sales.  The Debtors operate on a very limited budget, with no traditional access to financing.  Many time over the last several months, the Debtors have been close to ceasing all operations, but for Asgaard's work in improving operations, finance functions, collections, finance

6

modeling, and manufacturing.  That said, the Debtors are now in a position to hopefully achieve one or more sales.  The transaction-based fees are designed to compensate Asgaard for the substantial work it is doing to get to successful sales and other non-ordinary course recoveries, and to compensate Asgaard for the substantial risk it will be taking in the event the Debtors do not achieve such goals, as the Debtors' cash on hand and cash from operations will not be sufficient to pay Asgaard its hourly fees as they are incurred.

### C.   Limitations on Liability and Indemnification Matters

15.     As set forth in the Engagement Letter, the Debtors agree that Asgaard and any of its Representatives (defined as all of Asgaard's owners, equity holders, officers, directors, members, managers, employees, agents, and independent contractors), which are collectively with Asgaard the "**Indemnified Persons**," are entitled to certain indemnity and limitation of liability rights.  These rights are set forth on Schedule A to the Engagement Letter, and shall control, subject to the limitation of any Order of this Court granting the Application.  As set forth in the attached proposed Order, the proposed Order limits such rights in a manner customary for cases filed in this Court or in other Bankruptcy Courts.

16.     Generally, the Engagement Letter and Schedule A provide that the Debtors will, subject to the limitations in the proposed Order, indemnify and hold harmless the Indemnified Persons from and against all losses, claims, damages, liabilities, or expenses (or any of the foregoing in any pending or threatened actions or proceedings, including those brought by security holders, creditors, or others), joint and several, relating in any way to or arising in any way from the Agreement or Asgaard's services under the Agreement (collectively, a "**Claim**" and/or "**Loss**").  The Debtors will, subject to the limitations in the proposed Order, including approval of an appropriate application by this Court, reimburse all Indemnified Persons promptly for all expenses (including counsel's reasonable fees and expenses) as they are incurred in connection

7

with the investigation of, preparation for, familiarization with, detailed understanding of, defense of, settlement or compromise of, or response to any pending or threatened Claim or Loss, or any such action or proceeding arising therefrom.  In addition, if requested by Asgaard or any other Indemnified Person, the Debtors shall, upon approval of an appropriate application by this Court, advance funds to them as security for the Company's obligations hereunder.

17.    In addition, Schedule A to the Engagement Letter provides that an Indemnified Person is not entitled to the indemnification if such Claim or Loss is finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

18.    The balance of the indemnity and limitation of liability provisions are set forth in Schedule A to the Engagement Letter, but they are also limited by the terms of the proposed Order.

**Asgaard's Qualifications**

19.    Asgaard and its professionals and employees have a wealth of experience in providing financial advisory services to distressed organizations, including those operating as chapter 11 debtors-in-possession.

20.    Specifically, Mr. Reardon is the founder, senior managing director and chief executive officer of Asgaard, and has over 20 years of experience in providing financial advisory services to companies who have experienced financial difficulties.  Mr. Reardon, as well as the rest of the Asgaard team, are accomplished in financial restructurings, operational improvement plans, complex distressed transactions, and cash management.  Attached hereto as **Exhibit C** is the Curriculum Vitae of Charles Reardon.  Mr. Reardon and his Asgaard team have worked for the Debtors since the spring of 2023, in order to right the operations, determine opportunities of the Debtors for a restructuring or sale, and then negotiate with parties for the potential purchase of the Debtors' assets and operations.

8

21.     Moreover, Mr. Michael Freeman, who has been leading the Asgaard's operational efforts for the Debtors since Asgaard was first engaged in the spring of 2023, has particular experience in management of distressed defense contractors and other government contractors, which by their nature are very unique in their operations and contracting.  Mr. Freeman also has substantial experience with foreign military sales, which is a material part of the Debtors' business. He is highly adept at implementing ISO 20000 & ISO 9001 standards; ISO stands for "International Standards Organization," and these standards ensures the Debtors' products meet high standards so as not to endanger soldiers or other users, or result in failed product through poor workmanship.  These standards, and Mr. Freemen's expertise in honoring and implementing them, set the Debtors' business apart from many substandard competitors.  Further, in these cases, Mr. Freeman has been the primary person dealing with the bidders and direct sales efforts, because of his extensive experience in government contracting, and selling companies that have material business and contracts with government agencies (or companies that purchase complex goods for government use).

22.     In addition, Mr. Freeman has ample restructuring experience, and has worked cooperatively with Mr. Reardon and the rest of the Asgaard team on operational and transactional issues in highly challenging cases such as these.  Attached hereto as **Exhibit D** is a summary of Mr. Freeman's applicable experience.

23.     The Debtors submit that the employment of Asgaard under the terms and conditions contained in the Engagement Letter (as modified by the proposed Order) will benefit the Debtors' estate and its creditors.  Asgaard presents a unique blend of operational and restructuring expertise – this is what the Debtors require.  The Debtors do not believe that other firms would have both the defense and government contracting expertise, and the complex restructuring expertise, that

11838341-2
4879-3291-3548
4868-7186-3441, v. 1

Asgaard offers. Moreover, the substantial risk of these cases, which can only succeed through a proposed complete sale (and no such sale had been agreed to until the Petition Date), make this continue to be a very challenging engagement, as it has been for Asgaard since it first began work for the Debtors.

24.      Wherefore, for all the foregoing reasons, the Debtors seek entry of the proposed Order approving the employment of Asgaard, effective as of the Petition Date.

WHEREFORE, the Debtors respectfully requests the entry of an order in the form annexed hereto as **Exhibit E** (i) approving this Application, (ii) authorizing the Debtors to engage Asgaard to provide financial advisory and sale advisory services during the pendency of these chapter 11 cases upon the terms and conditions contained in the Engagement Letter (except as expressly modified by the proposed Order), effective as of the Petition Date; and (iii) granting such other and further relief as may be just and proper.

AVIATION SAFETY RESOURCES, INC.,
S.E., INC. D/B/A STRONG ENTERPRISES,
PIONEER AEROSPACE CORPORATION
D/B/A ASR-PIONEER

By: _____

Michael Rinaldi, President

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtors' Application for Authorization to Employ Asgaard Capital LLC, as Financial Advisor and Transaction Advisor to the Debtors Effective as of the Petition Date* has been furnished on this 15th day of November, 2023, by the Court's CM/ECF electronic mail system to all parties receiving electronic noticing and by U.S. mail to the LBR 1007-2 parties in interest matrix.

/s/ Daniel R. Fogarty
Daniel R. Fogarty (FBN 0017532)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
Telephone: (813) 229-0144
Email: dfogarty@srbp.com
Attorneys for Debtors

11838341-2
4879-3291-3548
4868-7186-3441, v. 1

Label Matrix for local noticing
113A-6
Case 6:23-bk-04639-GER
Middle District of Florida
Orlando
Wed Nov 15 12:17:41 EST 2023

Aero-News Network/AeroPReneuer
P.O. Box 831
Orange Park, FL 32067-0831

AllRed & Associates, Inc.
321 Route 5 West
P.O. Box 321
Elbridge, NY 13060-0321

Brennan Manna Diamond
75 E. Market Street
Akron, OH 44308-2010

Claggett Properties, LLC
388 Enterprise Dr.
Nicholasville, KY 40356-2299

ClearingBid, Inc.
345 Lorton AveSuite 105
Burlingame, CA 94010-4134

Delta Natural Gas Company
P.O. Box 747108
Pittsburgh, PA 15274-7105

Frost Brown Todd LLC
P.O. Box 70087
Louisville, KY 40270-0087

GAMA
1400 K Street NW, Suite 801
Washington, DC 20005-2402

Howard O. Thrall
c/o Stonebriar Strategy Group, LLC
5 Woodcreek Lane
Frisco, TX 75034-6865

Kentucky Association of Manufacturers
P.O. Box 4029
Frankfort, KY 40604-4029

Kentucky Utilities
P.O. Box 25212
Lehigh Valley, PA 18002-5212

Larry Williams
c/o Robert K. Eddy, Esq.
320 W. Kennedy Blvd., #700
Tampa, FL 33606-1459

Marcia ˜LaVanway
6582 Keigley St.
P.O. Box 143
Eau Claire MI 49111-0143

Marlin Business Bank
P.O. Box 13604
Philadelphia, PA 19101-3604

National Institute for Aviation Research
Wichita State University
1845 Fairmount St.
Wichita, KS 67260-0093

National Retirement Fund
c/o Amalgamated Employee Benefits Adm
333 Westchester Ave.
White Plains, NY 10604-2938

Nicholasville Utilities
601 N. Main St.
Nicholasville, KY 40356-1070

Paradigm Parachute and Defense, Inc.
c/o Rilyn A. Carnahan, Esq.
Greenspoon Marder, LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401-6306

Pauley Management, Inc.
P.O. Box 321316
Cocoa Beach, FL 32932-1316

Phone.com
P.O. Box 1808
Poway, CA 92074-1808

Republic Services
National Accounts
P.O. Box 78829
Phoenix, AZ 85062-8829

Spectrum
P.O. Box 1060
Carol Stream, IL 60132-1060

U.S. Small Business Administration
2 North 20th St., #320
Birmingham, AL 35203-4002

