UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| | |
| AVIATION SAFETY RESOURCES, INC., | Case No. 6:23-bk-04639-GER |
| S.E., INC., | Case No. 6:23-bk-04641-GER |
| PIONEER AEROSPACE CORPORATION, | Case No. 6:23-bk-04643-GER |
| | |
| Debtors. | *Jointly Administered under* |
| | *Case No. 6:23-bk-04639-GER* |

_____/

| | |
|---|---|
| S.E., INC., | Case No. 6:23-bk-04641-GER |
| PIONEER AEROSPACE CORPORATION, | Case No. 6:23-bk-04643-GER |
| | |
| Applicable Debtors. | |

_____/

**ORDER (I) AUTHORIZING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS RELATING
TO THE CONNECTICUT LOCATION PURSUANT TO 11 U.S.C. § 363,
FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES,
AND (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS**

THESE CASES came on for continued hearing before the Court on November 21, 2023 at

1:30 p.m. (the "Hearing"), upon the Motion of Pioneer Aerospace Corporation for Order

Authorizing (I) the Sale of Substantially All of Their Assets Pursuant to 11 U.S.C. § 363, Free and

Clear of All Liens, Claims and Encumbrances, and (II) Authorizing the Assumption and

Assignment of Contracts (Docket No. 48) (the "Sale Motion").[1] This Order addresses only the Sale by Pioneer Aerospace Corporation d/b/a ASR-Pioneer ("Pioneer" or the "Debtor") of the Purchased Assets to the Connecticut Purchaser under the Connecticut APA (all as defined herein), and a separate order addresses the sale by the Debtors of other assets other than the Purchased Assets.

This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in the Sale Motion are §§ 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Zodiac US Corporation ("Zodiac") asserts a valid, perfected, first-priority lien on all assets of Pioneer pursuant to a defaulted pre-petition secured promissory note in the principal amount of $1,000,000.00 plus interest, default interest, late fees, attorneys fees and other charges which continue to accrue (generally, as asserted, the "Zodiac Secured Claim").

The Court finds that Pioneer entered into an Asset Purchase Agreement (as the same may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Connecticut APA"), with Space Exploration Technologies Corp., a Delaware corporation or its designee (the "Connecticut Purchaser" or "SpaceX"), providing for the sale (the "Sale") by Pioneer, and the purchase by the Connecticut Purchaser, pursuant to Section 363 of the Bankruptcy Code and subject to Court approval and subject to higher or better offers, of the Purchased Assets (as defined in Section 1.01 of the Connecticut APA), free and clear of any and all claims (including

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Sale Motion or the Bid Procedures Order.

"Claims" as defined in Section 101(5) of the Bankruptcy Code), Encumbrances (as defined herein) and Liens (as defined herein), except for the Assumed Liabilities (as defined in the Connecticut APA). The consideration to be paid for the Purchased Assets under the Connecticut APA is the amount of Two Million Two Hundred Thousand and 00/100 Dollars ($2,200,000.00) (the "Connecticut APA Purchase Price").

In connection with the proposed sale of the Purchased Assets by Pioneer to the Connecticut Purchaser, Pioneer and S.E., Inc. d/b/a Strong Enterprises ("Strong" and together with Pioneer the "Debtors") filed with the Court an Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Expense Reimbursement; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Case No. 6:23-bk-04643-GER at Docket No. 15 ) (the "Bid Procedures Motion").

The Connecticut APA was filed at Docket No. 43 as the Connecticut Stalking Horse APA for the Connecticut Location.

On November 9, 2023, this Court entered the Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Expense Reimbursement; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Docket No. 46) (the "Bid Procedures Order"). In the Bid Procedures Order, the Court established the following deadlines:

| Bid Deadline | November 16, 2023 at 5:00 p.m. (Eastern Time) |
|---|---|
| Cure Amount Objection Deadline | November 17, 2023 at 5:00 p.m. (Eastern Time) |
| Auction (if necessary) | November 20, 2023 at 12:00 p.m. (Eastern Time) |
| Sale Objection Deadline | November 20, 2023 at 5:00 p.m. (Eastern Time) |

3

| **Assumption Objection Deadline** | November 17, 2023 at 5:00 p.m. (Eastern Time) |
|---|---|

The Bid Procedures Order also approved the notice of the sale and the procedures for submission of competing bids in connection therewith (the "Bid Procedures"). The Bid Procedures Order was served on all creditors of the Debtors and certain other parties in interest (Docket No. 53).

