**ORDERED.**

**Dated: November 22, 2023**

_Grace E. Robson_
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| AVIATION SAFETY RESOURCES, INC., | Case No. 6:23-bk-04639-GER |
| S.E., INC., | Case No. 6:23-bk-04641-GER |
| PIONEER AEROSPACE CORPORATION, | Case No. 6:23-bk-04643-GER |
| Debtors. | _Jointly Administered under_ |
| _____/ | _Case No. 6:23-bk-04639-GER_ |
| S.E., INC., | Case No. 6:23-bk-04641-GER |
| PIONEER AEROSPACE CORPORATION, | Case No. 6:23-bk-04643-GER |
| Applicable Debtors. | |
| _____/ | |

**ORDER GRANTING DEBTORS'
MOTION FOR ENTRY OF AN ORDER
AUTHORIZING (I) THE SALE OF SUBSTANTIALLY
ALL OF THEIR ASSETS PURSUANT TO 11 U.S.C. § 363, FREE
AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND
<u>(II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS</u>**

THESE CASES came on for continued hearing before the Court on November 21, 2023 at 1:30 p.m. (the "<u>Hearing</u>"), upon the _Debtors' Motion for Entry of an Order Authorizing (I) the Sale of Substantially All of Their Assets Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens,_

*Claims and Encumbrances, and (II) Authorizing the Assumption and Assignment of Contracts* (Docket No. 48) (the "Sale Motion").[1]

This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in the Sale Motion are §§ 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Pioneer Aerospace Corporation d/b/a ASR-Pioneer ("Pioneer") and S.E., Inc. d/b/a Strong Enterprises ("Strong" and together with Pioneer the "Debtors") which have assets or operations located in Bloomfield, Connecticut (the "Connecticut Location"), Columbia, Mississippi (the "Mississippi Location"), Milton, Florida (the "Milton Location"), and Orlando, Florida (the "Orlando Location," and together with the Connecticut Location, the Mississippi Location, and the Milton Location, each a "Location" and, collectively, the "Locations").

Zodiac US Corporation ("Zodiac") asserts a valid, perfected, first-priority lien on all assets of Pioneer pursuant to a defaulted pre-petition secured promissory note in the principal amount of $1,000,000.00 plus interest, default interest, late fees, attorneys fees and other charges which continue to accrue (generally, as asserted, the "Zodiac Secured Claim"). In addition, Zodiac is the owner of the Mississippi Location and the Milton Location, which it asserts Pioneer continues to occupy notwithstanding Zodiac's termination of the respective leases prior to the Petition Date.

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Sale Motion, the Bid Procedures Order, and the Stalking Horse APA.

The Court finds that the Debtors have entered into an Asset Purchase Agreement (the "Stalking Horse APA"), with Paradigm Parachute and Defense, Inc. ("Paradigm" or the "Purchaser"), providing for the sale (the "Sale") by the Debtors, and the purchase by the Purchaser, pursuant to 11 U.S.C. § 363 and subject to Court approval and subject to higher or better offers, of the Assets (as defined in Section 1.01 of the Stalking Horse APA), free and clear of any and all claims (including "claims" as defined in Section 101(5) of the Bankruptcy Code), and Liens (as defined herein), except for the Permitted Liens and the Assumed Liabilities (as such terms are defined in the Stalking Horse APA). The consideration to be paid for the Assets under the Stalking Horse APA is the amount of Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000) (the "Stalking Horse APA Purchase Price").

In connection with the Debtors' proposed sale of the Assets by the Debtors to the Purchaser, the Debtors filed with the Court the *Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Expense Reimbursement; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines* (Case No. 6:23-bk-04643-GER at Docket No. 15) (the "Bid Procedures Motion"). The Stalking Horse APA was attached as Exhibit A to the Bid Procedures Motion.

