UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| AVIATION SAFETY RESOURCES, INC., | Case No. 6:23-bk-4639-GER |
| S.E., INC., | Case No. 6:23-bk-4641-GER |
| PIONEER AEROSPACE CORPORATION | Case No. 6:23-bk-4643-GER |
|     Debtors. _____/ | Jointly Administered Under Case No. 623-bk-4639-GER |
| S.E., INC., | Case No. 6:23-bk-4641-GER |
| PIONEER AEROSPACE CORPORATION | Case No. 6:23-bk-4643-GER |
|     Applicable Debtors. _____/ | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
APPROVING POST-PETITION, POST-CLOSING PAYMENTS
FOR KEY EMPLOYEE COMPENSATION**

PIONEER AEROSPACE CORPORATION D/B/A ASR-PIONEER ("**Pioneer**") and S.E., INC. D/B/A STRONG ENTERPRISES ("**Strong**") (collectively, the "**Debtors**"), respectfully request the entry of an order authorizing payments, as part of the final payroll following the closings under the Debtors' sales of substantially all of their operating assets, under the Debtors' pre-petition key employee compensation program applicable to two non-management employees (the "**Compensation Program**"). In support of this motion, the Debtors state as follows:

1. On November 1, 2023 (the "**Petition Date**"), the Debtors and Aviation Resources, Inc. ("**ASR**") filed their Voluntary Petitions for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2. Pioneer Aerospace is a recognized leader in the design and manufacture of state-of-the-art aerodynamic deceleration systems. These systems support specialized tactical, personnel,

cargo, humanitarian, weapons, and space exploration programs. Additionally, Pioneer operates Airlift Technologies International, based in Milton, Florida, a manufacturing, and engineering company that specializes in the design and production of aerial delivery systems, airdrop qualification testing, airdrop load design, systems related logistic support, and complete and comprehensive training of all ground and air crew personnel involved in cargo airdrops. Strong manufactures parachutes and related products for both military solutions and commercial customers. Both Pioneer and Strong are wholly owned subsidiaries of ASR. For the avoidance of doubt, ASR is not a movant under this Motion, and the sale of the Purchased Assets does not include any assets of ASR or assignment of any contracts or leases of ASR. For more information, please see the Debtors' Joint Case Management Summary.

3. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§157 and 1334. The subject matter of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper in this district pursuant to 28 U.S.C. §§1408. The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§105, 363, 365, 503,1107 and 1108.

4. This case is the culmination of a lengthy process that began pre-petition and was managed and supported by the Debtors' employees generally, but in particular through two critical employees and assisted by the Debtors' sale advisors Asgaard Capital. The Debtors filed these cases for the purposes of completing the going-concern sales of substantially all of the operating assets of Pioneer and Strong for the benefit of customers, suppliers, employees, and creditors.

5. During the case, the Debtors sought, and ultimately obtained, approval to sell assets under two separate purchase agreements. On November 22, 2023, the Court entered its Order (I) Authorizing the Sale of Substantially all of the Debtor's Assets Relating to the Connecticut Location Pursuant to 11 U.S.C. § 363, Free and Clear of all Liens, Claims and Encumbrances, and

(II) Authorizing the Assumption and Assignment of Contracts (Doc. No. 73), and its Order Granting Debtors' Motion for Entry of an Order Authorizing (I) The Sale Of Substantially all of Their Assets Pursuant to 11 U.S.C. § 363, Free and Clear of all Liens, Claims and Encumbrances, and (II) Authorizing the Assumption and Assignment of Contracts (Doc. No. 74) (together, the "**Sale Orders**"). The total combined purchase prices under the Sale Orders is $4,450,000.00.

6.  The Debtors closed under the Sale Orders on Friday, December 8, 2023. At closing of the two sales, the Debtors have net proceeds well in excess of $1 million after payment or reserve for secured claims.

7.  The Compensation Program for which approval is sought in this Motion was part of the Debtors' pre-petition and post-petition efforts to stabilize business operations and maximize the value of the Debtors' assets through going-concern sales of substantially all of the Debtors' operating assets.

