UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flsb.uscourts.gov

In re:

| | | |
|---|---|---|
| Aviation Safety Resources, Inc., | Case Nos.: | 6:23-bk-4639-GER |
| S.E., Inc., | | 6:23-bk-4641-GER |
| Pioneer Aerospace Corporation, | | 6:23-bk-4643-GER |
| | Chapter 11 Cases | |
| Debtors. | *jointly administered* | |
| _____/ | | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER APPROVING
POST-PETITION PAYMENTS FOR KEY EMPLOYEE COMPENSATION**

The United States Trustee, Mary Ida Townson ("United States Trustee"), objects to the Debtors' Motion for Entry of an Order Approving Post-Petition, Post-Closing, Payments for Key Employee Compensation ("KERP Motion"; Doc. No. 93). In support of this objection, the United States Trustee states as follows.

**SUMMARY OF ARGUMENT**

The United States Trustee objects to the KERP Motion insofar as it requests authority to make retention payments to the Debtors' president, Mr. Michael Rinaldi. Retention payments to insiders are forbidden by 11 U.S.C. § 503(c)(1), subject to a narrow exception. As the Debtors' president, Mr. Rinaldi is undoubtedly an insider, and the stated purpose of the payments are to keep Mr. Rinaldi working for the Debtors. Finally, the Debtors have not established that the narrow exception to § 503(c)(1) is applicable. As such, the KERP Motion should be denied, insofar as it requests authority to make payments to Mr. Rinaldi.

**BACKGROUND**

1. On November 1, 2023, the Debtors filed voluntary chapter 11, subchapter V petitions to commence their respective cases. The Debtors' cases are jointly administered.

1

2. On December 4, 2023, a § 341 meeting was held in these jointly administered cases and continued to December 15, 2023, due to certain document deficiencies. The § 341 meeting was held and concluded on December 15, 2023.

3. On December 8, 2023, the Debtors closed the sales of substantially all the Debtors' assets. As of the date of this objection, the assets of the estate consist primarily of cash, a possible tax refund, and certain causes of action. Other than possible litigation and certain wind-down activities, the Debtors have no ongoing operations.

4. On December 11, 2023, the Debtors filed the KERP Motion.

5. The KERP Motion seeks permission to make payments of $15,000 each to two key employees, Mr. Rinaldi and Ms. Jeanne Hietala, following the Debtors' closing of the asset sales. The KERP Motion also seeks to make an additional $15,000 lump sum payment to Mr. Rinaldi on account of becoming the Debtors' president. The United States Trustee objects to the payments to Mr. Rinaldi, who is the current president of the company and is therefore an insider.

6. According to the KERP Motion, the Debtors committed to make the payments pre-petition. Mr. Rinaldi was a non-officer at the time of the commitment but was engaged in providing management support to the Board of Directors in connection with the Debtors' operations and expected asset sale.

7. The purpose of the payment is to retain Mr. Rinaldi's services. The KERP Motion states that "The Debtors were, and continue to be, concerned that the Key Employees, if not assured of their compensation, might leave to work for competitors or will be so distracted by their individual employment situations that they might understandably be unable to devote their undivided attention to their jobs, especially given the significantly increased workloads they have had as part of the sale process, independently of the bankruptcy aspects. The Debtors simply cannot

risk the loss of these knowledgeable employees during the course of these bankruptcy proceedings." (Doc. No. 93 at 5). Meanwhile, the KERP Motion does not identify any performance levels or metrics that Mr. Rinaldi would be required to achieve to receive the payment. At the § 341 meeting, Mr. Rinaldi confirmed that no such performance levels or incentives had been established.

8. The KERP Motion does not identify any competing job offers received by Mr. Rinaldi. At the § 341 meeting, counsel for the United States Trustee asked Mr. Rinaldi whether he had received any job offers pre- or post-petition. Mr. Rinaldi stated that he had received offers but was guarded with respect to the details.

## **LEGAL AUTHORITY**

9. In 2005, Congress added § 503(c)(1) to the Bankruptcy Code to curtail payments to insiders and "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *In re Residential Capital*, LLC, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012) (quoting *In re Global Home Prods.*, LLC, 369 B.R. 778, 784 (Bankr. D. Del. 2007)); accord *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 312-13 (Bankr. S.D.N.Y. 2012); *In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012). Through § 503(c), Congress put into place "a set of challenging standards" for debtors to overcome before such bonuses could be paid. *In re Global Home*, 369 B.R. at 784.

10. Section 503(c)(1) applies to "insiders" of the debtor. The Bankruptcy Code defines insider as, "if the debtor is a corporation -- (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor, (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor". 11 U.S. Code § 101(31)(B).

11. An insider may also be a "managing agent of the debtor" 11 U.S.C. §101(31)(F). A managing agent is a person that can exert "operational control" over a debtor, a division or unit of a debtor, or a significant portion of a debtor's property. *In re Standard Stores, Inc.*, 124 B.R. 318, 323 (Bankr. C.D. Cal. 1991).