Zodiac US Corporation
c/o Kevin Arocha
Bryan Cave Leighton Paisner, LLP
1201 Peachtree St., 14th Floor
Atlanta, GA 30361-3503

End of Label Matrix
Mailable recipients    24
Bypassed recipients     0
Total                  24

Label Matrix for local noticing
113A-6
Case 6:23-bk-04641-GER
Middle District of Florida
Orlando
Wed Nov 15 12:18:19 EST 2023

Aerial Delivery Solutions, LLC
3601 Commerce Blvd.
Kissimmee, FL 34741-4604

Airtech
MittelstraBe 69
Mittelstrabe 69, 33181 Bad
Wunnenberg, Germany

Aviation Safety Resource, Inc.
6448 Pinecastle Blvd., Suite 104
Orlando, FL 32809-6682

Bally Ribbon
23 N. 7th PO Box D
BALLY, PA 19503-1004

Bourdon Forge, Co., Inc.
99 Tuttle Rd
Middletown, CT 06457-1827

(p)CREDIT CONTROL  LLC
ATTN CORRESPONDENCE
3300 RIDER TRAIL S
SUITE 500
EARTH CITY MO 63045-1338

Daesung Forge
144-17 Gongdan-ro
Jain-Myeon Gyeongsan-si
Gyeongsanbuk-do, South Korea

Die - Matic Products LLC
130 Express St Engineers Hill
Plainview, NY 11803

Duke Energy
PO Box 1094
Charlotte, NC 28201-1094

Employers Preferred Insurance
26000 Cannon Rd.
Bedford, OH 44146-1807

GlobalTranz
One Glenlake Parkway Ste 700
Atlanta, GA 30328-3496

Guardian
PO Box 826486
Philadelphia, PA 19182-6486

HLC Industries
P.O. Box 1036
Charlotte, NC 28201-1036

Para-Gear Equipment Co.
3839 W. Oakton
Skoie, IL 60076-3483

Parachute Laboratories
1665 N. Lexington Ave., #106
Deland, FL 32724-2187

S.I.R. Webbing
P.O. Box 501
Hawthorne, NJ 07507-0501

(p)TFORCE FREIGHT
ATTN ANTHONY SCHRUNK
PO BOX 1216
RICHMOND VA 23218-1216

Tape Craft
P O Box 2027
Anniston, AL 36202-2027

UPS
PO Box 650116
Dallas, TX 75265-0116

United Health Care
PO Box 94017
Palatine, IL 60094-4017

Westmark Corporation
PO Box 98 42 Industrial Park Drive
Sterling, CT 06377-0098

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Credit Control LLC
Re:  Bank of America
3300 Rider Trail S., #500
Earth City, MO 63045

T-Force
1000 Semmes Avenue PO Box 1216
Richmond, VA 23218

End of Label Matrix
Mailable recipients      21
Bypassed recipients       0
Total                    21

Label Matrix for local noticing
113A-6
Case 6:23-bk-04643-GER
Middle District of Florida
Orlando
Wed Nov 15 12:18:53 EST 2023

ABB, Inc.
Attn: Real Estate Group
305 Gregson Dr.
Cary, NC 27511-6496

AT&T
P.O. Box 5019
Carol Stream, IL 60197-5019

Bluegrace Logistics
Dept. 108
Box 4964
Houston, TX 77210-4964

Bourdon Forge Co Inc
99 Tuttle Road
Middletown, CT 06457-1827

C Spire
P.O. Box 748168
Atlanta, GA 30374-8168

(p)CATERPILLAR FINANCIAL SERVICES CORPORATION
2120 WEST END AVENUE
NASHVILLE TN 37203-5341

Cistech Inc
10590 Independence
Pointe Pkwy. #202
Matthews, NC 28105

Comcast Business
P.O. Box 37601
Philadelphia, PA 19101-0601

(p)DE LAGE LANDEN FINANCIAL
ATTN LITIGATION & RECOVERY
1111 OLD EAGLE SCHOOL ROAD
WAYNE PA 19087-1453

Eagle Packaging
1075 S. Fairfield Drive
Pensacola, FL 32506-8927

HLC Industries
4 East Montgomery Ave
Bala Cynwyd, PA 19004-3300

Mississippi Power Company
P.O. Box 245
Birmingham, AL 35201-0245

National Institute for Aviation Research
Wichita State University
1845 Fairmount St.
Wichita, KS 67260-0093

National Retirement Fund
c/o Amalgamated Employee Benefits Adm
333 Westchester Ave.
White Plains, NY 10604-2938

Paradigm Parachute and Defense, Inc.
Greenspoon Marder, LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401-6306

Seko Worldwide Llc
1100 Arlington Heights Rd 600
Itasca, IL 60143-3180

Sturges Manufacturing Company Inc
2030 Sunset Ave
Utica, NY 13502-5500

Terry Service Inc
P.O. Box 1557
Ridgeland, MS 39158-1557

Town Of Bloomfield Connecticut
Attn Town Clerk
P.O. BOX 337
Bloomfield, CT 06002-0337

UPS
P.O. Box 809488
Chicago, IL 60680-9488

Xerox Corporation
PO Box 827598
Philadelphia, PA 19182-7598

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Caterpillar Financial Services
2120 West End Ave.
Nashville, TN 37203

De Lage Landen
P.O. Box 41602
Philadelphia, PA 19101-1602

End of Label Matrix
Mailable recipients    21
Bypassed recipients     0
Total                  21

## EXHIBIT "A"

**(Declaration of Charles Reardon)**

11838341-2
4879-3291-3548
4868-7186-3441, v. 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11, Subchapter V

AVIATION SAFETY RESOURCES, INC.,        Case No. 6:23-bk-04641
S.E., INC. D/B/A STRONG ENTERPRISES,    Case No. 6:23-bk-04643
PIONEER AEROSPACE CORPORATION           Case No. 6:23-bk-04639
D/B/A ASR-PIONEER

                                        *Jointly Administered under*
        Debtors.                        *Case No. 6:23-bk-04639*

_____

**DECLARATION OF CHARLES REARDON ON BEHALF OF ASGAARD CAPITAL LLC, AS PROPOSED FINANCIAL ADVISOR AND TRANSACTION ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

1.      My name is Charles Reardon.  I am over 18 years of age and competent to make this Declaration.

2.      I am the founder, the senior managing director, and the chief executive officer of Asgaard Capital LLC (the "**Firm**" or "**Asgaard**").  I am familiar with the matters set forth herein and make this declaration in support of the *Debtors' Application for Authorization to Employ Asgaard Capital LLC as Financial Advisor and Transaction Advisor to the Debtors Effective as of the Petition Date* (the "**Application**") filed by the above-captioned Debtors (collectively, the "**Debtors**").  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.

3.      Asgaard has worked for the Debtors since the end of April, 2023.  Since that time, Mr. Michael Freeman, one of Asgaard's consultants, has lead the part of the engagement dealing with the Debtors' operations, due to his unique expertise in working for distressed government contractors and defense contractors, as indicated in his curriculum vitae attached to the Application.  He has also played the primary role in interfacing with potential buyers.  I have lead

the Debtors' restructuring efforts, in order to determine, with the Debtors' management and board, whether the Debtors could obtain new financing (once the business was corrected), seek a reorganization or sale, or deal with the Debtors' creditors or other stakeholders to restructure the Debtors' businesses.  Both Mr. Freeman and I were assisted by various other Asgaard personnel since that time, and we have both been heavily involved in all aspects of the Debtors' business and restructuring and sale efforts, and in the Debtors' efforts to reach a point where interested buyers could work with the Debtors to complete a sale.

4.      The work of Asgaard is unique.  The Debtors are small operations, but very complex; to my knowledge, not many turnaround consultants have the expertise Asgaard does in government contracting and defense.   In addition, Asgaard is known for taking on risky engagements; it is also known for achieving superior results in such engagements.  This includes Asgaard's work for the Klausner Lumber One and Klausner Lumber Two bankruptcy estates (Case Nos. 20-11033 and 20-11-518, both in the Bankr. D. Del).   In the Klausner cases, Asgaard personnel took on the chief restructuring officer roles for two completely abandoned sawmills in April of 2020, as the onslaught of COVID began.   Despite having access to no money, no employees, limited records, and having a set of sawmills in complete disarray (indeed, one of which was abandoned even prior to full construction), Asgaard's efforts resulted in two Section 363 sales yielding over $150 million for creditors.  Asgaard received two awards for this work – for the Klausner matters as a whole, the 2022 TMA Turnaround/Transaction of the Year Award, and for the Klausner Lumber Two matter, the 2022 Turnaround Atlas Award for Cross Border Special Situations Deal of the Year.

5.      In any event, Asgaard specializes in very challenging matters in which often the only option is a sale, or a complete shutdown and liquidation, and Asgaard has a track record of

success, benefitting creditors, employees, and local economies.    While Asgaard's fees and expenses are in the higher range for cases of this kind, such fees and expenses are indicative of the risks Asgaard takes – including here, where Asgaard has written off almost $500,000 in pre-petition fees, and absent a post-petition sale or sales approved by this Court, prospects are grim for full payment of Asgaard's post-petition fees and expenses.    Asgaard's fees are also much lower than national firms that may have the breadth of Asgaard's expertise, but would charge much more, or would avoid engagements that have the serious payment and execution risk that this engagement has featured since it started in the spring of 2023.