The Court finds that notice of the Sale Motion, the Bid Procedures Order, the Bid Deadline, the Bid Procedures, the Sale Objection Deadline, the Cure Amount Objection Deadline, the Assumption Objection Deadline, the Connecticut APA, and the Hearing to creditors of the Debtor and other parties in interest, including any potential bidders for the purchase of the Purchased Assets (the "Potential Bidders"), was adequate and sufficient, was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Hearing, complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court and otherwise satisfies the requirements of due process. The Court further finds that appropriate certificates of mailing and service have been filed in the docket for this case regarding such notice.

The Court finds that the Bid Procedures have been duly complied with in all respects by the Debtors. The Court finds that the implementation and conduct of the Bid Procedures were fair and reasonable under the circumstances and reasonably calculated to achieve the highest or best price for the Purchased Assets for the benefit of the Debtors' estates and their creditors. A reasonable opportunity to object and be heard with respect to the Sale Motion has been afforded to all interested parties. To the extent that any of the Bid Procedures Objections were reserved in the Bid Procedures Order for ruling at the Hearing, such Bid Procedures Objections are overruled in all respects.

The Debtors have complied in all respects with the Bid Procedures Order. The process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person

4

or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Bid Procedures were duly noticed and the sale conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

On November 17, 2023, the Debtors filed their Notice of Cancellation of Auction and Designation of Stalking Horse Bidders as the Respective Successful Bidders (Docket No. 66), which designated Connecticut Purchaser as the Successful Purchaser for the Purchased Assets. At the Hearing, counsel for the Debtors announced that the Connecticut Purchaser was the highest and best bidder with respect to the Purchased Assets. Prior to the Petition Date, the Debtors employed Asgaard Capital, LLC ("Asgaard") in connection with the sale of the Debtors' assets and for additional services as financial advisors based on its extensive experience in the sale of assets. The Debtors have determined, after marketing efforts by Asgaard both before and after the Petition Date, that the Connecticut Purchaser has made the highest and best offer for the Purchased Assets as reflected in the Connecticut APA.

In addition, counsel for the Debtors proffered (without objection) the testimony of the Asgaard representative and the Debtors' representative regarding the marketing of the sale of the Purchased Assets and the conduct of the Bid Procedures. The Asgaard representative and the Debtors' representative were present at the Hearing, and all parties present at the Hearing were given the opportunity to cross-examine the representatives. No party objected to the proffer of the representatives' testimony or requested an opportunity to cross-examine the representatives. The Court accepts the proffered testimony of the representatives. At the Hearing, for the reasons announced on the record, the Court finds that the offer of the Connecticut Purchaser as set forth in the

Connecticut APA is the highest and best offer received for the purchase of the Purchased Assets and the Connecticut Purchaser is the Successful Bidder.

The Court finds that, based upon the entire record:

(a)     The Debtors advanced sound and sufficient business reasons and it is a reasonable exercise of the Debtors' business judgment pursuant to § 363 of the Bankruptcy Code to sell the Purchased Assets to Connecticut Purchaser, in accordance with the terms of the Connecticut APA. The sale of the Purchased Assets is further justified by the compelling circumstances described in the Sale Motion and the representations and proffers offered in support of the Sale Motion at the Sale Hearing and at previous hearings before this Court.

(b)     The Connecticut APA resulted from a search and marketing process that was adequate under the circumstances and conducted in accordance with the Bid Procedures.

(c)     The Debtors and Connecticut Purchaser have each acted in good faith and without collusion or fraud in connection with the preparation, negotiation and execution of the Connecticut APA, the subject matter of the Sale Motion and this Order, and the implementation of the Bid Procedures Order. Without limiting the foregoing, the Connecticut APA has been negotiated in good faith, at arm's-length, and not by any means forbidden by law. The Court specifically finds that Connecticut Purchaser has acted in good faith in pursuing and closing the transactions contemplated under the Connecticut APA, has neither induced nor caused the Debtors' Chapter 11 filings, and has disclosed all payments to be made by Connecticut Purchaser in connection with the Sale. Accordingly, Connecticut Purchaser is entitled to all of the protections afforded under § 363(m) of the Bankruptcy Code or otherwise. Neither the Debtors nor Connecticut Purchaser has engaged in any conduct that would cause or permit the Connecticut APA to be avoided under § 363(n) of the Bankruptcy Code.

(d)     Connecticut Purchaser is not an "insider" or "affiliate" (as such terms are determined in the Bankruptcy Code or as defined in the Connecticut APA) of the Debtors.