On November 9, 2023, this Court entered the *Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Expense Reimbursement; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (*Docket No. 46) (the "Bid Procedures Order"). In the Bid Procedures Order, the Court established the following deadlines:

| **Bid Deadline** | **November 16, 2023 at 5:00 p.m.** |
|---|---|
| **Cure Amount Objection Deadline** | **November 17, 2023 at 5:00 p.m.** |
| **Auction** | **November 20, 2023 at 12:00 p.m.** |
| **Sale Objection Deadline** | **November 20, 2023 at 5:00 p.m.** |
| **Assumption Objection Deadline** | **November 17, 2023 at 5:00 p.m.** |

The Bid Procedures Order also approved the notice of the sale and the procedures for submission of competing bids in connection therewith (the "Bid Procedures"). The Bid Procedures Order was served on all creditors of the Debtors and certain other parties in interest (Docket No. 53).

The Court finds that notice of the Sale Motion, the Bid Procedures Order, the Bid Deadline, the Bid Procedures, the Sale Objection Deadline, the Cure Amount Objection Deadline, the Assumption Objection Deadline, the Stalking Horse APA, and the Hearing to creditors of the Debtor and other parties in interest, including any potential bidders for the purchase of the Assets (the "Potential Bidders"), was adequate and sufficient, was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Hearing, complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court and otherwise satisfies the requirements of due process. The Court further finds that appropriate certificates of mailing and service have been filed in the docket for this case regarding such notice.

The Court finds that the Bid Procedures have been duly complied with in all respects by the Debtors. The Court finds that the implementation and conduct of the Bid Procedures were fair and reasonable under the circumstances and reasonably calculated to achieve the highest or best price for the Assets for the benefit of the Debtors' estates and their creditors. A reasonable opportunity to object and be heard with respect to the Sale Motion has been afforded to all interested parties. To the extent

that any of the Bid Procedures Objections were reserved in the Bid Procedures Order for ruling at the Hearing, such Bid Procedures Objections are overruled in all respects.

At the Hearing, counsel to the Debtors announced that, as no competing bids were received by the Bid Deadline, the Auction was cancelled. Prior to the Petition Date, the Debtors employed Asgaard Capital, LLC ("Asgaard") in connection with the sale of the Debtors' assets and for additional services as financial advisors and understands Asgaard has extensive experience in the sale of assets. The Debtors have determined, after an extensive marketing effort by Asgaard both before and after the Petition Date, and as a result of the lack of any competing or otherwise Qualified Bid, that Paradigm has made the highest or otherwise best offer for the Assets as reflected in the Stalking Horse APA.

In addition, counsel for the Debtors proffered (without objection) the testimony of the Asgaard representative and the Debtors' representative regarding the marketing of the sale of the Purchased Assets and the conduct of the Bid Procedures. The Asgaard representative and the Debtors' representative were present at the Hearing, and all parties present at the Hearing were given the opportunity to cross-examine the representatives. No party objected to the proffer of the representatives' testimony or requested an opportunity to cross-examine the representatives. The Court accepts the proffered testimony of the representatives. At the Hearing, for the reasons announced on the record, the Court finds that (i) the offer of the Purchaser as set forth in the Stalking Horse APA is the highest and best offer received for the purchase of the Assets, and (ii) upon this Order becoming a Final Order, all conditions precedent to the obligations of the Successful Bidder to close on the purchase of the Assets set forth in the Stalking Horse APA have been satisfied, and, the Purchaser is directed to close under the Stalking Horse APA.

The Court finds that, based upon the entire record:

(a)  The Debtors advanced sound and sufficient business reasons and it is a reasonable exercise of the Debtors' business judgment pursuant to § 363 of the Bankruptcy Code to sell the Assets to the Purchaser, in accordance with the terms of the Stalking Horse APA. The sale of the Assets is further justified by the compelling circumstances described in the Sale Motion and the representations and proffers offered in support of the Sale Motion at the Sale Hearing and at previous hearings before this Court.

(b)  The Stalking Horse APA resulted from an adequate search and marketing process under the circumstances and complied with the Bid Procedures.