8.  There are two key employees (collectively, the "**Key Employees**") who are and have been essential to the Debtors' sale and reorganization efforts and efforts to stabilize operations during the pre-petition sale process, the uncertain early stages of these cases, and to complete the sales under the Sale Orders.  The Key Employees are Mr. Michael Rinaldi and Ms. Jeanne (Charlie) Hietala. In late September and early October, before the filing of these cases, the Key Employees were non-officer, non-management level employees of Strong and Pioneer, respectively. Mr. Rinaldi was the operations manager for Strong, and Ms. Hietala was a contracts manager. Neither was an officer, director, shareholder, or insider of any of the Debtors. The Debtors operations were complex, with four different locations in three different states, customer and product mixes largely independent of each other, limited real-time financial information, and no executive team. The Debtors suffered from a lack of liquidity, and lacked the ability to pay the types of substantially

increased regular salary commensurate with the positions and obligations the Key Employees were being asked to take on. To address the cashflow issues, part of the Key Employees compensation was placed in the form of a bonus, as a type of deferred compensation, to be paid when a sale or other transaction closed and there was sufficient funding.

9. Although as set forth herein Mr. Rinaldi subsequently agreed, effective October 23, 2023, to serve as the President of the Debtors during the case, at the time the Compensation Program was initiated Mr. Rinaldi was a non-officer level employee of Strong, providing management support to the board of directors of the Debtors and supporting Asgaard operationally, the restructuring and in the marketing efforts in connection with the sales process for both Strong and Pioneer. Ms. Hietala is employed by Pioneer and has overseen the contracting processes and in the new role of managing the remaining two active production facilities in conjunction with the sale process for Pioneer for all locations of Pioneer, interfacing with customers, suppliers, and potential purchasers far more than her normal and customary job duties prior to the sale process.

10. The Debtors' Board of Directors approved the Compensation Program pre-petition, and the Debtors discussed the Compensation Program with the Key Employees. The Debtors believe that the Key Employees have continued their employment at least in part based upon their expectation that the Compensation Program will be approved and paid.

11. These two Key Employees have provided pre-petition and post-petition significant benefit to the estates, and have been and are critical to the sale process from start to finish. Thus, the Debtors now seek authorization to complete the Compensation Program designed to retain and incentivize these Key Employees, and to reward them for their loyalty and their efforts thus far, contingent upon the occurrence of the closings under the Sale Orders.

12.     The Key Employees identified by the Debtors are prime candidates for recruitment by a competitor or other business. The Debtors were, and continue to be, concerned that the Key Employees, if not assured of their compensation, might leave to work for competitors or will be so distracted by their individual employment situations that they might understandably be unable to devote their undivided attention to their jobs, especially given the significantly increased workloads they have had as part of the sale process, independently of the bankruptcy aspects. The Debtors simply cannot risk the loss of these knowledgeable employees during the course of these bankruptcy proceedings.

13.     Specifically, the Debtors developed the Compensation Program to provide the incentives necessary for the Debtors to retain and incentive the Key Employees, to be commensurate with the enormous demands placed on them in dramatically increasing their roles to support the Debtors' sale process, and rewarding them for staying with the Debtors, assisting in the sales process and supporting the restructure of the company in order to facilitate operations until the completion of the sale process. The Debtors believe that the Compensation Program (the details of which are set forth below) meets these criteria. The Compensation Program is designed to provide the Key Employees with competitive financial rewards and incentives to, among other things, remain employed by the Debtors rather than look elsewhere for employment, and to maximize the value of the Debtors' assets through a going-concern sale and to incentivize the Key Employees to assist the Debtors and their professionals in securing going-concern contracts for the purchase of assets, assist in the diligence with respect to potential purchasers, and assist in closing the sales under the Sale Orders.

14.     The current monthly salaries of the Key Employees are approximately $13,000.00 to $14,000.00. Both salaries were increased as part of the Compensation Program by $1,000.00

per week. Additionally, Mr. Rinaldi's compensation was increased as a result of his agreeing to serve as President of each of the Debtors before and during the Bankruptcy Case through closing under the Sale Orders, with both an additional increase in his regular compensation of $1,000 per week and a lump sum payment of $15,000.00, roughly equal to $2,000 per week for the expected seven to eight week duration of his role pre-closing, but preserving the Debtors' cash.

15. Pursuant to the Compensation Program, the Key Employees will be eligible for a lump sum payment of $15,000.00 each upon the successful closing of the sales under the Sale Orders. Additionally, Mr. Rinaldi will be entitled to an additional lump sum payment of $15,000 as compensation for undertaking the role as president.