12. Section 503(c)(1) restricts "transfer[s] made to, or obligation[s] incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtors' business." The debtor bears the burden of demonstrating under § 503(c)(1) that retention payments are permissible by presenting "evidence in the record." 11 U.S.C. § 503(c)(1). To obtain authorization of the payment, the debtor must prove the following: (A) The payment is essential because the person the debtor seeks to retain has a bona fide job offer at the same or greater compensation; (B) The services provided by the individual are essential to the survival of the business; and (C) *either* (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; *or* (ii) the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred. 11 U.S.C. § 503(c).

13. To avoid the high standard and evidentiary burden of § 503(c)(1), debtors may seek to characterize insider payments as *incentive* payments instead of *retention* payments. The proponent of an incentive-based payment plan (commonly referred to as a Key Employee Incentive Plan, or KEIP) has the burden of showing, by a preponderance of the evidence, that the plan is not

a retention-based payment plan (commonly referred to as a Key Employee Retention Plan, or KERP). *In re Hawker Beechcraft*, 479 B.R. at 313. *In re Residential Capital*, 478 B.R. at 170. See also, *In re Global Home Prods.,* 369 B.R. at 783 (requiring the debtors to prove that the KEIP was part of a "pay for value" plan, rather than a "pay to stay" plan). Further, a debtor's labeling of a plan as an incentive plan must be viewed with skepticism. The circumstances under which the proposal is made and the structure of the compensation package control. *In re Velo Holdings*, 472 B.R. at 209 ("Attempts to characterize what are essentially prohibited retention programs as 'incentive' programs in order to bypass the requirements of § 503(c)(1) are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages."). *See also, Hawker Beechcraft*, 479 B.R. at 313 ("The concern . . . is that the debtor has dressed up a KERP to look like a KEIP in the hope that it will pass muster under the less demanding 'facts and circumstances' standard in . . . § 503(c)(3)."). In summary, "[i]f it walks like a duck (KERP) and quacks like a duck (KERP), it's a duck (KERP)." *In re Dana Corp.*, 351 B.R. at 102 n.3.

## **OBJECTION**

### A. Mr. Rinaldi is an Insider for Purposes of § 503(c)(1)

13.     Mr. Rinaldi is an insider of the Debtors for purposes of § 503(c)(1). At the time of the proposed transfer (i.e., post-petition), Mr. Rinaldi is the president of the Debtors, and an officer is an insider of the Debtors pursuant to § 101(31)(B)(ii). The fact that the transfer was agreed to pre-petition, before Mr. Rinaldi became an officer, is irrelevant under the text of the statute. However, even if it were somehow relevant, given Mr. Rinaldi's expanded pre-petition responsibilities, the Court would likely find that Mr. Rinaldi was a "managing agent" and therefore an insider of the Debtors at the time of the agreement.

### B. The Proposed Payment is for the Purpose of Retention

14. The Debtors do not make a serious effort to cast the proposed payments as part of a KEIP. The KERP Motion, on its face, describes the purpose of the payments as employee retention and the KERP Motion does not describe any incentive structure that would be consistent with a bona fide KEIP. At the § 341 meeting, Mr. Rinaldi agreed that the payments were not part of an incentive structure, regarding the sales price of the business or otherwise. To borrow the language of the *Dana Corp* decision, it both "quacks like a duck (KERP)" and "walks like a duck (KERP)" and therefore, "it's a duck (KERP)." As such, the restrictions of § 503(c)(1) apply to the proposed payment to Mr. Rinaldi.

### C. The Debtors Have not met the Exception to § 503(c)(1)

15. The Debtors have not demonstrated that they have met the exception to § 503(c)(1). Regarding the first required element of the exception, although Mr. Rinaldi hinted that he had alternative job offers, he did not identify any particular job offer and did not state whether it included equal or greater compensation than his current position. Regarding the second required element, the Debtors have not established that the services provided by Mr. Rinaldi are necessary for the survival of the Debtors' business on a going forward basis. This will be particularly difficult to prove because the Debtors are no longer operating and did not survive in the sense of remaining a going concern operated by the Debtors. Finally, regarding the third element of the exception, the Debtors have not provided any relevant information for the Court to determine how Mr. Rinaldi's proposed payments compare to either similar payments made to non-management employees (if any) or to prior payments made to Mr. Rinaldi (if any). As such the Debtors have not met their evidentiary burden regarding the third element.

WHEREFORE, the Court should (1) deny the KERP Motion in part; (2) prove that the exception to the prohibition against KERPs is applicable; and (3) take such other actions as the Court deems necessary.

Dated:   December 18, 2023

Respectfully submitted,

Mary Ida Townson,
United States Trustee for Region 21

 /s/   Scott Bomkamp
Scott Bomkamp, Trial Attorney
Office of the United States Trustee
U.S. Department of Justice
400 W. Washington St., Suite 1100
Orlando, FL 32801
Telephone No.:   (407) 648-6069
Facsimile No.:   (407) 648-6323
Email: scott.e.bomkamp@usdoj.gov
Indiana Bar No.: 28475-49

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion has been served electronically through CM/ECF on December 18, 2023, to all parties having appeared electronically in the instant matter.

   /s/  Scott Bomkamp
Scott Bomkamp, Trial Attorney