6.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than in connection with these chapter 11 cases, neither I, nor Asgaard, nor any of its partners, principals, employees, agents, or affiliates, have any connection with the Debtors, their creditors, the United States Trustee, or any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants, except as set forth below:

(a)    Asgaard has previously been represented by the law firm of Morris, Nichols, Arsht & Tunnell ("**Morris Nichols**") in other matters.  None of those matters are currently pending, and thus there is no current attorney-client relationship between Asgaard & Morris Nichols.  In addition, in various distressed engagements in the past, Asgaard and Morris Nichols have shared a client – that is, Morris Nichols as counsel to a distressed company, and Asgaard as that distressed company's financial advisor, chief restructuring officer, or other similar role.  In the Debtors' chapter 11 cases, Morris Nichols is counsel to certain insiders in these chapter 11 cases, including Richard Spencer and Richard Sugden which are members of the Debtors' boards and who have provided pre-petition and post-petition loans to the Debtors.

(b)    Asgaard has previously been represented by the law firm of Bryan Cave Leighton Paisner, LLP ("**Bryan Cave**") in this and other matters.  Asgaard ceased being represented by Bryan Cave in late August, 2023, when Mark Duedall, Asgaard's primary attorney with Bryan Cave, left Bryan Cave to join Baker, Donelson, Bearman, Caldwell & Berkowitz, PC's ("**Baker Donelson**").  Baker Donelson now represents Asgaard in this and various other matters; in cases such as these, Baker Donelson's role is typically limited

3

to preparing retention papers (and assisting to the extent of any objections or hearings), assisting with fee applications (and assisting to the extent of any objections or hearings), and then other matters that may arise that pertain particularly to Asgaard.  In the Debtors' chapter 11 cases, Bryan Cave is counsel to Zodiac US Corporation ("**Zodiac**"); Zodiac holds certain asserted claims against the Debtors and liens on the Debtors' assets, and is the owner of certain properties where the Debtors currently and previously operate. Asgaard's counsel, Mr. Duedall, has informed me (and will file a declaration to that effect if requested) that he never performed any work for Zodiac while at Bryan Cave, whether pertaining to the Debtors or pertaining to any other matter, and to my knowledge, none of the lawyers representing Zodiac in this matter ever did work for Asgaard during the time Bryan Cave represented Asgaard.

(c)  From time to time, Asgaard has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these chapter 11 cases. As described below, Asgaard has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided, services to any significant creditor, equity security holder, insider or other party-in-interest in such unrelated matters.  As of today, I know of no services Asgaard is providing to any of its clients which have anything to do with these cases, other than services Asgaard is providing to the Debtors, and I know of no services Asgaard is providing to any clients that might otherwise be involved in these cases.

(d)  Asgaard provides services in connection with numerous cases, proceedings and transactions unrelated to these chapter 11 cases. Those unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in these chapter 11 cases, or may represent such parties.

(e)  Asgaard's personnel may have business associations with certain creditors of the Debtors, wholly unrelated to these chapter 11 cases.  In addition, in the ordinary course of its business, Asgaard may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in these chapter 11 cases.

7.  Asgaard searched its client database to determine whether Asgaard had any relationships with the following (collectively, the "**Interested Parties**"):

(a)  the Debtors;

(b)  the Debtors' current officers and directors and certain of their most significant business affiliations, as provided to Asgaard by the Debtors;

(c)  the Debtors' secured creditors, as provided to Asgaard by the Debtors;

4

    (d)    the Debtors' 20 largest unsecured creditors, as provided to Asgaard by the Debtors;

    (e)    the Debtors' creditors and interested parties, as provided to Asgaard by the Debtors; and

    (f)    various other potential parties-in-interest, as identified by the Debtors.

8.    Based on that search, Asgaard represents that, to the best of its knowledge, Asgaard knows of no fact or situation that would represent a conflict of interest for Asgaard with regard to the Debtors, or another "connection," that would require disclosure under the Bankruptcy Rules, other than as to the Morris Nichols law firm set forth above, and, to the extent required to be disclosed, the disclosure of the former Bryan Cave relationship set forth above.

9.    Asgaard submits that there are no simultaneous or prospective engagements existing, including that on behalf of the Debtors, which - if the Application is granted - would constitute a conflict or adverse interest as to the matters for which it will be employed by the Debtors, nor would Asgaard staff any post-petition matter with personnel that would create a conflict or adverse interest to these matters.

10.    Asgaard consists of financial advisors, sale advisors, operational consultants, and crisis managers providing services and advice specifically in the areas of restructuring. Asgaard's personnel consist of both independent contractors and employees. Asgaard operates on matters throughout the country, although as a smaller firm Asgaard's engagements at any given time tend to be few, with Asgaard efforts highly focused on such matters. In any event, Asgaard has represented, and may in the future represent, certain interested parties in matters wholly unrelated to these chapter 11 cases, either individually or as part of representation of a committee of creditors or interest holders.

4862-0486-0300
4889-7504-5009, v. 1

11.     Asgaard is a "disinterested person" as that term is defined in section 101(14), as modified by section 1107(b) of the Bankruptcy Code, given that, to the best of my information and belief, Asgaard:

       a.      is not a creditor, an equity security holder, or an insider of the Debtors;

       b.      is not and was not, within two years before the commencement of these chapter 11 cases, a director, officer or employee of the Debtors; and

       c.      does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

12.     Despite the efforts described above to identify and disclose Asgaard's connections with parties in interest in these chapter 11 cases, Asgaard is unable to state with certainty that every client relationship or other connection has been disclosed. In that regard, if Asgaard discovers additional information that requires disclosure, Asgaard will file a supplemental disclosure with the Court.

13.     During the 90 days prior to the Petition Date, Asgaard received various retainers (which were deposits to cover future fees and expenses).  At all times, payments to Asgaard were less than the funds Asgaard had on hand to cover future fees and expenses, and thus such payments, to the extent not in the ordinary course or secured by subsequent new value, would not have allowed Asgaard to recover more than if Chapter 7 bankruptcy cases were filed, and thus were not preferential.  In addition, as set forth in the chart below, Asgaard had extended "new value" to the Debtors (for which Asgaard was not paid, and thus such amounts and others were written off) of just under $116,000 in the week leading up to the Petition Date

14.     The retainers paid to Asgaard, their application and other payments, and the running balance owed to Asgaard, are set forth below.  As a result of Asgaard's work and payments made

6

by the Debtors, Asgaard's pre-petition balance owed is approximately $461,391 as of the Petition

Date, which was written off so that Asgaard is not a creditor of the Debtors; for the avoidance of

doubt, Asgaard has expressly waived any claim for unpaid pre-petition work or expenses,

including but not limited to the aforementioned $461,391.

| Description | Invoice Date | Payment Date | Invoice Amount | Retainer Applied | Retainer Applied Date | Running Balance Owed to Asgaard | Retainer Balance |
|---|---|---|---|---|---|---|---|
| Retainer received from Debtors to be applied to billings | 8/15/23 | 8/18/23 | 62,000.00 | | | | 62,000.00 |
| Retainer received from Debtors to be applied to billings | 9/5/23 | 9/6/23 | 68,500.00 | | | | 130,500.00 |
| Retainer received from Debtors to be applied to billings | 9/18/23 | 9/19/23 | 50,000.00 | | | | 180,500.00 |
| Retainer received from Debtors to be applied to billings | 9/21/23 | 10/5/23 | 50,000.00 | | | | 230,500.00 |
| Retainer received from Debtors to be applied to billings | 10/3/23 | 10/5/23 | 62,500.00 | | | | 293,000.00 |
| Asgaard Billing Aug 19-31 | 10/3/23 | | 167,255.25 | (167,255.25) | 10/3/23 | 0.00 | 125,744.75 |
| Mike Freeman expenses (9/8) | 10/3/23 | | 1,781.92 | (1,781.92) | 10/3/23 | 0.00 | 123,962.83 |
| Asgaard Billing Sep 1- 30 | 10/3/23 | | 276,555.25 | (123,962.83) | 10/5/23 | 152,592.42 | 0.00 |
| Asgaard Billing Oct 1-15 | 10/17/23 | 10/19/23 | 173,309.25 | | | 325,901.67 | 0.00 |
| Mike Freeman expenses (10/6 & 10/13) | 10/17/23 | | 5,825.83 | | | 331,727.50 | 0.00 |
| Retainer received from Debtors to be applied to billings | 10/18/23 | 10/19/23 | 50,000.00 | | | | 50,000.00 |
| Retainer applied | | | | (50,000.00) | 10/19/23 | 281,727.50 | 0.00 |
| Retainer received from Debtors to be applied to billings | 10/25/23 | 10/25/23 | 100,000.00 | | | | 100,000.00 |
| Asgaard Billing Oct 16-25 | 10/25/23 | | 150,248.55 | | | 431,976.05 | 100,000.00 |
| Mike Freeman expenses (10/25) | 10/25/23 | | 3,594.15 | | | 435,570.20 | 100,000.00 |

7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Retainer applied | | | | (90,000.00) | 10/25/23 | 345,570.20 | 10,000.00 |
| Asgaard Billing Oct 26-31 | 10/31/23 | | 115,207.75 | | | 460,777.95 | 10,000.00 |
| Mike Freeman expenses (10/27) | 10/31/23 | | 613.57 | | | 461,391.52 | 10,000.00 |
| Retainer received from Debtors to be applied to billings | 10/25/23 | 10/25/23 | 60,000.00 | | | 461,391.52 | 70,000.00 |
| Balances as of Petition Date (with all pre-petition amounts owed being written off) | | | | | | 461,391.52 | 70,000.00 |

15.     All of the foregoing payments by the Debtors to Asgaard were in connection with services rendered and costs incurred by Asgaard, in contemplation of, and in connection with, prepetition restructuring activities.