(e)     The consideration provided by Connecticut Purchaser for the purchase of the Purchased Assets pursuant to the Connecticut APA exceeds what the Debtors would be able to realize in a liquidation of the Purchased Assets, represents fair and adequate consideration for the Purchased Assets.

(f)     The Debtors' determination that the Connecticut APA constitutes the highest and best offer for the Purchased Assets is a good, valid, and sound exercise of the Debtors' business judgment. The Debtors have articulated good and sufficient business justifications for the sale pursuant to §§ 363(b) and 363(f) of the Bankruptcy Code.

(g)     The sale to Connecticut Purchaser satisfies one or more of the requirements of § 363(f) of the Bankruptcy Code as to all secured creditors of the Debtors, including § 363(f)(1), (2), (3), and (5).

(h)     The Connecticut APA was not entered into, and neither the Debtors nor the Connecticut Purchaser have entered into the Connecticut APA or proposed to consummate the transactions contemplated thereby, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors. The total consideration provided by Connecticut Purchaser pursuant to the Connecticut APA (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Purchased Assets, and (iii) the Purchase Price constitutes (x) reasonably equivalent value under the Uniform Voidable Transaction Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and the Bankruptcy Code, and (y) fair consideration under the Uniform Fraudulent Conveyance Act, and (z) reasonably equivalent value, fair consideration, and fair value under the Bankruptcy Code and any other applicable laws of the United States, any state, territory, possession, the District of Columbia, including but not limited to the States of Connecticut, Florida and Delaware, for the Purchased Assets. Approval of the Sale Motion and the Connecticut APA, and the consummation of the transactions contemplated hereby, is in the best interests of the Debtors and their estates, creditors, and other parties-in-interest.

(i)     There is no continuity of enterprise between Connecticut Purchaser and the Debtors. The Sale does not amount to a consolidation, merger, or *de facto* merger of Connecticut Purchaser and the Debtor. Connecticut Purchaser is not a member of a controlled group with the Debtors by virtue of the purchase of the Purchased Assets.

(j)     The relief requested in the Sale Motion (including, without limitation, the approval of the Connecticut APA, the sale of the Purchased Assets to Connecticut Purchaser, and the assumption and assignment of the Assumed Contracts (including but not limited to any Delayed Designation Contracts) to Connecticut Purchaser) is a necessary and appropriate step toward enabling the Debtors to successfully conclude these Chapter 11 cases.

(k)     The sale of the Purchased Assets to Connecticut Purchaser is in the best interests of the Debtors, their creditors and estates and all parties in interest.

The Court considered the Sale Motion and the Connecticut APA, together with the record and the arguments of counsel at the Hearing and throughout these Chapter 11 cases, and the testimony proffered by counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, finds that the relief requested in the Sale Motion is necessary and appropriate and is in the best interests of the Debtors, their creditors

7

and estates and all parties in interest, and that the Sale Motion is well taken and shall be granted in accordance with the terms and conditions set forth herein. Accordingly, it is

**ORDERED**:

1.      The Sale Motion is GRANTED to the extent set forth herein.

2.      The findings of fact set forth above in this Order be, and the same are, ratified and adopted as findings of this Court and are incorporated herein. To the extent any of the findings of fact set forth herein are deemed to be conclusions of law, then such findings are confirmed as conclusions of law.

3.      To the extent not withdrawn in open court, the Sales Objections are OVERRULED and denied on the merits with prejudice.

4.      The offer by Connecticut Purchaser set forth in the Connecticut APA to purchase the Purchased Assets is the highest and best offer for the purchase of the Purchased Assets and represents fair and adequate consideration for the Purchased Assets.

5.      The form and substance of the Connecticut APA (including any modifications thereto included in this Order) and the transactions contemplated thereby are approved in all respects. After the date of entry of this Order, the Debtor and Connecticut Purchaser may enter into any non-material amendment or modification to the Connecticut APA that is not adverse to the Debtor's estate without the need of further notice and hearing or Court order.[2]

---

2 Any such non-material amendment or modification shall be in writing executed by Connecticut Purchaser and the Debtor, and the Debtor shall provide a copy of such amendment or modification to the DIP Lender (as defined in the Final Order Granting Debtors' Emergency Motion for Authority to Obtain Secured Postpetition Financing and Grant Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. § 364(c) and F.R.B.P. 4001 (the "Final Financing Order").