(c)  The Debtors and the Purchaser have each acted in good faith and without collusion or fraud in connection with the preparation, negotiation and execution of the Stalking Horse APA, the subject matter of the Sale Motion and this Order, and the implementation of the Bid Procedures Order. Without limiting the foregoing, the Stalking Horse APA has been negotiated in good faith, at arm's-length, and not by any means forbidden by law. The Court specifically finds that the Purchaser has acted in good faith in pursuing and closing the transactions contemplated under the Stalking Horse APA, has neither induced nor caused the Debtors' Chapter 11 filings, and has disclosed all payments to be made by the Purchaser in connection with the Sale. Accordingly, the Purchaser is entitled to all of the protections afforded under § 363(m) of the Bankruptcy Code or otherwise. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Stalking Horse APA to be avoided under § 363(n) of the Bankruptcy Code.

(d)  The Purchaser is not an "insider" or "affiliate" (as such terms are determined in the Bankruptcy Code) of the Debtors.

(e)  The consideration provided by the Purchaser for the purchase of the Assets pursuant to the Stalking Horse APA exceeds what the Debtors would be able to realize in a liquidation of the Assets, represents fair and adequate consideration for the Assets, and will provide a meaningful distribution to creditors of the Debtors.

(f)  The Debtors' determination that the Stalking Horse APA constitutes the highest and best offer for the Assets is a good, valid, and sound exercise of the Debtors' business judgment. The Debtors have articulated good and sufficient business justifications for the sale pursuant to §§ 363(b) and 363(f) of the Bankruptcy Code.

(g)  The sale to the Purchaser satisfies one or more of the requirements of § 363(f) of the Bankruptcy Code as to all secured creditors of the Debtors, including § 363(f)(1), (2), (3), and (5).

(h)  The consideration provided by the Purchaser pursuant to the Stalking Horse APA (i) is fair and reasonable, (ii) is the highest and otherwise best offer for the Assets, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and §548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under

       the laws of the United States, any state, territory, possession or the District of Columbia. Approval of the Sale Motion and the Stalking Horse APA, and the consummation of the transactions contemplated hereby, is in the best interests of the Debtors and their estates, creditors, and other parties-in-interest.

(i)     There is no continuity of enterprise between the Purchaser and the Debtors. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtor. The Purchaser is not a member of a controlled group with the Debtors by virtue of the purchase of the Assets.

(j)     The relief requested in the Sale Motion (including, without limitation, the approval of the Stalking Horse APA, the sale of the Assets to the Purchaser, and the assumption and assignment of Contracts to the Purchaser) is a necessary and appropriate step toward enabling the Debtors to successfully conclude these Chapter 11 cases.

(k)     The sale of the Assets to the Purchaser is in the best interests of the Debtors, their creditors and estates and all parties in interest.

The Court considered the Sale Motion and the Stalking Horse APA, together with the record and the arguments of counsel at the Hearing and throughout these Chapter 11 cases, and the uncontested testimony proffered by counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, finds that the relief requested in the Sale Motion is necessary and appropriate and is in the best interests of the Debtors, their creditors and estates and all parties in interest, and that the Sale Motion is well taken and shall be granted in accordance with the terms and conditions set forth herein. Accordingly, it is

    **ORDERED**:

1.     The Sale Motion is GRANTED in its entirety subject to the terms of this Order.

2.     The findings of fact set forth above in this Order be, and the same are, ratified and adopted as findings of this Court and are incorporated herein. To the extent any of the findings of fact set forth herein are deemed to be conclusions of law, then such findings are confirmed as conclusions of law.

3. To the extent not withdrawn in open court, any and all objections to the Sale Motion are OVERRULED. The Zodiac Cure Objection (Docket No. 65) is sustained to the extent set forth herein.

4. The offer by the Purchaser set forth in the Stalking Horse APA to purchase the Assets is the highest and best offer for the purchase of the Assets and represents fair and adequate consideration for the Assets.

5. The form and substance of the Stalking Horse APA (including any modifications thereto included in this Order) and the transactions contemplated thereby are approved in all respects. After the date of entry of this Order, the Debtors and the Purchaser may enter into any non-material amendment or modification to the Stalking Horse APA, or such other ancillary agreements in connection with Closing the sale transaction contemplated therein, including with Zodiac, that is not adverse to the Debtors' estates without the need of further notice and hearing or Court order; provided, however, that any such non-material amendment or modification be in writing executed by Purchaser and the Debtors, and the Debtors shall provide a copy of such amendment or modification to the DIP Lender (as defined in the Final Order Granting Debtors' Emergency Motion for Authority to Obtain Secured Postpetition Financing and Grant Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. § 364(c) and F.R.B.P. 4001 (the "Final Financing Order")).