16. In many Chapter 11 cases, employee retention, incentive, severance, and similar programs are approved where, as here, the Debtors crafted a program narrowly tailored to meet their specific business needs and reorganization goals, the program was in place prior to the filing, and is not targeted solely to benefit insiders. Indeed, the Compensation Program was not available to any persons who were insiders at the time it was enacted by the Debtors. As discussed above, at the time the Compensation Program was put in place, neither of the Key Employees was an insider of the Debtors. Ms. Hietala is not an insider as of the date of this Motion. Mr. Rinaldi's status as a Key Employee occurred prior to, and unrelated to, his agreeing to serve as president of the Debtors.

17. In light of the substantial value already added and the continued loyalty and efforts that the Key Employees will provide, the Debtors believe that the implementation of the Compensation Program will not only be beneficial to the Debtors but is essential to maximizing the value of the Debtors' assets. Accordingly, by this motion, the Debtors seek authority to implement the Compensation Program.

4884-8912-4754, v. 4

18.     The Compensation Program gives the Key Employees an incentive and reward for remaining in their positions of employment through the closings of the sales to maximize the ultimate distribution to creditors.  The Compensation Program is essential to incentivizing the employees considered by the board of directors to be most critical to the Debtors' business operations and the sales, and the ultimate distribution to creditors.

19.     The Debtors seek authority, pursuant to §§105(a), 363(b), 365, and 503(c) of the Bankruptcy Code, to complete the Compensation Program and to pay the amounts set forth above (totaling $30,000.00)[1] to the Key Employees under the Compensation Program following, and conditioned upon, the closing of the two sales under the Sales Orders.

20.     Certain transfers to insiders, or certain transfers made outside the ordinary course of business and not justified by "the facts and circumstances of the case," are subject to the requirements of section 503(c) of the Bankruptcy Code.  Here, the requested payments are more in the nature of ordinary, deferred compensation to non-management employees whose salaries were low to preserve cash until a sale could be concluded. To the extent it is applicable, the Compensation Program satisfies, and is not prohibited by, § 503(c). The program is available only to employees who were not insiders at the time the program was enacted. The program is incentivizing, not retentive, in nature, as it is focused on the sale of assets as a going-concern and payable only upon closing, rather than payable primarily as a retention or stay bonus, and is payable only to those two employees filling substantially increased and critical roles in guiding buyers through the sale process given the complex nature of the Debtors' contracting status and operations. The program is not a severance package. Finally, the payments ($30,000.00 on the Compensation Program and $15,000 to Mr. Rinaldi as compensation as an officer) on a total

---

[1] The bonuses under the Compensation Program are in addition to the additional payment to Mr. Rinaldi in connection with his agreeing to act as president.

7

combined purchase price of $4,450,000.00 total approximately 1% of the combined purchase price. Although the payments were not designed to be a certain percentage of the purchase prices, it does inform the business purposes of the payment and their justification under the facts and circumstances of this case, both at the time they were implemented and now.

21. As described in detail above, the Debtors believe that the implementation of the Compensation Program will accomplish a "sound business purpose" and maximize the value of the Debtors' assets through the sales. Based on their own experience and their evaluation of available alternatives, the Debtors determined that the measures proposed herein will achieve their intended purpose of keeping their valuable Key Employees employed and incentivized to focused on maximizing the value of the Debtors' assets.

22. In light of the foregoing, the Debtors believe that the compensation incentives provided under the Compensation Program are reasonable and appropriate and have enhanced the Debtors' ability to retain those individuals who are most essential to the Debtors' reorganization through the closing of the sales. The Debtors thus submit that such measures should be approved.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and such other and further relief as is just.

DATED: December 11, 2023

/s/ *Daniel R. Fogarty*
Daniel R. Fogarty (FBN 0017532)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
Telephone: (813) 229-0144
Email:  dfogarty@srbp.com
Attorneys for Debtors

4884-8912-4754, v. 4

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING POST-PETITION, POST-CLOSING PAYMENTS FOR KEY EMPLOYEE COMPENSATION has been furnished on December 11, 2023, by either the Court's CM/ECF electronic noticing or by U.S. mail to the LBR 1007-2 matrix.

/s/ *Daniel R. Fogarty*
Daniel R. Fogarty