16.     Prior to the Petition Date, certain of the Debtors' insiders made loans to the Debtors, some of the proceeds of which were used by the Debtors to make certain of the above payments to Asgaard, due to the fact that the Debtors had insufficient funds at various times to pay professional fees and continue to pay operating expenses.  (Despite this, as set forth above, Asgaard was unpaid for over $461,391 in fees and expenses pre-petition, all of which amounts have been written off such that Asgaard is not a creditor.).  Asgaard never received any direct payments from any insiders or other third parties other than the Debtors; all payments to Asgaard during the course of this engagement were from the Debtors, and Asgaard has only ever represented the Debtors, and not any insiders or other parties involved in these cases.  However, this information as to pre-petition insider loans is provided in the interest of full disclosure.

[Remainder of this page intentionally blank.]

8

17.     Asgaard reserves the right to supplement this Declaration in the event that Asgaard discovers any facts bearing on matters described in this Declaration regarding Asgaard's employment by the Debtors.

18.     This concludes my Declaration.

### 28 U.S.C. 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct.


**ASGAARD CAPITAL LLC**

By:

Charles Reardon
Senior Managing Director


9

# EXHIBIT "B"

## (Engagement Letter)

S



October 31, 2023

Aviation Safety Resources, Inc.
141 Hendren Way
Nicholasville, KY 40356

Dear Sir:

This amended and restated letter agreement (the "Agreement") sets forth the terms under which Aviation Safety Resources, Inc., Pioneer Aerospace Corporation, and S.E. Inc. d/b/a Strong Enterprises (collectively, the "Company") shall engage Asgaard Capital LLC ("Asgaard") as of the date set forth above (the "Effective Date"), to provide financial advisory, sale advisory, and consulting services.  To the extent of any conflict between this Agreement and the prior agreement and amendments among the Company and Asgaard, this Agreement shall govern from and after the Effective Date.

For purposes of this Agreement the term "Company" shall include each of the above entities, their controlled affiliates, and direct and indirect subsidiaries,.[1]

1.      Description of Services

Asgaard will, if appropriate and requested, perform the following at the direction of the Company:

 i.  review the Company's financial information and continue to advise the Company in connection with the Company's operations, opportunities, and business plan, and the Company's plan to effectuate a sale of its operations as part of a bankruptcy case;

 ii.  meet with the Company's management regularly to better understand the Company's financial projections (the "Existing Projections," and as may be modified hereinafter by the Company, the "Projections"), with a particular focus on the achievability thereof, including;

---

[1]  All duties or obligations owed by Asgaard shall run solely to the Company, and not any insider, lender, investor, successor, or similar party.  In addition, while Asgaard's advice may be provided to the Company as well as its equity holders, as would be the case of any closely held company, Asgaard's client relationship shall be only with the Company.

ASR-Pioneer et al. Engagement Letter
October 31, 2023
Page 2

> a.  review on a line item basis the requisite people, sales pipelines, contract backlogs, revenue waterfall analysis, systems, and support needed to achieve the Projections;
>
> b.  help the Company identify key employees and develop appropriate communication and retention programs;
>
> c.  review existing contracts and customers, particularly in the context of whether each can be reasonably maintained at the levels contained in the Projections;
>
> d.  obtain a better understanding of the Company's IP, manufacturing capacities, and know how that might be attractive to parties in interest;
>
> e.  work with the Company to better develop a vision for the future that might be attractive to prospective buyers or investors in the event a sale, investment, or similar transaction (whether in the short or long term) may be contemplated;

iii.  help the Company understand the types of transactions available to it, under a variety of contexts, including dealing with matters such as liquidity, union issues, pension issues, and possible dealings with prior ownership, all in the context of strategic alternatives that might be available;

iv.  providing finance, sale, and management level support to the Company and its existing management, provided, however, that no Asgaard personnel shall be responsible for allocation of Company funds or determinations of the payment (or not) of any given Company liabilities;

v.  assist with communications with creditors and other parties in interest, including communications to employees, customers, and other key parties in order to seek to minimize the disruption as to any of the foregoing arising from a bankruptcy filing;

vi.  assist the Company in all aspects of its sale process, including negotiations with third parties, review of proposed purchase agreements (and in particular advise as to the Company's ability to satisfy the terms and conditions thereof), assisting in structuring the possible sales of the Company's operations as a whole, and/or in parts, assisting the Company and counsel in structuring an auction and sale process, providing testimony in the court hearing the Company's bankruptcy case (the "Bankruptcy Court"), and all matters related to achieving a closing of a sale or sales; and

vii.  provide such other services as may be requested and agreed to by the parties.

As noted above, the purpose of these tasks will be to assist the Company in its ongoing consideration and implementation of its strategic alternatives, while at the same time maintaining operations, and then putting into effect the directions of the Company and its Board in the context of an expected bankruptcy filing.

All of Asgaard's work product may only be used by the Company.

During Asgaard's engagement, the Company agrees to furnish Asgaard with all information which Asgaard deems appropriate and will provide Asgaard with access to the Company's officers, directors, employees, accountants, counsel and other representatives (collectively, the "Company Representatives") who the Company will authorize and direct to cooperate fully.  Asgaard will rely upon such information supplied by the Company and the Company Representatives without assuming any responsibility for independent investigation or verification thereof.  The Company represents and warrants that any financial information provided to Asgaard will be prepared reflecting the best currently available estimates of the past and future financial results of the Company.  The Company will, in writing, promptly notify Asgaard of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Asgaard or any interested party.

2.    <u>Compensation</u>

In consideration of Asgaard's acceptance of this engagement and performance of Asgaard's services hereunder, the Company will pay Asgaard

      a.    At the hourly rates for its personnel, which are set forth below (except to the extent Asgaard assigns other personnel as appropriate for this engagement, which shall be billed at their normal rates):

| | | |
|---|---|---|
| i. | Charles Reardon (Senior Managing Director) | $820 |
| ii. | Michael Freeman (Managing Director) | $750 |
| iii. | Robert Prusak (Managing Director) | $675 |
| iv. | David Black (Director) | $595 |
| v. | Kevin Sampson (Senior Vice President) | $495 |
| vi. | Larry Lucarelli (Senior Vice President) | $495 |
| vii. | Any Analyst | $175 |

           Asgaard personnel shall keep time in summary format, in ¼ hour increments.

    plus

      b.    In addition to the fees set forth above, Asgaard will be paid the following transaction based fees of (i) with respect to any financing provided to the Company by any non-insider third party, a financing fee equal to the greater of (a) $25,000 or (ii) 5% of any such financing received or committed, (ii) with respect to any sale, reorganization, or disposition of any or all of the Company's assets or operations,

a transaction fee of $250,000, and (iii) with respect to the receipt of any recoveries or other consideration outside of the ordinary course of business by the Company, including tax refunds, claim or litigation recoveries, or other types of assets not sold or disposed of in the ordinary course of business, 10% of such recoveries or consideration, payable as and when received by the Company.  The Company acknowledges that the transaction fees set forth above shall compensate Asgaard in addition to its hourly fees, and that the transaction fees set forth above are also in consideration of the substantial risk presented to Asgaard that its hourly fees may not be paid in full, as the Company does not have sufficient regular income to pay Asgaard's hourly fees, and the Company may not be able to complete any sale which will yield proceeds, or proceeds above and beyond any secured debt which must be paid as part of such sale.  As such, Asgaard is only willing to take on the substantial risk of non-payment of its hourly fees if it is also due to receive its transaction fees as set forth above.  For these reasons, and taking into account other related factors, the Company acknowledges and agrees that Asgaard's transaction fees shall be subject to the standards of Section 328(a) of title 11 of the United States Code, and the Company agrees to support any request by Asgaard that the Bankruptcy Court approve such fees under Section 328(a).

c.     Prior to the filing of any bankruptcy case, the Company shall obtain financing or other financial accommodations allowing Asgaard to have a security retainer of not less than $70,000, which shall serve as a security retainer (in addition to any other amounts provided to Asgaard which were not applied to pre-petition bills) for Asgaard's post-petition fees and expenses.

d.     Asgaard shall submit bills to the Company periodically for any fees or expenses due, which bills shall be, subject to Bankruptcy Court approval, satisfied from the security retainer (other than transaction fees, which shall be paid from the proceeds of the events set forth in part (b), above) until it is exhausted.

3.     Term and Termination

This Agreement may be terminated by either party without cause by giving 15 days' written notice to the other party; termination for cause by either party shall be effective immediately upon the provision of notice of such termination.  In the event the Bankruptcy Court does not approve the terms of this Agreement, Asgaard may terminate this Agreement immediately.  No termination of this Agreement shall affect the Company's indemnification or any other obligations set forth in this Agreement, whether present or future, including the Company's obligation to pay any and all fees, expenses, and other amounts due (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).