6.      The execution, delivery and performance of the Connecticut APA by the Debtor are ratified and authorized in all respects. No further consents or approvals are required for the Debtor to consummate the Sale, the Connecticut APA, or the transactions contemplated thereby.

7.      Connecticut Purchaser shall close (the "Closing") under the Connecticut APA as provided in Section 3.1 of the Connecticut APA. The date of the Closing shall be referred to herein as the "Closing Date".

8.      Subject to the terms and conditions of the Connecticut APA and pursuant to § 363(f) of the Bankruptcy Code, the Debtor is authorized and directed to sell, transfer, assign and deliver the Purchased Assets to Connecticut Purchaser free and clear of any and all liens, pledges, charges, security interests, claims, options, imperfections of title, tenancies, mortgage, deed of trust, hypothecation, assignment, preemptive purchase right, judicial lien, community property interest, right-of way, easement, covenant, condition, equitable interest, setoff or recoupment rights, right of first refusal or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attributable right of ownership, or other rights, interests or encumbrances of any kind or nature (collectively, and as further defined in Section 3.4 of the Connecticut APA, the "Encumbrances"), subject to the payment by Connecticut Purchaser of the Purchase Price (as defined in the Connecticut APA), and the assumption by Connecticut Purchaser of the Assumed Liabilities. The Debtor is authorized to execute and deliver all documents (both before and after the Closing) and to take all appropriate actions necessary to evidence and consummate the Closing on the sale of the Purchased Assets to Connecticut Purchaser and the transactions contemplated thereby.

9.      The Purchased Assets shall be sold free and clear of any and all Liens, Claims (as defined in Bankruptcy Code § 101(5)), Encumbrances, interests, liabilities (including any liability

that results from, relates to or arises out of tort or any other product liability claim), duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution, premium, encumbrance and interest of any kind or nature whatsoever, including, without limitation, all liens, mechanics' liens, materialmens' liens, consensual liens, non- consensual liens, statutory liens, DIP Liens (as defined in the Final Financing Order), DIP Obligations (as defined in the Final Financing Order), Superpriority Claims (as defined in the Final Financing Order), replacement liens, superpriority claims, hypothecations, encumbrances, security interests, mortgages, security deeds, deeds of trust, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, consent rights, rights of pre-emption, rights of setoff, rights of first refusal, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, mere continuation claims, substantial continuation claims, COBRA claims, withdrawal liability claims (including under any Employee Benefit Plan), environmental claims, claims under or relating to any collective bargaining agreement, Employee Benefit Plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan), WARN claims or any claims under state or other laws of similar effect, Tax claims (including claims for any and all foreign, federal, state and local Taxes), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled, scheduled

or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Case, and whether imposed by agreement, understanding, Law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability including, without limitation, that Connecticut Purchaser is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtor or their business (collectively, the "Liens"), other than the Assumed Liabilities and the agreements and obligations set forth in this Order. Connecticut Purchaser would not have entered into the Connecticut APA and would not have agreed to purchase and acquire the Purchased Assets if the sale of the Purchased Assets was not free and clear of any and all Liens, Claims and Encumbrances (other than Assumed Liabilities). Except as set forth above, the Debtors and the estates are not releasing any other claim they may have against any person or entity.

10.    The Connecticut APA is valid and enforceable and binding on Connecticut Purchaser. After the Closing, Connecticut Purchaser shall assume the Assumed Liabilities as set forth in Schedule 1.3 of the Connecticut APA. Connecticut Purchaser shall not be responsible for any liabilities other than Assumed Liabilities as set forth in Section 1.3 of the Connecticut APA. Connecticut Purchaser shall not be responsible for any Excluded Assets (as defined under Section 1.2 of the Connecticut APA). Connecticut Purchaser is not responsible for any Purchased Assets that Connecticut Purchaser designates as Excluded Assets within thirty (30) days of the Closing Date in accordance with Section 1.2(m) of the Connecticut APA, or for any liabilities associated

with any such Purchased Assets designated as Excluded Assets under Section 1.2(m), after the

date of any such designation as an Excluded Assets under Section 1.2(m) of the Connecticut APA.