6. The execution, delivery and performance of the Stalking Horse APA by the Debtors are ratified and authorized in all respects. No further consents or approvals are required for the Debtors to consummate the Sale, the Stalking Horse APA, or the transactions contemplated thereby.

7. The Purchaser shall close (the "Closing") under the Stalking Horse APA by December 8, 2023, but in no event later than December 15, 2023. The date of the Closing shall be referred to herein as the "Closing Date". Immediately and automatically at Closing, and without need for further request for relief or order of this Court, the automatic stay shall not apply to efforts by Zodiac with respect to physical assets at the Mississippi Location and the Milton Location and all property remaining therein, whether or not Assets or other property acquired by the Purchaser or retained by the Debtors, and Zodiac may in its sole discretion and without restriction exercise any of its rights and remedies under applicable law to recover or take possession of the Mississippi Location or the Milton Location without further order of this Court. In addition, upon the Closing, Zodiac shall be allowed an administrative expense in the amount of (i) the per diem base rent contract rate under the pre-petition lease for the Milton Location for the number of days between the Petition Date and the Closing, and (ii) $40,000.00 for the Mississippi Location, on account of the Debtors' post-petition occupancy at the Mississippi Location and the Milton Location, which shall be paid in full from the sale proceeds at the Closing without reducing the Zodiac Secured Claim or the Zodiac Proceeds Escrow (defined below).

8. Subject to the terms and conditions of the Stalking Horse APA and pursuant to § 363(f) of the Bankruptcy Code, the Debtors shall be, and are, authorized and directed to sell, transfer, assign and deliver the Assets to the Purchaser free and clear of any and all Liens (defined below), subject to the payment by the Purchaser of the Purchase Price (as defined in the Stalking Horse APA), subject to the Permitted Liens, and the assumption and payment by the Purchaser of the Assumed Liabilities. The Debtors are authorized to execute and deliver all documents (both before and after the Closing) and to take all appropriate actions necessary to evidence and consummate the Closing on the sale of the Assets to the Purchaser and the transactions contemplated thereby.

9. The Assets shall be sold free and clear of any and all liens, Claims (as defined in Section 101(5) of the Bankruptcy Code), encumbrances, interests, liabilities (including any liability that results from, relates to or arises out of tort or any other product liability claim), duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution, premium, encumbrance and interest of any kind or nature whatsoever, including, without limitation, all liens, DIP Liens (as defined in the Final Financing Order), DIP Obligations (as defined in the Final Financing Order ), Superpriority Claims (as defined in the Final Financing Order), mechanics' liens, materialmens' liens, consensual liens, non- consensual liens, statutory liens, hypothecations, encumbrances, security interests, interests, mortgages, security deeds, deeds of trust, debts, indebtedness, damages, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, costs, offsets, recoupments, rights of recovery, consent rights, rights of pre-emption, rights of setoff, rights of first refusal, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims (including under any Employee Benefit Plan), environmental claims, claims under or relating to any collective bargaining agreement, Employee Benefit Plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan), WARN claims or any claims under state or other laws of similar effect, Tax claims (including claims for any and all foreign, federal, state and local

Taxes), escheatment claims, reclamation claims, obligations, liabilities, demands, and guarantees, whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Case, and whether imposed by agreement, understanding, Law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability including, without limitation, that the Purchaser is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtor or their business (collectively, the "Liens"), other than the Permitted Liens, the Assumed Liabilities and the agreements and obligations set forth in this Order. The Purchaser would not have entered into the Stalking Horse APA and would not have agreed to purchase and acquire the Assets if the sale of the Assets was not free and clear of any and all Liens (other than Permitted Liens and Assumed Liabilities). Except as set forth above or elsewhere in this Order or the Stalking Horse APA, the Debtors and the estates are not releasing any other claim they may have against any person or entity.