4.     Expenses

In addition to the fees described above, the Company agrees to promptly reimburse Asgaard, on a monthly basis, for all reasonable out-of-pocket expenses incurred by Asgaard in connection with this Agreement, including (a) travel, lodging, meals, duplicating, related out-of-pockets costs,

mailing or messenger charges, and telephone charges, all of which shall be charged at cost in accordance with the then effective Asgaard policy, without regard to volume-based or similar rebates or credits Asgaard may receive, and (b) research costs, database and similar information charges, production costs, and other client-related services not capable or being identified with, or charged to, a particular client or engagement, based on a uniformly applied monthly assessment. The expenses described in the previous sentence shall not exceed $25,000 per thirty day period, absent your written consent.  In addition, the Company agrees to promptly reimburse Asgaard for the fees and expenses of Asgaard's counsel in the drafting and negotiation of this Agreement, obtaining Court approval of this Agreement or any fees or expenses contemplated hereby, or in providing any advice to Asgaard for the carrying out of Asgaard's duties during the term of this Agreement.

Asgaard shall also be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with any litigation (or threatened litigation) that would trigger indemnification hereunder, or in the enforcement of this Agreement.

5.      Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this Agreement in order to provide the services described above to the Company.  The Company acknowledges that Asgaard's advice will be solely for the use and benefit of the Company, and not any of its equity holders, creditors, investors, or any other party, nor for any investment banker or other professional of the Company or any potential investor or buyer.  Neither Asgaard nor any of its Representatives (as defined below) is acting as a fiduciary of the Company, the Company's equity holders, creditors, or investors or any other persons in connection with this engagement, and expressly disclaims any such duties or responsibilities under this Agreement or under any applicable law.  Asgaard will not provide any management services to the Company unless separately contracted to do so pursuant to a separate written agreement, and neither Asgaard nor any of its personnel or subcontractors is to be considered an employee of the Company, an officer, director, or managing agent of the Company, nor is Asgaard nor any of its personnel or subcontractors providing or making any decisions for the Company, as all decisions (and their execution) shall be the responsibility of management of the Company and its board.

For purposes of this Agreement, "Representatives" of Asgaard shall mean all of Asgaard's owners, equity holders, officers, directors, members, managers, employees, agents, and independent contractors.

The personnel and subcontractors of Asgaard are not entitled to any of the benefits the Company provides for the Company's employees.

Asgaard makes no representation or guarantee that an appropriate outcome or transaction can be obtained or formulated, that any proposal is the best course of action for the Company, or that the execution of any proposal will be approved by the Company's board (including any special committee thereof, if any), or the Company's equity holders or other constituents.  The Company

ASR-Pioneer et al. Engagement Letter
October 31, 2023
Page 6

acknowledges that Asgaard's services will be made on a reasonable good faith basis.  Further, Asgaard assumes no responsibility for the selection and approval of any specific proposal.

The Company agrees it will be solely responsible for ensuring that any course of action, including any transaction, it elects to pursue (if any) complies with applicable law.  The Company understands Asgaard is not undertaking to provide any legal, regulatory, accounting, insurance, tax, or similar professional advice.

6.      Other Services

If Asgaard is requested by the Company to perform any financial or other advisory services outside the scope of this Agreement the fees for such services shall be mutually agreed upon by Asgaard and the Company in writing, and shall be in addition to the fees and expenses described above.  In addition, if Asgaard must deal with any pending or threatened litigation or regulatory matters, the Company shall pay Asgaard's then-current hourly rates for any time spent on such matters, including time for familiarization, detailed understanding, meetings, conferences, preparation, travel, and all related reasonable out-of-pocket costs and expenses, including the reasonable legal fees and expenses of Asgaard's legal counsel in connection therewith.

7.      No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) given by Asgaard to the Company in connection with this engagement is intended solely for the benefit and use of the Company in considering the matters to which this engagement by the Company relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted, or referred to at any time in any manner or for any purpose without Asgaard's prior written approval (which shall not be unreasonably withheld), except as required by law.  Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Persons (as defined in Schedule A), and their respective successors, heirs. and permitted assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Asgaard hereunder.

8.      Bankruptcy Court Approval

        When the Company is, or becomes, a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall promptly apply to the Bankruptcy Court for the approval pursuant to Bankruptcy Code sections 327 and 330 (as to hourly fees and expenses) and 328 (with respect to transaction-based fees) of (i) this Agreement, including the attached indemnification, and (ii) Asgaard's retention by the Company under the terms of this Agreement and subject to the standard of review of Section 328(a) of the Bankruptcy Code (as to transaction-based fees) and Section 330 of the Bankruptcy Code as to hourly fees and expenses. Asgaard shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Asgaard's retention under the terms of this Agreement is approved under Sections 327, 328(a) and 330 of the Bankruptcy Code

as specified above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Asgaard in all respects. In the event that the Company becomes a debtor under the Bankruptcy Code and Asgaard's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Asgaard hereunder as promptly as possible in accordance with the terms of this Agreement, the order of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Asgaard to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of Asgaard is not obtained, or is later reversed or set aside for any reason, Asgaard may terminate this Agreement, and the Company shall reimburse Asgaard for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.

With respect to Asgaard's retention under Sections 327 and 328 of the Bankruptcy Code (and the standard of review of Section 328(a) of the Bankruptcy Code as to transaction-based fees), the Company acknowledges and agrees that Asgaard's restructuring expertise, as well as its capital markets knowledge, financial skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Asgaard's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Asgaard's services hereunder as to any transactional work could not be measured merely by reference to the number of hours expended by Asgaard professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Asgaard and its professionals hereunder over the term of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Asgaard and that actual time and commitment required of Asgaard and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for Asgaard. In addition, given the numerous issues which Asgaard may be required to address in the performance of its services hereunder, Asgaard's commitment to the variable level of time necessary to address all such issues as they arise, and the market prices for Asgaard's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder as to transactional-based fees are reasonable under the standards set forth in Section 328(a) of the Bankruptcy Code.

9.   <u>Indemnification and Limitation of Liability</u>

The Company agrees to be bound by Schedule A attached hereto, which is incorporated herein and made a part hereof. Termination of this engagement shall not affect Schedule A, which shall remain in full force and effect.

With respect to all services provided by Asgaard or its Representatives under this Agreement, such parties shall only be liable to the Company in the case of gross negligence or willful misconduct, and in all respect, the liability of either Asgaard or its Representatives shall not exceed the amount of fees actually paid by the Company to Asgaard.

ASR-Pioneer et al. Engagement Letter
October 31, 2023
Page 8

10.    Miscellaneous

This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes any prior communications, understandings, and agreements between the parties relating to the subject matter hereof.  This Agreement shall be binding on the parties hereto and their respective successors, heirs, and permitted assigns.

This Agreement may not be assigned nor may the obligations of a party hereunder be delegated without the prior written consent of the other party hereto, provided that Asgaard may utilize one or more affiliates or independent contractors in performing services hereunder; if so, then references to Asgaard herein shall include references to such parties, but in no instance shall any additional fee be charged to the Company for the use of such parties without the prior written consent of the Company.

Neither during the term of this engagement, nor during the two year period following its termination, will the Company independently employ or utilize the services of any of Asgaard's Representatives, other than within the scope of this Agreement, absent Asgaard's advanced written consent.

No waiver, amendment, or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

This Agreement and any claim relating in any way to or arising in any way from the Agreement or Asgaard's services under the Agreement, shall be governed by, and construed in accordance with, the laws of the State of Delaware without regard to principles of conflicts of laws that would defer to the laws of another jurisdiction.  The parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the courts of the State of Virginia located in the City of Arlington and the United States District Court for the Northern District of Virginia (and if such courts decline jurisdiction, to any other applicable court) for any legal action or proceeding arising out of this Agreement, and agree to bring (to the extent permitted by law) any such action or proceeding in such courts.   (Provided, however, once the Company files any bankruptcy proceeding, the Bankruptcy Court shall have sole and exclusive jurisdiction over any legal action or proceeding arising out of this Agreement, until such time as the bankruptcy case concludes, after which time the Virginia courts set forth above shall have sole and exclusive jurisdiction).  Each of the parties hereby irrevocably consents to service of process in any such action or proceeding by certified or registered mail, or by any nationally recognized express mail service, at the address for such party set forth above.   THE PARTIES HEREBY AGREE FOR THEMSELVES AND, TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF THEIR RESPECTIVE CREDITORS AND EQUITY HOLDERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM, PROCEEDING, OR OTHER ACTION RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE AGREEMENT OR ASGAARD'S SERVICES UNDER THE AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE).

ASR-Pioneer et al. Engagement Letter
October 31, 2023
Page 9

The USA PATRIOT Act, which imposes certain anti-money laundering requirements on brokerage firms and financial institutions, requires you to provide Asgaard with your tax identification number and may also require you to provide Asgaard with certain other identification documents or other information in order for Asgaard to be permitted to effect transactions for you. In addition, Asgaard may also be required to make certain inquiries of other organizations for information about you in order to fulfill any responsibilities under Federal regulations.

The Company acknowledges that Asgaard may, at its option and expense, place announcements and advertisements or otherwise publicize its services to the Company hereunder (which may include the reproduction of the Company's corporate logo). Furthermore, if requested by Asgaard, the Company shall include a mutually acceptable reference to Asgaard in any press release or other public announcement made by the Company regarding the matters described in this Agreement.