11.     The transfer of the Purchased Assets to Connecticut Purchaser will be a legal, valid,

and effective transfer of the Purchased Assets and will vest Connecticut Purchaser with all right, title

and interest of the Debtors in and to the Purchased Assets, free and clear of all Liens, Claims, and

Encumbrances of any kind or nature whatsoever, other than the Assumed Liabilities, including, but

not limited to (i) those that purport to give to any party a right or option to effect any forfeiture,

modification, right of first refusal, or termination of the Debtors' or Connecticut Purchaser's interest

in the Purchased Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in

connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing,

and (iii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention

agreements, pledges, liens, judgments, rights of setoff, demands, encumbrances, rights of first refusal,

or charges of any kind or nature, if any, including, but not limited to, any restriction on the use,

occupancy, tenancy, transfer, receipt of income or other exercise of any attributes of ownership, and

(B) all debts arising in any way in connection with any agreements, acts, or failures to act, of the

Debtors.

12.     All Liens, Claims and Encumbrances shall attach immediately and automatically to

the sale proceeds with the same extent, validity, rank and priority as such Liens, Claims and

Encumbrances had in the Purchased Assets on the date of Closing. In the event the Closing of the

Connecticut APA occurs prior to the parallel sale of Pioneer's assets to Paradigm Parachute and

Defense, Inc. under that certain separate Asset Purchase Agreement for Pioneer's Mississippi and

Florida assets, within one (1) business day of receiving the Purchase Price, the Debtors shall place

$1,250,000.00 in a segregated escrow (the "Zodiac Proceeds Escrow") maintained by Debtors'

counsel. The Zodiac Proceeds Escrow shall remain in escrow and held in trust pending resolution of the Debtors' dispute as to the Zodiac Secured Claim. The Zodiac Proceeds Escrow funds shall not be released to, or used or accessed by, any party without further order of the Court. For the avoidance of doubt and consistent with the terms of this paragraph, the Zodiac Proceeds Escrow funds shall at all times be and remain subject to all Liens, Claims and Encumbrances of Zodiac as applied to the Assets in the same extent, validity, and priority. The Debtors reserve all rights, claims and objections with regard to any claims or interests asserted by Zodiac related to the Zodiac Secured Claim.

13.     If any person or entity that has filed financing statements or other documents or agreements evidencing Liens, Claims, or Encumbrances on or in the Purchased Assets shall not have delivered to the Debtors at or prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of Liens, Claims, or Encumbrances which the person or entity has with respect to the Purchased Assets, the Debtors or Connecticut Purchaser, as the case may be, is authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets. Connecticut Purchaser is authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims or Encumbrances in or on the Purchased Assets of any kind or nature whatsoever.

14.     The Debtor and Connecticut Purchaser have acted in good faith, the terms and conditions of the Connecticut APA are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Debtors and Connecticut Purchaser, and Connecticut Purchaser is an arm's length purchaser who is purchasing the Purchased Assets in good faith.

15.     The Purchase Price constitutes reasonably equivalent and fair market value under the Bankruptcy Code and applicable non-bankruptcy law. Accordingly, Connecticut Purchaser shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

16.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets and a bill of sale transferring good and marketable title in the Purchased Assets to Connecticut Purchaser free and clear of all Liens, Claims, and Encumbrances. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Connecticut APA.

17.     Any real estate, personal property or other taxes related to the Purchased Assets accruing after the Closing Date and arising after or relating to time periods occurring after the Closing Date shall be the responsibility of Connecticut Purchaser, and any portion of any such real estate, personal property, or other taxes related to the Purchased Assets accruing prior to or arising prior to or relating to time periods occurring prior to the Closing Date shall remain the responsibility and liability of Debtor except as otherwise set forth in this Sale Order. Connecticut Purchaser shall take title to the Purchased Assets subject to real estate, personal property or other taxes (excluding income taxes) relating to the Purchased Assets accruing after the Closing Date and arising after or relating to time periods occurring after the Closing Date and shall indemnify the Debtors with respect thereto. Upon the consummation of the Closing on the purchase of the Purchased Assets, any taxing authorities or governmental agencies having jurisdiction over the Purchased Assets shall have no further claim against the Debtor or the estate for taxes (excluding income taxes) accruing after the Closing Date.

14

18.     Other than amounts owed to Asgaard,[3] the Debtors shall not be liable for, and no portion of the Purchase Price or the Deposit shall be disbursed for, any brokerage commissions or finder's fees with respect to the sale of the Purchased Assets. Connecticut Purchaser shall not be liable for any brokerage commissions, finder's fees, break-up fees, or expense reimbursements with respect to the sale of the Purchased Assets.

19.     Notice of the Sale Motion, the Bid Procedures Order, the Bid Deadline, the Bid Procedures, the Sale Objection Deadline, the Cure Amount Objection Deadline, the Competing Bidder Sale Objection Deadline, the Competing Bidder Assumption Objection Deadline, to creditors of the Debtors and other parties in interest, including any potential bidders, was adequate and sufficient, complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court and otherwise satisfies the requirements of due process.