10.     The Stalking Horse APA is valid and enforceable and binding on the Purchaser. After the Closing, the Purchaser shall pay and perform all of the Assumed Liabilities set forth in the Stalking Horse APA. With respect to Assumed Liabilities relating to the Mississippi Location or the Milton Location, including but not limited to those arising under Section 1.3(b) of the Stalking Horse APA, Paradigm shall pay any and all such fees, costs, and liabilities associated with the post-Closing occupancy of any Assets at the Milton Location and the Mississippi Location in accordance with the terms of the Transition Lease Agreement between Purchaser and Zodiac; and

*provided further* that Zodiac shall be entitled to seek the allowance and payment of any such post-Closing fees, costs, and liabilities from the Debtors or their estates to the extent unpaid by Paradigm, and the Debtors reserve all right, claims, and defenses thereto.

11. The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets and will vest the Purchaser with all right, title and interest of the Debtors in and to the Assets, free and clear of all Liens of any kind or nature whatsoever, other than the Permitted Liens and the Assumed Liabilities, including, but not limited to (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest in the Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, and (iii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, rights of setoff, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, occupancy, tenancy, transfer, receipt of income or other exercise of any attributes of ownership, and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors.

12. All Liens shall attach immediately and automatically to the sale proceeds with the same extent, validity, rank and priority as such Liens had in the Assets on the date of Closing. In the event the Closing of the Paradigm Sale occurs prior to the parallel sale of Pioneer's assets to Space Exploration Technologies Corp. under that certain separate Asset Purchase Agreement for Pioneer's Connecticut assets, within one (1) business day of receiving the Purchase Price, the Debtors shall place $1,250,000.00 in a segregated escrow (the "Zodiac Proceeds Escrow") maintained by Debtors' counsel. The Zodiac Proceeds Escrow shall remain in escrow and held in

trust pending resolution of the Debtors' dispute as to the Zodiac Secured Claim. The Zodiac Proceeds Escrow funds shall not be released to, or used or accessed by, any party without further order of the Court. For the avoidance of doubt and consistent with the terms of this paragraph, the Zodiac Proceeds Escrow funds shall at all times be and remain subject to all Liens of Zodiac as applied to the Assets in the same extent, validity, and priority. The Debtors reserve all rights, claims and objections with regard to any claims or interests asserted by Zodiac related to the Zodiac Secured Claim and with regard to the leases in place at the Mississippi Location and the Milton Location.

13. If any person or entity that has filed financing statements or other documents or agreements evidencing Liens on or in the Assets shall not have delivered to the Debtors at or prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of Liens which the person or entity has with respect to the Assets, the Debtors or the Purchaser, as the case may be, is authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets. The Purchaser is authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in or on the Assets of any kind or nature whatsoever, other than the Permitted Liens and the Assumed Liabilities.

14. The Debtors and the Purchaser have acted in good faith, the terms and conditions of the Stalking Horse APA are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Debtors and the Purchaser, and the Purchaser is an arm's length purchaser who is purchasing the Assets in good faith.

15. The Purchase Price constitutes reasonably equivalent and fair market value under the Bankruptcy Code and applicable non-bankruptcy law. Accordingly, the Purchaser shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause the Stalking Horse APA to be avoided under Section 363(n) of the Bankruptcy Code.

16. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets and a bill of sale transferring good and marketable title in the Assets to the Purchaser free and clear of all Liens, except for the Permitted Liens and the Assumed Liabilities. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA.

17. Any real estate, personal property or other taxes related to the Assets accruing after the Closing Date shall be the responsibility of the Purchaser. The Purchaser shall take title to the Assets subject to real estate, personal property or other taxes (excluding income taxes) relating to the Assets accruing after the Closing Date and shall indemnify the Debtors with respect thereto. Upon the consummation of the Closing on the purchase of the Assets, any taxing authorities or governmental agencies having jurisdiction over the Assets shall have no further claim against the Debtors or the estate for taxes (excluding income taxes) accruing after the Closing Date.

18. Parties to Assumed Contracts who received notice of the Contract Objection deadline at an address outside of the United States (the "Foreign Contracts") shall have until **December 6, 2023 at 5:00 p.m.** to file a Contract Objection in compliance with the Bid Procedures Order. Purchaser shall have until the later of (i) ten (10) days after the resolution of such Contract

Objection or (ii) twenty-one (21) days after the Closing Date to amend the schedule of Assumed Contracts to the Stalking Horse APA to add or remove the Assumed Contract as to such Foreign Contracts.

19. Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to Purchaser and Purchaser's assumption of the Assumed Contracts on the terms set forth in the Stalking Horse APA is approved and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto are satisfied. The Debtors are authorized and directed, in accordance with Sections 105(a), 363,and 365 of the Bankruptcy Code to (i) assume and assign the Assumed Contracts to Purchaser, free and clear of Liens, or other interests and (ii) execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Purchaser. No sections or provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges or other financial accommodations in favor of the counterparty to such Assumed Contract shall have any force or effect with respect to the Sale and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and are otherwise unenforceable under Section 365(e) of the Bankruptcy Code. No assignment of any Assumed Contract pursuant to the terms of this Sale Order or the Stalking Horse APA shall constitute a default under the terms of such Assumed Contract, and the counterparty to any Assumed Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and Purchaser shall enjoy all of the Debtors' rights and benefits under the Assumed Contracts as of the applicable date of assumption without the necessity of obtaining such counterparty or other Person's of third party's consent to the assumption or assignment thereof.

Each counterparty to any Assumed Contract shall be forever barred and enjoined from raising or asserting against (i) Purchaser, (ii) any of Purchaser's affiliates, successors or assigns, or (c) the Assets, any assignment fee, default, breach, Lien, pecuniary loss, or condition to assignment arising under or related to such Assumed Contract as of the Closing or arising by reason of the Closing other than the payment of any required Cure Amount. Other than the payment of any Cure Amount, no other act or cure is or shall be required with respect to the assumption and assignment of any Assumed Contract and the cure of any default or alleged default thereof.

20. Other than amounts owed to Asgaard by the Debtors,[2] neither the Debtors nor Purchaser shall be liable for, and no portion of the Purchase Price or the Deposit shall be disbursed for, any brokerage commissions or finder's fees with respect to the sale of the Assets.

21. Notice of the Sale Motion, the Bid Procedures Order, the Bid Deadline, the Bid Procedures, the Sale Objection Deadline, the Cure Amount Objection Deadline, the Competing Bidder Sale Objection Deadline, the Competing Bidder Assumption Objection Deadline, to creditors of the Debtors and other parties in interest, including any potential bidders, was adequate and sufficient, complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court and otherwise satisfies the requirements of due process.

22. Any creditor of the Debtors, potential bidder, or other party in interest that did not file and serve, on or before the Objection Deadline, a written objection to the Sale Motion or the sale contemplated by the Stalking Horse APA shall be, and is, deemed to have waived any objection it may have to the Sale Motion or the sale of the Assets to the Purchaser and to have released all Liens in or on or with respect to the Assets, except for the Permitted Liens and the Assumed Liabilities.

---

[2] Payment of any such amounts must be sought by application and allowed by the Court.

16

23. With the sole exception of any obligations of the Purchaser under the Stalking Horse APA or this Order, including the Permitted Liens and the Assumed Liabilities, and specifically including Paradigm's post-Closing obligations to Zodiac as provided for in Paragraph 10 of this Order, the Purchaser does not and shall not be deemed to, pursuant to the Stalking Horse APA or otherwise, assume, agree to perform, or pay any Liens, liabilities, claims, debts or obligations of the Debtors. The Purchaser shall not be, nor shall it be deemed to be, a successor or successor in interest to the Debtors by reason of any theory of law or equity, and the Purchaser shall not have any successor or transferee liability of any kind or character.