The invalidity or unenforceability of any provision in this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

The Company has the requisite power and authority to enter into and perform under this Agreement. This Agreement has been duly and validly authorized by all necessary action on the part of the Company, has been duly executed and delivered by the Company, and constitutes a legal, valid, and binding agreement of the Company (including its controlled affiliates and direct and indirect subsidiaries), fully enforceable by its terms. If the Company comprises of more than one entity, the obligations of the Company hereunder are joint and several, and any consent, direction, approval, demand, notice, or the like given to any one of such entities shall be deemed given to all of them, and as such, shall be binding on the entirety of the Company. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Asgaard because this Agreement was drafted by Asgaard, and the parties waive any statute or rule of law to such effect.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

4878-0453-5677

ASR-Pioneer et al. Engagement Letter
October 31, 2023
Page 10

Asgaard is delighted to accept this engagement and looks forward to working with you.  If the foregoing is acceptable to you, kindly sign below and return an executed copy of this Agreement to Asgaard.

Very truly yours,

**ASGAARD CAPITAL LLC**

By: _Charles C Reardon_
7C795FE72EC343B...
Charles Reardon
Senior Managing Director

Accepted and agreed to as October 31, 2023:

Aviation Safety Resources, Inc.

By: _Dario Manfredi_
7ED49FF1D463470...
Name: Dario Manfredi
Title:  Chairman

Pioneer Aerospace Corp.

By: _Michael Rinaldi_
2535B23474C34C7...
Michael Rinaldi
President

S.E. Inc., d/b/a Strong Enterprises

By: _Michael Rinaldi_
2535B23474C34C7...
Michael Rinaldi, President

## Schedule A

This Schedule A is incorporated by reference into Asgaard Capital LLC's letter agreement attached hereto.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

The Company agrees to indemnify and hold harmless Asgaard and its Representatives (with Asgaard, the "Indemnified Persons") from and against all losses, claims, damages, liabilities, or expenses (or any of the foregoing in any pending or threatened actions or proceedings, including those brought by security holders, creditors, or others), joint and several, relating in any way to or arising in any way from the Agreement or Asgaard's services under the Agreement (collectively, a "Claim" and/or "Loss").  The Company will reimburse all Indemnified Persons promptly for all expenses (including counsel's reasonable fees and expenses) as they are incurred in connection with the investigation of, preparation for, familiarization with, detailed understanding of, defense of, settlement or compromise of, or response to any pending or threatened Claim or Loss, or any such action or proceeding arising therefrom.  In addition, if requested by Asgaard or any other Indemnified Person, the Company shall advance funds to them as security for the Company's obligations hereunder.  The Company shall indemnify and hold harmless all Indemnified Persons whether or not such Indemnified Person is a formal party to any such action or other proceeding (a "Proceeding"), including any Proceeding in which any Indemnified Person is subject to a subpoena or other legal process requiring the response of any Indemnified Person, and whether or not such Proceeding is initiated by or brought on the Company's behalf.

An Indemnified Person is not entitled to the foregoing indemnification if such Claim or Loss is finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.  The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on the Company's behalf or in the Company's right, except to the extent that such Claim or Loss is finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct. In no event, regardless of the legal theory advanced, shall the Indemnified Person be liable for any consequential, indirect, incidental, punitive, or special damages of any nature.  In addition, no Indemnified Person (nor all Indemnified Persons) will be liable for any damages of any kind that exceed the amount of fees actually paid to Asgaard in this matter.

If the indemnity rights referred to above are, for any reason whatsoever, unenforceable, unavailable, or otherwise insufficient to hold each Indemnified Person harmless, the Company agrees to contribute to amounts paid or payable by an Indemnified Person in respect of such Indemnified Person's Claims or Losses so that each Indemnified Person ultimately bears only a portion of such Claims or Losses as is appropriate (i) to reflect the relative benefits received (or anticipated to be received) by each such Indemnified Person, respectively, on the one hand, and the Company (and the Company's creditors or equity holders) on the other hand, or (ii) if the allocation on that basis is not permitted by

applicable law, to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of each such Indemnified Person, respectively, and the Company, as well as any other relevant equitable considerations.

The Company will not, without Asgaard's prior written consent, enter into any settlement or compromise of, or consent to any judgment in, a Proceeding in which Asgaard or any other Indemnified Person could be an actual or potential party (including as a witness in such Proceeding), unless (i) such settlement, compromise, or judgment includes an explicit and unconditional release from the party bringing such Proceeding of all Indemnified Persons from all liability arising therefrom and any requirement to respond to any subpoena or other legal process, (ii) the amount involved in any such settlement, compromise, or judgment is paid in full directly by the Company or on behalf of the Company and (iii) such compromise settlement, or judgment does not (x) acknowledge any liability of or wrongdoing by an Indemnified Person, (y) adversely affect the business of an Indemnified Person or (z) limit the future conduct of an Indemnified Person whether by injunction, consent decree, or otherwise.

Promptly after an Indemnified Person's receipt of notice of the commencement of any Proceeding, an Indemnified Person shall notify the Company in writing of the commencement thereof, but a failure to notify the Company will not relieve the Company from any liability which the Company may have to such Indemnified Person, except to the extent the Company suffers actual prejudice as a result of such failure, and will not relieve the Company from the Company's obligation to provide reimbursement of all Losses and Claims (including counsel's reasonable fees and expenses). The Company further agrees the Indemnified Persons are entitled to retain separate counsel of their choice in connection with any of the matters in respect of which indemnification, reimbursement, or contribution may be sought under this Agreement, and the reasonable fees and expenses of such counsel shall be included in the indemnification hereunder.

The Company will pay to Asgaard and each other Indemnified Person, in addition to the other fees and expenses payable to it, the fees and charges as incurred and as reasonably determined by Asgaard for any time of any Representatives of Asgaard devoted to familiarizing or understanding any applicable matter or details, appearing and preparing to appear as witnesses or deponents, or assisting in preparation for hearings, trials, or any pretrial matters.

The foregoing shall be in addition to any rights Asgaard or any other Indemnified Person may have at common law or otherwise. The Agreement including this Schedule A shall be binding upon and inure to the benefit of Asgaard's, all other Indemnified Persons', and the Company's successors, assigns, heirs, and personal representatives.

In connection with Asgaard's engagement, Asgaard may be requested to act for the Company in one or more additional capacities, and the terms of any such additional engagement may be embodied in one or more separate agreements. The obligations set forth in this Schedule A shall apply to each of Asgaard's engagements by the Company

and any modification of any of such engagements, and shall remain in full force and effect following their completion or termination.

The provisions of this Schedule A may not be modified except in a writing by Asgaard and the Company and shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of laws that would defer to the laws of another jurisdiction.  The Company hereby consents to personal jurisdiction and venue in any court in which any claim which is subject to the provisions of this Schedule A is brought against an Indemnified Person.  The Company hereby irrevocably consents to service of process in any action or proceeding by any Indemnified Party by certified or registered mail, or by any nationally recognized express mail service, at the address for the Company set forth on the first page of the Agreement.   THE COMPANY HEREBY AGREES FOR ITSELF AND, TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND EQUITY HOLDERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM, PROCEEDING OR OTHER ACTION RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE AGREEMENT OR ASGAARD'S SERVICES UNDER THE AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE), INCLUDING THE PROVISIONS OF THIS SCHEDULE A AND ANY SUCH MATTER PERTAINING TO ANY INDEMNIFIED PARTY.