20.     Any creditor of the Debtors, potential bidder, or other party in interest that did not file and serve, on or before the Objection Deadline, a written objection to the Sale Motion or the sale contemplated by the Connecticut APA is deemed to have waived any objection it may have to the Sale Motion or the sale of the Purchased Assets to Connecticut Purchaser and to have released all Liens, Claims, and Encumbrances in or on or with respect to the Purchased Assets, except for the Assumed Liabilities.

21.     Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtor's assumption and assignment to Connecticut Purchaser, and Connecticut Purchaser's assumption on the terms set forth in the Connecticut APA, of the Assumed Contracts is approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied. The Debtor is authorized and directed, in

---

[3] Payment of any such amounts must be sought by application and allowed by the Court.

accordance with Sections 105(a), 363, and 365 of the Bankruptcy Code, to (a) assume and assign to Connecticut Purchaser (or its assignee or designee, as applicable), effective upon the Closing Date (except as may otherwise be set forth in the Connecticut APA, including but not limited to Delayed Designation Contracts), the Assumed Contracts, free and clear of all Claims, Liens, Encumbrances or other interests of any kind or nature whatsoever and (b) execute and deliver to Connecticut Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Connecticut Purchaser. No sections or provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the counterparty to such Assumed Contract shall have any force or effect with respect to the Sale and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and are otherwise unenforceable under Section 365(e) of the Bankruptcy Code. No assignment of any Assumed Contract pursuant to the terms of this Sale Order or the Connecticut APA shall constitute a default under the terms of such Assumed Contract, and the counterparty to any Assumed Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and Connecticut Purchaser shall enjoy all of the Debtors' rights and benefits under the Assumed Contracts as of the applicable date of assumption without the necessity of obtaining such counterparty or any other Person's or third party's consent to the assumption or assignment thereof. Each counterparty to any Assumed Contract shall be forever barred and enjoined from raising or asserting against (a) Connecticut Purchaser, (b) any of its affiliates, successors, or assigns, or (c) the Purchased Assets, any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to such Assumed Contract as of the Closing Date or arising by reason of the Closing, other

than the payment of the Cure Amounts. Other than the payment of the Cure Amount, no other act or cure is or shall be required with respect to the assumption and assignment of any Assumed Contract and the cure of any default or alleged default thereof.

22.     Connecticut Buyer shall have until the end of the Post-Closing Period (as defined in the Connecticut APA) to designate any Delayed Designation Contracts as Assumed Contracts or to reject such Delayed Designation Contract in accordance with Section 1.4 of the Connecticut APA, and any Delayed Designation Contract not designated as an Assumed Contract as of the expiration of the Post-Closing Period shall be deemed rejected by the Debtor. Nothing in this Order shall condition or limit the time by which any Government Contract that is on the Schedule of Assumed Contracts is transferred or novated, as the case may be, under Section 1.4(e) of the Connecticut APA, and Debtor shall cooperate with Connecticut Purchaser (or its assignee or designee) during the Novation Period (as defined in the Connecticut APA) with respect to any Government Contract that is an Assumed Contract on the terms of and as set forth in Section 1.4(e) of the Connecticut APA. Nothing herein shall authorizes or shall be interpreted to mean that (i) any Government Contract is assumed, assigned, transferred, or novated, or (ii) a Governmental Authority (as defined in the Connecticut APA) has consented to the assumption, assignment, transfer, or novation of any Government Contract. No other or further notice of or regarding the assumption and assignment of the Assumed Contracts and/or the Delayed Designation Contracts or the entry of this Sale Order need be given to any person.

23.     Parties to Assumed Contracts who received notice of the Contract Objection deadline at an address outside of the United States (the "Foreign Contracts") shall have until **December 6, 2023 at 5:00 p.m.** to file a Contract Objection in compliance with the Bid Procedures Order. Connecticut Purchaser shall have until the later of (i) ten (10) days after the resolution of

such Contract Objection or (ii) twenty-one (21) days after the Closing Date to amend the schedule of Assumed Contracts to the Connecticut APA to add or remove the Assumed Contract as to such Foreign Contracts.