24. The terms of this Sale Order shall be binding on in all respects upon: (a) the Purchaser and its successors and assigns; (b) the Debtors; (c) any successor of the Debtors, including, without limitation, any trustee or examiner appointed in the Chapter 11 cases or upon a conversion of any Chapter 11 case to cases under chapter 7 of the Bankruptcy Code; (d) all creditors of, and holders of equity interests in, the Debtors, including, without limitation, any holders of Liens; (e) all parties to a Contract; (f) all parties filing or making objections to the Bid Procedures Motion or the Sale Motion; (g) all state and federal licensing authorities; and (h) all other parties in interest in the Chapter 11 cases and their successors and assigns (collectively, the "Bound Parties"). This Sale Order shall survive any dismissal of any Chapter 11 case notwithstanding section 349 of the Bankruptcy Code. The provisions of this Sale Order and the terms and provisions of the Stalking Horse APA, and any actions taken pursuant hereto or thereto as of the date of entry of such order shall survive the entry of and shall not be modified without the written consent of Purchaser by any order that may be entered confirming or consummating any Chapter 11 plan of any Debtor or converting any Debtor's Chapter 11 case to chapter 7, and the terms and provisions of the Stalking Horse APA, as well as the rights and interests granted

pursuant to this Sale Order and the Stalking Horse APA shall continue in this or any superseding case and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code.

25. The Cooperation Protocol, filed by the Debtors at Docket No. 64, is approved, and each of the Debtors and the Stalking Horse Bidders (as defined therein) shall comply with the terms and procedures of the Cooperation Protocol in all respects as if fully set forth herein.

26. Purchaser shall not be deemed to be a joint employer, single employer, co-employer, or successor employer with any Debtor for any purpose or under the laws of the United States, any state, territory, or possession thereof, and Purchaser shall not have any obligation to pay any past wages, benefits, or severance pay or extend or make any benefits or benefit programs, including, without limitation, the Consolidated Omnibus Budget Reconciliation Act of 1985 or any similar laws or regulations, to any of the Debtors' employees or former employees, including, without limitation, any such employees who may become employees of Purchaser.

27. Effective on the Closing Date, except as otherwise provided in this Sale Order or the Stalking Horse APA, all Persons asserting Liens, and/or contract rights against the Debtors and/or any of the Assets are permanently enjoined and precluded from, with respect to such Liens and/or contract rights: (a) asserting, commencing, or continuing in any manner any action against the Purchaser and/or its affiliates, designees, assignees, successors, directors, officers, employees, equity holders, authorized signatories, members, agents, representatives, attorneys (collectively, the "Protected Parties") or any of their respective property or assets, including, without limitation, against the Purchased Assets; (b) the enforcement, attachment, collection, or recovery, by any manner or means, of any judgment, award, decree, or order against the Protected Parties or any properties or

Purchased Assets of the Protected Parties; (c) creating, perfecting, or enforcing any Liens of any kind against the Protected Parties or any properties or Assets of the Protected Parties, including, without limitation, the Assets; (d) asserting any setoff or right of subrogation of any kind against any obligation due or owed to the Protected Parties; and (e) taking any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Sale Order or the Stalking Horse APA.

28. The failure specifically to include any particular provisions of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse APA be authorized and approved in its entirety (as modified herein). To the extent there is any inconsistency between the provisions of this Order and the terms of the Stalking Horse APA or the Sale Motion or any plan confirmed in this case or any order confirming such plan or any other order entered in this case, the provisions of this Order shall control.

29. This Court retains jurisdiction (a) to interpret, implement and enforce the provisions of this Order, and (b) to enforce and implement the terms and provisions of the Stalking Horse APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) subject to the terms and conditions of the Stalking Horse APA, compel delivery of the Assets to the Purchaser or the performance of other obligations of the Debtors under the Stalking Horse APA and each of the agreements executed in connection therewith, (ii) compel delivery of the Purchase Price by the Purchaser or the performance of other obligations of the Purchaser under the Stalking Horse APA and each of the agreements executed in connection therewith, including (without limitation) the timely payment of the Deposit and the Assumed Liabilities, and (iii)

resolve any disputes arising under or related to the Stalking Horse APA and each of the agreements executed in connection therewith, including the disbursement of the Deposit; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Stalking Horse APA or each of the agreements executed in connection therewith or this Order, such abstention, refusal or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

30. The sale transaction consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such Persons is directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

31. The 14-day stay periods set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure are waived, for good cause shown, and this Order shall be immediately enforceable and the Closing under the Stalking Horse APA with the Purchaser may occur immediately following the entry of this Order.

# # #

Daniel R. Fogarty, Esq. is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the Order.