**<u>EXHIBIT "C"</u>**

**(Curriculum Vitae of Charles Reardon)**

# Delaware Case Experience

| CASE | PRESIDING JUDGE | ASGAARD'S PRIMARY ROLE* | RESULT |
|------|-----------------|-------------------------|--------|
| **In re Klausner Lumber One LLC** (Bankr. D. Del., Case No. 20-11033) | The Hon. Karen B. Owens | Chief Restructuring Officer and Financial Advisor to the Debtor | Successfully found a buyer who has revitalized the mill, returned ~95 cents on the dollar to trade vendors and other third-party creditors, and secured green cards for EB-5 investors |
| **In re Klausner Lumber Two LLC** (Bankr. D. Del., Case No. 20-11518) | The Hon. Karen B. Owens | Chief Restructuring Officer and Financial Advisor to the Debtor | Negotiated a settlement with the county to retain ownership of the land and successfully sold mill for ~8x its expected liquidation value |
| **In re Tonopah Solar Energy, LLC** (Bankr. D. Del., Case No. 20-11884) | The Hon. Karen B. Owens | Department of Energy-appointed Independent Director | Organized restructuring of $432M of debt through Restructuring Support Agreement |
| **In re Suitable Technologies, Inc.** (Bankr. D. Del., Case No. 20-10432) | The Hon. Craig T. Goldblatt | Chief Restructuring Officer and Financial Advisor to the Debtor | Successful sale of certain assets to Blue Ocean Robotics and Magicheart Investments LLC |
| **In re Mishti Holdings LLC, et al.** (Bankr. D. Del., Case No. 19-11813) | The Hon. Christopher S. Sontchi | Independent Director | Successful 363 Sale process of US candy retailer |
| **In re Elk Petroleum, Inc.** (Bankr. D. Del., Case No. 19-11157) | Hon. Laurie S. Silverstein | Independent Director, restructuring committee member, and Co-Chief Restructuring Officer | Most key creditors with secured loans received assets from the Company in the final settlement, while remaining assets fell into a liquidation trust for creditors with unsecured loans. |
| **In re USA Synthetic Fuel Corporation** (Bankr. D. Del., Case No. 15-10599) | The Hon. Mary F. Walrath | Investment Banker to the Debtor | Following 363 sale process, the assets were sold to previous owner |
| **In re Velti, Inc.** (Bankr. D. Del., Case No. 13-12878) | The Hon. Peter J. Walsh | Advised Official Committee of Unsecured Creditors primarily with respect to 363 sale run by Debtors and follow on prosecution of avoidance actions | Initial funding of Creditors Litigation Trust; advised the Committee with respect to ongoing recovery efforts and served as litigation trustee, prosecuting malpractice litigation which generated returns of over 45% to unsecured creditors |
| **In re Appleseed's Intermediate Holdings LLC, et al.** (Bankr. D. Del., Case No. 11-10160) | The Hon. Kevin Gross | Advised Official Committee of Unsecured Creditors primarily with respect to 363 sale and follow on prosecution of fraudulent conveyance action against former sponsor | Obtained favorable settlement that returns to the unsecured creditors in excess of 45% of their allowed claims |
| **In re Hancock Fabrics, Inc.** (Bankr. D. Del., Case No. 07-10353) | The Hon. Brendan Linehan Shannon | Investment Banker to the Debtor | Successful Chapter 11 Reorganization resulting $118M improvement over initial expected EV of $73M, a 261% increase and return to equity |
| **In re Riverstone Networks SPC, Inc.** (Bankr. D. Del., Case No. 06-10133) | The Hon. Christopher S. Sontchi | Advised Official Equity Committee with respect to 363 sale run by Debtors | Helped improve price by $40 million, as well as terms, over those contained in stalking horse bid |
| **In re Starband** (Bankr. D. Del., Case No. 02-11572) | The Hon. Peter J. Walsh | Investment Banker to the Debtor | Reorganization of over $500 million in debt and equity claims following complete operational restructuring achieved during Chapter 11 proceeding |



*Certain of these engagements were executed prior to Mr. Reardon's formation of Asgaard Capital LLC while employed at other firms

# Other Bankruptcy Case Experience

| CASE | JURISDICTION | ASGAARD PROFESSIONALS' ROLE* | RESULT |
|------|-------------|------------------------------|--------|
| **In re NW Valley Holdings** | District of Nevada | Responsible Person and Liquidating Trustee of the Debtor | Successfully supervised the final liquidation of remaining assets through an ultimately consensual chapter 11 plan of liquidation |
| **In re Jillian's Entertainment** | Western District of Kentucky | Investment Banker to the Debtor | Final auction bids were over 170% of stalking horse bids, producing almost complete recovery for secured creditor and significant return for unsecured creditors. |
| **In re American Paper Group** | Northern District of Ohio | Investment Banker to the Debtor | Helped company obtain time and capital from senior lenders to complete technological transformation of company and achieve significant recovery on lenders' impaired debt through a successful 363 sale. |
| **In re Acadia** | Eastern District of Virginia | Investment  Banker to the Debtor | Helped family gain control from mis-managing senior family member and confirmed plan of reorganization |
| **In re Nucentrix** | Northern District of Texas (Dallas) | Investment Banker to the Debtor | Ran complete 363 sale in less than 65 days. Winning bid exceeded $65 Million, compared to $15 Million stalking horse bid. This increased projected returns from approximately $0.12 for creditors, to a complete recovery for creditors and more than $2.50 per share for the equity holders. |
| **In re Pacific USA** | Northern District of Texas | Investment Banker to the Debtor | Helped achieve recovery of more than 40% for most of US creditors, despite virtually no remaining US-based businesses or assets. |
| **In re RVSI/Acuity CiMatrix** | District of New Hampshire | Investment Banker to the Debtors | Generated a $13M improvement over initial EV, resulting in a $23M EV |
| **In re Alpha Guardian** | District of Nevada | Independent Director | Successfully sold safe manufacturer to  former founder and settled pending litigation, despite intensely unhappy Big Box retail client and extreme financial duress. |



*Certain of these engagements were executed prior to Mr. Reardon's formation of Asgaard Capital LLC while employed at other firms

2

# Senior Team Biographies

## Charles C. Reardon
### Senior Managing Director

Mr. Reardon was named a Top 25 Financial Advisor by Global M&A Network in 2022 as well as one of the 100 Top Restructuring Professionals.

**Mr. Reardon** has more than 25 years of expertise in many roles, including lead director, financial advisor, chief restructuring officer and investment banker roles, directing healthy and distressed M&A, operational and financial restructurings, debt and equity capital financing, investment banking, financial advisory, and real estate development. In summary, he is:

- Recipient of six M&A Advisor, Global M&A Advisor and Turnaround Atlas Awards, three of them in 2022

- Experienced special situations independent director and public and private board member

- Nationally recognized restructuring expert with decades of experience leading special situations, restructuring, and distressed M&A engagements

- Former portfolio executive with operational leadership experience

- Founder and Senior Managing Director, Asgaard Capital LLC

- Audit Committee Qualified

- Yale Law-educated and NY-trained attorney.

His extensive experience includes conceptualizing and executing complex commercial, legal and financial transactions with multiple stakeholders and changes in control and capital structures. He has advised public and private companies across a broad spectrum of industries including government contracting/defense, technology, mining, energy, financial services, hospitality, basic manufacturing, telecommunications, real estate, and retail. Mr. Reardon is particularly adept at helping craft and sell storied deals where the future that investors buy is much more robust than recent financial performance would suggest, and in the process completing transactions at multiples of the firm's value that was expected when he was engaged. Mr. Reardon's M&A experience spans both healthy and distressed companies, as described in detail in his deal sheet in the Appendix.

Prior to founding Asgaard Capital, Mr. Reardon was a Partner in the investment banking division of Carl Marks & Co., the middle-market merchant bank headquartered in New York. Before that, he was a Director with Houlihan Lokey Howard & Zukin and a member of their globally recognized Financial Restructuring Group. He led Houlihan's Distressed M&A Practice in the mid-Atlantic region. Mr. Reardon began his career on Wall Street with the legal firm of Lane & Mittendorf (now Windels Marx Lane & Mittendorf) specializing in corporate finance, general corporate and real estate law.

Recognition for his transactions includes the 2022 Turnaround/Transaction of the Year (Small Company, Klausner) from the Turnaround Management Association, and Deal of the Year Turnaround Atlas Award for Cross Border Situations, Klausner KL2, also in 2022; Retail Products & Services Turnaround of the Year (Turnaround Atlas Awards); Professional Services Deal of the Year (M&A Advisor); and Middle Market Financing of the Year (M&A Advisor). A frequent industry speaker and expert panelist, Mr. Reardon has held Series 7, Series 63 and Series 79 licenses with FINRA. He is a former member of both the Turnaround Management Association and the American Bankruptcy Institute and has served on the boards of a number of public and privately held companies. Mr. Reardon holds a B.A. with highest distinction from the University of Virginia and a J.D. from Yale Law School.

**EXHIBIT "D"**

**(Qualifications of Michael Freemen)**

# Senior Team Biographies

**Michael (Mike) Freeman**
Managing Director

Mr. Freeman was the CRO of the Klausner Lumber (KL1) deal that won the 2022 TMA Turnaround/ Transaction of the Year Award for Small Company.

**Mr. Freeman** is an accomplished executive with over 30 years of operational turnarounds, restructuring, performance improvement and leadership experience. He has held numerous senior executive positions including CRO, CEO, COO, CTO and SVP roles at various large contractors including Northrup Grumman and HP, as well as smaller, privately held companies. In these roles he typically focused on performance improvement, sales, and strategy development. He has also provided transformation management and value creation for start-ups, distressed and established enterprises operating in a global market while interacting extensively with numerous government clients including the DOD, NRO, NSA, DIA, HLS, CIA, DARPA, IARPA and DOE. He has worked on high-level clearance government/defense projects and has obtained federal CFIUS clearance for international projects.

As an experienced executive, Mike's background provides a unique perspective allowing him to quickly analyze and determine not only the business and sales issues, but also the operational, technology and financial issues that can be remedied and optimized to facilitate the growth and transformation of a company.

**Mike's C-Suite and Senior Advisor engagements include:**

- CTO for Northrup Grumman where he worked over 50 turnarounds and over 40 acquisitions (M&A's) in technology and manufacturing programs and contracts

- Senior Advisor to the owner and the senior team of Logos Technologies responsible for avoiding liquidation by reducing the cash burn and extending the runway to find a new owner. In that process he totally revised a sale plan to attract potential buyers, and retained key employees throughout the turnaround.

- CRO for Klausner Lumber 1, a shuttered/abandoned Lumber Mill in Suwanee County, Florida. The mill was in the process of being liquidated in piecemeal fashion that if not stopped, would produce less than an estimated $10 million in net proceeds. Mike and his team were able to partially re-start the facility and reposition for a successful $62 million sale to a foreign strategic investor during COVID.

- CEO for Fastener Technology Corporation (initially brought in as an Interim CEO), an Advanced Fastener Manufacturing company with multiple US and EU locations that was also engaged in manufacturing airframe components. Successfully restructured the finances, corrected internal manufacturing process and quality issues and ultimately sold the plant for 5x EBITDA to a private equity firm.