24.     Upon the effective date of the assumption and assignment of each Assumed Contract to be assumed and assigned to the Connecticut Purchaser, in accordance with sections 363 and 365 of the Bankruptcy Code, the Connecticut Purchaser shall be fully and irrevocably vested with all rights, title, and interest in and to each such Assumed Contract. The Debtors are authorized to take all actions reasonably necessary to effectuate the foregoing. In accordance with Section 365(b)(2) and 365(f) of the Bankruptcy Code, upon assignment of an Assumed Contract to the Connecticut Purchaser, (a) the Connecticut Purchaser shall have all of the rights of the Debtors thereunder and each provision of such Assumed Contract shall remain in full force and effect for the benefit of the Connecticut Purchaser notwithstanding any provision in any such Assumed Contract or in applicable law that prohibits, restricts, or limits in any way such assignment or transfer, and (b) no Assumed Contract may be terminated, or the rights of any Person modified in any respect, including, without limitation, pursuant to any "change of control" clause, by any other Person thereto as a result of the consummation of the transactions contemplated by the Connecticut APA.

25.     Except as otherwise required under the Cooperation Protocol, all Persons, presently, or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession and turnover any of the Purchased Assets directly to the Connecticut Purchaser or its designees on the Closing Date or at such time thereafter as the Connecticut Purchaser may request. Following the Closing under the Connecticut APA, no holder of any Liens, Claims, or Encumbrances against the Purchased Assets shall have any basis to

18

interfere with the Connecticut Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens, Claims, or Encumbrances or any actions that any Debtor may take in these Chapter 11 cases, and no Person may take any action to prevent, interfere with, or otherwise impair consummation of the transactions contemplated in or by the Connecticut APA or this Sale Order or adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Connecticut Purchaser.

26. The Cooperation Protocol, filed by the Debtors at Docket No. 64, is approved, and each of the Debtors and the Stalking Horse Bidders (as defined therein) shall comply with the terms and procedures of the Cooperation Protocol in all respects as if fully set forth herein.

27. With the sole exception of any obligations of Connecticut Purchaser under the Connecticut APA or this Order, including the Assumed Liabilities, Connecticut Purchaser does not and shall not be deemed to, pursuant to the Connecticut APA or otherwise, assume, agree to perform, or pay any Liens, Claims, or Encumbrances, liabilities, claims, debts or obligations of the Debtors, including but not limited to those set forth in Section 1.3(c) of the Connecticut APA. Connecticut Purchaser shall not be, nor shall it be deemed to be, a successor or successor in interest to the Debtors by reason of any theory of law or equity, and Connecticut Purchaser shall not have any successor or transferee liability of any kind or character.

28. Connecticut Purchaser shall not be deemed to be a joint employer, single employer, co-employer, or successor employer with any Debtor for any purpose or under the laws of the United States, any state, territory, or possession thereof, and Connecticut Purchaser shall not have any obligation to pay any past wages, benefits, or severance pay or extend or make any benefits or benefit programs, including, without limitation, the Consolidated Omnibus Budget Reconciliation Act of 1985 or any similar laws or regulations, to any of the Debtors' employees or former

employees, including, without limitation, any such employees who may become employees of Connecticut Purchaser.

29.     The terms of this Sale Order shall be binding on in all respects upon: (a) the Connecticut Purchaser and its successors and assigns; (b) the Debtors; (c) any successor of the Debtors, including, without limitation, any trustee or examiner appointed in the Chapter 11 cases or upon a conversion of any Chapter 11 case to cases under chapter 7 of the Bankruptcy Code; (d) all creditors of, and holders of equity interests in, the Debtors, including, without limitation, any holders of Liens, Claims, and/or Encumbrances; (e) all parties to a Contract; (f) all parties filing or making objections to the Bid Procedures Motion or the Sale Motion; (g) all state and federal licensing authorities; and (h) all other parties in interest in the Chapter 11 cases and their successors and assigns (collectively, the "Bound Parties"). This Sale Order shall survive any dismissal of any Chapter 11 case notwithstanding Section 349 of the Bankruptcy Code. The provisions of this Sale Order and the terms and provisions of the Connecticut APA, and any actions taken pursuant hereto or thereto as of the date of entry of such order shall survive the entry of and shall not be modified without the written consent of Connecticut Purchaser by any order that may be entered confirming or consummating any Chapter 11 plan of any Debtor or converting any Debtor's Chapter 11 case to chapter 7, and the terms and provisions of the Connecticut APA, as well as the rights and interests granted pursuant to this Sale Order and the Connecticut APA shall continue in this or any superseding case and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code.