- CEO of Project Performance Corporation, the distressed US operations of a British parent company itself involved in a UK Administration. PPC provided software development and consulting services, primarily to the DOD and the DOE on the government side and Nike and Converse on the commercial side.

- CEO/Owner of a US-based Solar Panel manufacturing plant – positioned the company for sale after correcting manufacturing and sales issues. Successfully sold in July 2018.

- CEO of Luciad, an EU-based, US company focused on application development and consulting for sensors and imaging that was ultimately sold to Boeing. Grew the business from $3m's to over $35m in revenue in less than 2 years which ultimately resulted in an equity return sale.

- COO/CRO for Global Computer Enterprise, a software contractor for the DOE that was then under civil and criminal investigation by the DOJ. Notwithstanding those investigations and accompanying materially eroded financial performance, Mike and his team were successful in selling the IP to the GSA in a first of its kind transaction. The sale generated a material return to equity with ultimately a 'no-charge' plea deal with the DOJ.

# Senior Team Biographies

**Michael (Mike)
Freeman
(Continued)**
Managing
Director

**Other prior experience:**
Mike has been responsible for the Profit and Loss (P&L) for operational practices ranging from $25m to over $1B in direct and indirect revenue in the US and International markets with multi-site responsibility in the consulting, technology and manufacturing markets.

**Specific background/experience includes:**

• Operational Senior Executive experience with revenues up to $1B

• Experienced CRO in Chapter 11/363 and distressed scenarios

• Turnaround expert

• PEs, VCs and HNW consulting

• Interim CEO, COO, SVP and different sales roles

• Partner Development/Sales/Strategy leadership

• Advisor to C-level executives in multiple companies - improved numerous processes and created/monitored KPI's in support of divestitures, mergers and turnarounds

• Executive responsible for creating enhanced revenue and sales growth/value

• Executive responsible for transformation, strategy, sales & product teams at numerous companies

• Expert in QA and Process improvement methodologies in manufacturing and technology

• Expert negotiator, conflict resolution and operations executive

• Expert in Government Acquisitions (Expert in the FAR/DFARs)

• Leader in transformational ERP, Lean, ISO and ITIL processes/standards.

**Board experience:**

• Serendipity (Board Advisor)

• Triton (Board Director)

• HP — (Board Member) - Government Advisory Board

• AEA Technology — (Board Member)

Mike had prior clearance levels of TS/SCI with SAP. Mike also served in the Marines where he retired as a CWO4 after 18 years.

**EXHIBIT "E"**

**(Proposed Order)**

11838341-2
4879-3291-3548
4868-7186-3441, v. 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11, Subchapter V

AVIATION SAFETY RESOURCES, INC.,                    Case No. 6:23-bk-04641-GER
S.E., INC. D/B/A STRONG ENTERPRISES,                Case No. 6:23-bk-04643-GER
PIONEER AEROSPACE CORPORATION                       Case No. 6:23-bk-04639-GER
D/B/A ASR-PIONEER

                                                    *Jointly Administered under*
        Debtors.                                    *Case No. 6:23-bk-04639-GER*
_____

**ORDER APPROVING DEBTORS' APPLICATION FOR
AUTHORIZATION TO EMPLOY ASGAARD CAPITAL LLC
AS FINANCIAL ADVISOR AND TRANSACTION ADVISOR
TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

**THIS MATTER** having come before the Court upon the *Debtors' Application for*

*Authorization to Employ Asgaard Capital LLC as Financial Advisor and Transaction Advisor to*

*the Debtors, Effective as of the Petition Date* [Doc. No. ___] (the "**Application**"), and the

*Declaration of Charles Reardon on Behalf of Asgaard Capital LLC, as Proposed Financial*

*Advisor and Transaction Advisor to the Debtors* (the "**Reardon Declaration**") attached to the

Application.  The Application requests entry of an order approving the Debtors-in-Possession's

employment of Asgaard Capital LLC ("**Asgaard**") as financial advisor and transaction advisor in

these Chapter 11 cases, on the terms set forth in the Engagement Letter[1] as attached to the Application (provided that to the extent of any inconsistency between this Order and the Engagement Order, this Order shall expressly control). The Court has considered the Application and the Reardon Declaration, having been satisfied based on the representations made in the Application and the Reardon Declaration that (a) Asgaard does not hold or represent an interest adverse to the Debtors' estate and (b) Asgaard is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. This Court further finds that: (i) it has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Application is in the best interests of the Debtors, their estate, their creditors and other parties in interest; (v) notice of the Application and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Application and the Reardon Declaration good and sufficient cause exists to grant the relief requested. Accordingly, it is

      **ORDERED** that:

      1.     The Application is approved, effective as of the Petition Dates in the Debtors' cases.

      2.     The employment by the Debtors, as debtors-in-possession, of Asgaard Capital LLC in accordance with the terms and conditions of the Engagement Letter (subject to the terms

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Application.

4886-5426-8300
4892-5101-7105, v. 1

of this Order, which shall control in the case of any conflict with the Engagement Letter), is approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code (each as set forth below) effective as of the Petition Date.

3.      No payment of compensation or reimbursement of expenses shall be made to Asgaard absent application to and approval by this Court (or pursuant to any other interim fee procedures established by this Court), pursuant to section 330 of the Bankruptcy Code (as to Asgaard's hourly fees, and expenses) and section 328(a) of the Bankruptcy Code (as to Asgaard's transaction-based fees).

4.      As set forth in the Engagement Letter, aside from Asgaard's hourly-based fees and expenses (as set forth above, subject to final approval by this Court on the standards set forth in section 330 of the Bankruptcy Code, after application and notice required by Rules 2002(a)(6) and 2016 of the Federal Rules of Bankruptcy Procedure, and any applicable order and local rules of this Court), Asgaard shall be entitled pursuant to section § 328(a) of the Bankruptcy Code to transaction-based fees (as set forth above, also subject to final approval by this Court after application and notice required by Rules 2002(a)(6) and 2016 of the Federal Rules of Bankruptcy Procedure, and any applicable local rules of this Court), of

(i)     with respect to any financing provided to the Debtors by any non-insider third party, a financing fee equal to the greater of (a) $25,000 or (b) 5% of any such financing received or committed,

(ii)    with respect to any sale, reorganization, or disposition of any or all of the Debtors' assets or operations, a transaction fee of $250,000, and

(iii)   with respect to the receipt of any recoveries or other consideration outside of the ordinary course of business by the Debtors, including tax refunds, claim or litigation recoveries, or other types of assets not sold or disposed of in the ordinary course of business, 10% of such recoveries or consideration.

3

5.      Upon the occurrence of any event that would result in Asgaard being due any transaction-based fees, after payment of any allowed secured claims or other Court-approved costs of sale, the Debtors shall separately hold such amounts due Asgaard on its transaction-based fees pending a ruling by this Court on an application by Asgaard for approval thereof.

6.      Notwithstanding anything in this Order to the contrary, the United States Trustee for the District of Delaware (the "U.S. Trustee") shall retain the right and be entitled to object to Asgaard's transaction-based fees based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.  The Debtors and Asgaard further stipulate and agree that this Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Asgaard's transaction-based compensation under section 330 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee on appeal or otherwise, with respect to the reasonableness of Asgaard's transaction-based fees.

7.      The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Letter and will indemnify and hold harmless Asgaard and each Indemnified Person (as defined in the Engagement Letter), pursuant to the Engagement Letter, subject, during the pendency of these cases, to the following:

(i)      Asgaard and each Indemnified Person shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter only for the services provided under the Engagement Letter, and not any separate services, unless such separate services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(ii)     Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify Asgaard or any Indemnified Person, or provide contribution or reimbursement to Asgaard or an Indemnified Person, for any claim or expense that is: (a) judicially determined (the determination having become final) to have

4

arisen from Asgaard's or such Indemnified Person's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith, or self-dealing; (b) for a contractual dispute in which the Debtors allege the breach of Asgaard's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.,* 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination as to the exclusions set forth in clauses (a) and (b) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which Asgaard or an Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

(iii)    If, before the earlier of: (a) the entry of an order confirming a Chapter 11 plan in these cases (that order having become final or no longer subject to appeal); or (b) the entry of an order closing these cases, Asgaard or any Indemnified Person believes that it is entitled to the payment of any specific amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including the advancement of defense costs, Asgaard or the applicable or an Indemnified Person must file an application for such payment in the Court, and the Debtors may not make such payment to Asgaard or such Indemnified Person before, after notice and a hearing, the Court enters an order approving such payment.  This subparagraph (iii) is intended only to govern the time period during which the Court shall have jurisdiction over any request for fees and expenses by Asgaard or any Indemnified Person for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify, contribute to, or reimburse Asgaard or any Indemnified Person.  All parties in interest shall retain the right to object to any demand by Asgaard or any Indemnified Person for indemnification, contribution, or reimbursement.

(iv)    Notwithstanding any provision in the Engagement Letter to the contrary, any liability or contribution obligations of Asgaard or any Indemnified Persons shall not be limited to the aggregate amount of fees actually received by Asgaard from the Debtors pursuant to the Engagement Letter.

8.    This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation of this Order.

*Attorney Daniel Fogarty is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within 3 days of entry of the order.*

4886-5426-8300
4892-5101-7105, v. 1