30.     Effective on the Closing Date, except as otherwise provided in this Sale Order or the Connecticut APA, all Persons asserting Liens, Claims, Encumbrances, and/or contract rights against

the Debtor and/or any of the Purchased Assets are permanently enjoined and precluded from, with respect to such Liens, Claims, or Encumbrances, and/or contract rights: (a) asserting, commencing, or continuing in any manner any action against the Connecticut Purchaser and/or its affiliates, designees, assignees, successors, directors, officers, employees, equity holders, authorized signatories, members, agents, representatives, attorneys (collectively, the "Protected Parties") or any of their respective property or assets, including, without limitation, against the Purchased Assets; (b) the enforcement, attachment, collection, or recovery, by any manner or means, of any judgment, award, decree, or order against the Protected Parties or any properties or Purchased Assets of the Protected Parties; (c) creating, perfecting, or enforcing any Liens, Claims or Encumbrances of any kind against the Protected Parties or any properties or Purchased Assets of the Protected Parties, including, without limitation, the Purchased Assets; (d) asserting any setoff or right of subrogation of any kind against any obligation due or owed to the Protected Parties; and (e) taking any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Sale Order or the Connecticut APA.

31.    With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be the sole and sufficient evidence of the transfer of title to the Connecticut Purchaser, and the sale transaction consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of

such Persons is directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

32.    The failure specifically to include any particular provisions of the Connecticut APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Connecticut APA be authorized and approved in its entirety (as modified herein). To the extent there is any inconsistency between the provisions of this Sale Order and the terms of the Connecticut APA or the Sale Motion or any plan confirmed in this case or any order confirming such plan or any other order entered in this case, the provisions of this Sale Order shall control. Nothing contained in any Chapter 11 plan confirmed in the Chapter 11 cases, the order confirming any Chapter 11 plan, or any order in the Chapter 11 cases (including, without limitation, any order approving a wind-down or dismissal of any Chapter 11 case) or any order entered as part of or after any conversion of any Chapter 11 case to cases under chapter 7 of the Bankruptcy Code shall alter, amend, conflict with, or derogate from the provisions of the Connecticut APA or this Sale Order, and to the extent of any conflict or derogation between this Sale Order or the Connecticut APA and such future Chapter 11 plan or order, the terms of this Sale Order and the Connecticut APA shall control.

33.    To the maximum extent permitted by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Connecticut Purchaser on account of the filing or pendency of the Chapter 11 cases or the consummation of the Sale.

34.    The Connecticut Purchaser shall not be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its remedies under this Sale Order, Connecticut APA, or any other Sale-related document. The automatic stay imposed by

Section 362 of the Bankruptcy Code is modified to the extent necessary to implement the preceding sentence; provided, however, that the Court retains exclusive jurisdiction over any and all disputes with respect thereto.

35.     The Connecticut Purchaser is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale, and any issues related to or otherwise connected to the Connecticut APA and the Sale.

36.     Pioneer shall, and is authorized and empowered to, no later than fifteen (15) Business Days after the Closing, (a) change its corporate name consistent with applicable law and (b) file a motion seeking to change the case caption to reflect the new corporate name of Pioneer.

37.     The Sale of the Purchased Assets is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code or other applicable law or statute.

38.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the Connecticut APA.

39.     This Court retains jurisdiction (a) to interpret, implement and enforce the provisions of this Sale Order, and (b) to enforce and implement the terms and provisions of the Connecticut APA, all amendments or modifications thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) subject to the terms and conditions of the Connecticut APA and this Order, compel delivery of the Purchased Assets to Connecticut Purchaser or the performance of other obligations of the Debtors under the Connecticut APA and each of the agreements executed in connection therewith, (ii) compel delivery of the Purchase Price by Connecticut Purchaser or the performance of other obligations of Connecticut Purchaser under the Connecticut APA and each of the agreements executed in connection therewith, including (without limitation) the timely

23

payment of the Deposit and the Assumed Liabilities, and (iii) resolve any disputes arising under or related to the Connecticut APA and each of the agreements executed in connection therewith, including the disbursement of the Deposit; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Connecticut APA or each of the agreements executed in connection therewith or this Order, such abstention, refusal or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

40.     Notwithstanding anything set forth in Rules 6004(h),6006(d), and/or 7062 of the Federal Rules of Bankruptcy Procedure, this Order, for good cause shown, shall be immediately enforceable and the Closing under the Connecticut APA with Connecticut Purchaser may occur immediately following the entry of this Order or as otherwise set forth in the Connecticut APA.

# # #

Daniel R. Fogarty, Esq. is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the Order.